IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SANITEC INDUSTRIES, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 04-1386 JJF |
| | : |
| SANITEC WORLDWIDE, LTD., | : |
| JEFFREY J. WEINSTEN, and | : |
| JAMES H. SMITH, | : |
| | : |
| Defendants. | : |

Richard D. Kirk, Esquire of THE BAYARD FIRM, Wilmington, Delaware.
Of Counsel: Richard J. Oparil, Esquire of PATTON BOGGS LLP, Washington, District of Columbia and Jennifer L. King, Esquire of PATTON BOGGS LLP, McLean, Virginia.
Attorneys for Plaintiff.

David L. Finger, Esquire of FINGER & SLANINA, LLC, Wilmington, Delaware.
Attorney for Defendants.

**MEMORANDUM OPINION**

July 7, 2005
Wilmington, Delaware

**FARNAN, District Judge**

Presently before the Court is Defendants' Motion To Stay This Action Pending Resolution Of Other Litigation To Determine Ownership Of Patent And Trademarks (D.I. 10-1). For the reasons set forth below, the Court will deny Defendants' motion.

## BACKGROUND

This lawsuit arises under the patent laws, the Lanham Act, and state statutory and common law. Plaintiff, Sanitec Industries, Inc. ("Sanitec Industries"), filed this lawsuit on October 25, 2004. (D.I. 1). It filed a First Amended Complaint on November 29, 2004. (D.I. 7.) On December 15, 2004, Defendants, Sanitec Worldwide, Ltd. ("Sanitec Worldwide"), Jeffrey J. Weinsten, and James H. Smith, filed the instant motion.

This action is for infringement of U.S. Patent No. 5,270,000 (the "000" patent), and infringement of related trademarks under the Lanham Act and common law. Further, Industries alleges claims of conversion, tortious interference with prospective business relations, and a violation of Delaware's Deceptive Trade Practices Act, 6 Del. C. § 2531, et seq.

Sanitec Industries is incorporated pursuant to the laws of the State of California. Sanitec Worldwide is incorporated pursuant to the laws of the State of Delaware. Defendant Jeffrey

1

J. Weinsten is a citizen of the State of New York.  Defendant James H. Smith is a citizen of the State of California.

The parties dispute ownership of the patent-in-suit.

## PARTIES' CONTENTIONS

### I. Sanitec Worldwide's Contentions

Sanitec Worldwide alleges the following sequence of events in support of its contention that it owns the patent in suit.

On the face of the patent, ABB Sanitec Inc., a Delaware corporation, is an assignee of the '000 patent.  In 1995, ABB Sanitec was purchased by H.S. Holdings, Inc., which changed ABB Sanitec, Inc.'s name to Sanitec, Inc.  In April 2001, Sanitec Inc.'s name was changed to Sanitec, Ltd. ("Sanitec Limited") and it became wholly-owned by Sanitec Worldwide.

On or about July 27, 2001, 100 shares of Sanitec Worldwide were issued to Windsor Holdings, LLC ("Windsor"), making Windsor the sole shareholder of Sanitec Worldwide.  Windsor subsequently issued stock representing 49% ownership in Worldwide to Salem Associates, Inc. ("Salem").  On June 24, 2002, Terence Quinn, the settlor of Windsor Trust, transferred his exclusive ownership right in Windsor Holdings to the Windsor Trust.

Early in 2002, certain directors, officers, and employees of Sanitec, Limited wrongfully purported to transfer assets of Sanitec Limited to Guardian Investments ("Guardian"), and then to

a separate entity called Sanitec Group, LLC. In early March 2002, Sanitec Group entered into a financing agreement with Platinum Funding Corp. ("Platinum"), wherein Sanitec Group granted Platinum a security interest in Sanitec's IP assets, including the '000 patent.

Sanitec Limited and ABB Sanitec West, Inc. ("Sanitec West"), a west coast distributor of Sanitec products, filed suit against Sanitec Group and individuals in the U.S. District Court for the Central District of California, alleging trademark infringement, false designation of origin, breach of fiduciary duty, conversion, and interference with economic relations. On July 29, 2002, the case was transferred to the U.S. District Court for the Northern District of Ohio, where settlement discussions ensued.

Sanitec Worldwide contends that James Harnkess, the President of Sanitec West, falsely represented himself to be the person in charge of Sanitec Limited and Sanitec West, and presented to the Court a settlement agreement that would result in Sanitec Group transferring all assets it purportedly received from Sanitec Limited to the newly formed Sanitec Industries, which Mr. Harkess wholly owns.

After Sanitec Limited learned of Mr. Harkess' actions, it asked Mr. Harkess to provide evidence supporting his claim that

he owned Sanitec Limited. Worldwide alleges that Mr. Harkess presented falsified documents, from which it was represented to the Ohio court that Mr. Harkess did own Windsor Holdings and thereby controlled Sanitec Limited.

On November 24, 2003, Sanitec Industries obtained an assignment of Platinum's rights pursuant to Platinum's agreements with Group. On December 17, 2003, Sanitec Industries filed suit against Sanitec Group in the Superior Court of New Jersey, Chancery Division, seeking to foreclose on the assets of Sanitec Group, purportedly including the '000 patent. On February 4, 2004, the parties to the New Jersey action executed a Consent Judgment, purportedly transferring the assets of Sanitec Group to Sanitec Industries.

On March 5, 2004, Mr. Harkess filed an action in California Superior Court in Los Angeles County seeking a determination as to who owns Windsor Holdings.

On June 18, 2004, the Ohio court entered a Margin Order granting the motion to dismiss the Ohio action without prejudice to Sanitec Limited's interests.

On September 28, 2004, the majority owner of Sanitec West filed a lawsuit against Mr. Harkess for fraud, to establish her rights in Sanitec West.

On October 29, 2004, counsel for Mr. Harkess in the Ohio

action filed and affidavit, admitting that he had assisted Mr. Harkess in preparing false documents to establish that Mr. Harkess owns Windsor Holdings and thereby controls Sanitec Limited. The affidavit was included in a motion for relief from the order of dismissal filed by Sanitec Limited in the Ohio action pursuant to rule 60(b)(3). On November 5, 2004, counsel for Sanitec West filed an objection to Sanitec Limited's motion, asking the Ohio court to hold the motion in abeyance pending resolution of the California action, which would resolve the issue of ownership of Windor Holdings and, thus, the control of Sanitec Limited. The Ohio court granted the motion, asking the parties to notify it by January 31, 2005 of the status of the California action.

In sum, there is pending litigation in the California Superior Court seeking a declaration that Mr. Harkess, not Mr. Quinn and the Windsor Trust, is the rightful owner of Windsor Holdings. A bench trial in the California action was scheduled to commence at the end of March 2005.

## II. Sanitec Industries' Contentions

Sanitec Industries contends that its ownership of the '000 patent came through a final judgment of foreclosure, and by agreements with Sanitec Group, LLC and others. Further, Sanitec Industries contends that it is the owner of record at the U.S.

Patent and Trademark Office. Sanitec Industries argues that it is not a party to the California litigation, nor is the ownership of Sanitec intellectual property an issue in that litigation as the litigation relates only to the ownership of Windsor Holdings. Sanitec Industries argues that even if Mr. Quinn/Windsor Trust are found to own Windsor Holdings, additional federal litigation would be necessary to determine ownership of the '000 patent.

Further, Sanitec contends that, although Defendants have no patent rights to the Sanitec technology or trademark rights to the Sanitec name and/or logo, they have committed acts of patent and trademark infringement and business torts that continue to injure Industries' business.

### LEGAL STANDARD

Defendants' request to stay this lawsuit is based on principles of judicial economy and sound judicial administration, recognized by the Supreme Court in <u>Colorado River Water Cons. Dist. v. United States</u>, 424 U.S. 800 (1976), as valid reasons for a federal court to apply the doctrine of abstention. The decision to stay a federal action in favor of a parallel state action is motivated by a desire to prevent the waste of valuable judicial resources. Abstention is justified "only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important

countervailing interest." Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). Thus, a stay of this federal action would be warranted upon a showing that 1) the federal and state actions are "parallel" and 2) "exceptional circumstances" exist that warrant a stay. See, e.g., Colorado River, 424 U.S. 800; Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983); Summa Four, Inc. v. AT&T Wireless Servs., Inc., 994 F. Supp. 575 (D. Del. 1998).

## DISCUSSION

Before the Court can reach the issue of a stay, the Court must address whether the state and federal actions are parallel. The Court concludes they are not.

Two cases are generally parallel "when they involve the same parties and claims." Ryan, 115 F.3d at 196. Parallelism turns on whether the state litigation will dispose of all of the claims raised in the federal case. See Benninghoff v. Tolson, No. CIV.A. 94-2903, 1994 WL 519745, at *2 (E.D. Pa. Sept. 22, 1994) (defining the relevant inquiry as "whether the state court is able to address all of the claims raised in the federal action, and not whether the complaints are identical. If the state court has jurisdiction to hear the claims presented in the federal case, this supports a finding of parallelism").

7

Accordingly, because these cases do not present the same facts, issues, and parties, and because Sanitec Industries is not able to present all its legal claims in state court, the Court concludes that the cases are not parallel.

Even if the Court found the cases sufficiently parallel to bring the decision to stay within the Court's discretionary power, the Court concludes that exceptional circumstances do not exist that justify a stay. In making this determination, the Court is guided by the following factors: (1) which court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties. Colorado River, 424 U.S. at 818; Moses H. Cone, 460 U.S. at 23-26.

The Court notes, and the parties agree, that the first and second factors cited by the Supreme Court have little or no significance in the circumstances of this case.

The third factor, avoidance of piecemeal litigation, is only met "when there is evidence of a strong federal policy that all claims should be tried in the state courts." Ryan, 115 F.3d at 197-98. The mere possibility of piecemeal litigation is

inadequate to invoke the abstention doctrine. <u>Ryan</u>, 115 F.3d at 198-99. Defendants have not made the Court aware of any such federal policy regarding the patent and trademark claims at issue in the present case. Thus, the Court finds that the third factor weighs against abstention.

The fourth factor, the order in which jurisdiction was obtained, "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," and, in particular, courts should consider the amount of progress that has been made in each action rather than focusing on the date the complaint was filed. <u>Moses H. Cone</u>, 460 U.S. at 21. The Court finds that the California Superior Court action was initiated April 27, 2004, and was scheduled for trial on March 28, 2005. This lawsuit was filed on October 25, 2004, and is still in its early stages. Thus, the Court finds that the fourth factor weighs for abstention. The Court finds that the fifth factor, whether federal or state law controls, weighs against abstention because "the presence of federal issues militates against abstention." <u>Ryan</u>, 115 F.3d at 199.

Finally, the Court finds that the last factor, whether the state court will adequately protect the interests of the parties, weighs against abstention. Mr. Harkess' claim in the California action is that he own Windsor Holdings. Mr. Harkess is not

asserting any claim by or on behalf of Sanitec Industries.

Only one of the factors set forth in <u>Colorado River</u> and its progeny weighs in favor of abstention in the present case. Furthermore, the balancing of the factors should be "heavily weighted in favor of the exercise of jurisdiction." <u>Moses H. Cone</u>, 460 U.S. at 16. Therefore, the Court concludes that Colorado River abstention is not appropriate in the circumstances of this case, and the Court will not stay the claims pending the outcome of the state court proceedings[1].

---

[1] Defendants argue that this case presents special considerations justifying finding exceptional circumstances, relying upon the Court's analysis in <u>Summa Four, Inc. v. AT&T Wireless Services, Inc.</u>, 994 F. Supp. 575 (D. Del. 1998). In <u>Summa Four</u>, state court litigation was focused on the ownership of the patent, and a determination in that forum had a strong chance of obviating the need for patent infringement litigation. The state court had been engaged in the proceedings for more than two years, with a tentative trial date set for one month after the federal court issued its stay. In the absence of a clear articulation of a Federal Circuit or Supreme Court rule concerning the possibility of a stay where the district court has exclusive federal patent jurisdiction, the <u>Summa Four</u> court held that in exceptional circumstances a stay would be deemed appropriate. 994 F. Supp. at 582.

The Court finds that the circumstances in this case differ from those in <u>Summa Four</u> in an important respect. The parties admit that the California action itself will not resolve the issue of ownership of the patent. Rather, the issue before the California court is the narrow one of the ownership of Windsor Holdings. Even if Mr. Quinn and Windsor Trust are found to own Windsor Holdings, additional federal litigation would be necessary to determine ownership of the '000 patent. Thus, the Court concludes that the California litigation would not moot or otherwise inform the federal suit and, thus, additional analysis pursuant to the supplemental factors in <u>Summa Four</u> is not required.

10

## CONCLUSION

For these reasons, the Court will deny Defendants' Motion To Stay This Action Pending Resolution Of Other Litigation To Determine Ownership Of Patent And Trademarks (D.I. 10-1).

An appropriate Order will be entered.