UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANITEC INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1386-JJF |
| | ) | |
| SANITEC WORLDWIDE, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SANITEC INDUSTRIES, INC.'S
MEMORANDUM IN SUPPORT OF ITS
MOTION FOR VOLUNTARY DISMISSAL**

Richard D. Kirk (Bar ID #922)
THE BAYARD FIRM
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardfirm.com

*Attorneys for Plaintiff Sanitec Industries, Inc.*

*Of Counsel:*                                    and

Richard J. Oparil                        Jennifer L. King
PATTON BOGGS LLP                  PATTON BOGGS LLP
2550 M Street, NW                     8484 Westpark Drive
Washington, DC 20037               McLean, VA 22102
(202) 457-6000                           (703) 744-8000

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

SUMMARY OF ARGUMENT ................................................................................ 3

BACKGROUND ...................................................................................................... 3

I.      Sanitec Technology ....................................................................................... 3

II.     Industries And Harkess .................................................................................. 4

III.    Worldwide, Weinsten And Smith ................................................................. 5

IV.     The California Judgment ................................................................................ 5

V.      Corporate Resolutions By Windsor, Worldwide And Sanitec, Ltd. ............... 8

VI.     Discovery In This Action ............................................................................... 10

ARGUMENT ........................................................................................................... 11

I.      Based On The California Ruling And Worldwide's Admissions, There Is No
        Actual Case Or Controversy Between Industries And Worldwide ................. 11

II.     The California Ruling That Industries' OFFICER AND DIRECTOR, Harkess,
        Owns And Controls Windsor, Worldwide, And Sanitec, Ltd. Is Final And
        Binding. ........................................................................................................... 13

III.    Collateral Estoppel Bars Any Challenge To Harkess' Ownership And Control Of
        Worldwide. ..................................................................................................... 14

        A.      Any Issue As To Who Owns And Controls Worldwide Would Be The
                Same As The Issue Decided In The California Litigation. ................... 15

        B.      The Issue Was Actually Decided By The California Court. ................. 15

        C.      Determination Of The Worldwide Ownership Issue Was Necessary To
                The California Judgment. .................................................................... 16

        D.      The California Judgment Is Final. ...................................................... 16

        E.      Weinsten And Smith Had A Full And Fair Opportunity To Litigate The
                Issues In The California Action. ......................................................... 17

IV.     Worldwide Has Admitted That It Is Owned And Controlled By Harkess. ....... 18

V.    Finger Should Not Be Permitted To Continue Representing Worldwide. ...................... 21

CONCLUSION ........................................................................................................................ 24

## TABLE OF AUTHORITIES

### CASES

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)................................................................15

*Airco Industrial Gases, Inc. Div. of BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028 (3d Cir. 1988) ..................................................22

*Allen v. McCurry*, 449 U.S. 90 (1980)........................................................................................17

*American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117 (5th Cir. 1991) ................................22

*Anyanwutaku v. Fleet Mortg. Group*, 85 F. Supp. 2d 566 (D. Md. 2000)....................................17

*Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 55 F.Supp.2d 309 (D.Del. 1999)....................22

*Averbach v. Rival Mfg. Co.*, 879 F.2d 1196 (3d Cir. 1989), *cert. denied*, 493 U.S. 1023 (3d Cir. 1989)..................................................................................23

*Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422 (D. Del. 1999), *aff'd*, 2002 U.S. Dist. Lexis 13957 (Fed. Cir. Mar. 15, 2002) ...................................15

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996)...............................................14

*Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989) ...................................................14

*Combustion Eng'g Caribe, Inc. v. Geo P. Reintjes Co.*, 298 F. Supp. 2d 215 (D.P.R. 2003)...........................................................................24

*Continental Can Co. v. Marshall*, 603 F.2d 590 (7th Cir. 1979) .................................................18

*DeFunis v. Odegaard*, 416 U.S. 312 (1974) ................................................................................14

*DirecTV, Inc. v. Gallagher*, 2005 U.S. Dist. Lexis 9898 (D.N.J. May 25, 2005) ........................21

*Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211 (3d Cir. 2003) .....................................14

*Dukes v. South Carolina Ins. Co.*, 770 F.2d 545 (5th Cir. 1985) .................................................22

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 .................................................................................21

*Government of the Virgin Islands v. Testamark*, 528 F.2d 742 (3d Cir. 1976)............................14

*Green v. Warden, U.S. Penitentiary*, 699 F.2d 364 (7th Cir.), *cert. denied*, 461 U.S. 960 (1983) ....................................................................................14

*In re Knapper*, 407 F.3d 573 (3d Cir. 2005) ..............................................................................16

619115v1

*Khodara Envtl., Inc. ex rel Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186 (3d Cir. 2001) ............ 15

*Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004) .................................................... 14

*Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761 (Fed. Cir. 1990) ............................ 15

*Lloyd v. Jefferson*, 53 F. Supp. 2d 643 (D. Del. 1999) .............................................................. 16

*Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962) ....................................................................................... 19

*McDonald v. City of West Branch*, 466 U.S. 284 (1984) ............................................................ 16

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1992) ...................................................................................................................... 18

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566 (Fed. Cir. 1983) ............... 17, 18

*Nemours Found. v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418 (D. Del. 1986) ............ 24

*New Jersey Turnpike Authority v. Jersey Cent. Power and Light*, 772 F.2d 25 (3d Cir. 1985) ..................................................................................................................... 14

*Parker v. Pepsi-Cola General Bottlers, Inc.*, 249 F. Supp. 2d 1006 (N.D. Ill. 2003) ................. 24

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ................................................................ 17

*Pony Express Records, Inc. v. Springsteen*, 163 F.Supp.2d 465 (D.N.J. 2001) ......................... 19

*Powell v. McCormack*, 395 U.S. 486 (1969) ............................................................................ 14

*Ross v. United States*, 949 F. Supp. 536 (N.D. Ohio 1996) ...................................................... 21

*Satellite Financial Planning Corp. v. First Nat. Bank of Wilmington*, 652 F. Supp. 1281 (D. Del. 1987) ...................................................................................................... 24

*Sedlack v. Braswell Servs. Group*, 134 F.3d 219 (4th Cir. 1998) .............................................. 17

*Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969) ................................................................. 14

*Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888 (D. Del. 1991) ................................ 14

*Swentek v. USAir, Inc.*, 830 F.2d 552 (4th Cir. 1987) ............................................................... 19

*TM Patents, L.P. v. Int'l Business Machines Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) .......... 17

*United States v. Golden Acres, Inc.*, 702 F. Supp. 1097 (D. Del. 1988), *aff'd without op.*, 879 F.3d 857 (3d Cir. 1989) ........................................................................... 21

619115v1

*United States v. Klimek*, 952 F. Supp. 1100 (E.D. Pa. 1997) ........................................ 21

*United States v. Weinsten*, 96-CR-702 (FB) (E.D.N.Y.) ............................................ 12

*Uzzell v. Friday*, 592 F. Supp. 1502 (M.D.N.C. 1984) .............................................. 14

*Watson v. Riverside Osteopathic Hosp.*, 78 F. Supp. 2d 634 (E.D. Mich. 1999) ........................ 21

*Weinberger v. UOP, Inc.*, 409 A.2d 1262 (Del. Ch. 1979) ........................................... 10

*Witkowski v. Welch*, 173 F.3d 192 (3d Cir. 1999) .................................................. 19

*Wolstein v. Docteroff*, 133 F.3d 210 (3d Cir. 1997) ............................................ 17, 19

*Wright v. Paul Revere Life Ins. Co.*, 291 F.Supp.2d 1104 (C.D. Cal. 2003) ......................... 21

*Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir.), *cert. denied*, 377 U.S. 934 (1964) ................. 19

## STATUTES

15 U.S.C. § 1051 *et seq.* ........................................................................... 1

28 U.S.C. § 1738 .................................................................................... 16

35 U.S.C. § 1 *et seq.* .............................................................................. 1

8 Del. C. § 228(a) .................................................................................. 10

## RULES

ABA Model Rules of Prof. Conduct 1.13(a) ........................................................... 25

ABA Model Rules of Prof. Conduct 1.16(a)(3) ........................................................ 25

ABA Model Rules of Prof. Conduct 1.7(a) ............................................................ 26

Del. Prof. Cond. R. 1.13(a) ........................................................................ 25

Del. Prof. Cond. R. 1.16(a)(3) ..................................................................... 25

Del. Prof. Cond. R. 1.7(a) ......................................................................... 26

Fed. R. Civ. P. 16 .................................................................................. 2

Fed. R. Civ. P. 26(a) ........................................................................... 11, 23

Fed. R. Civ. P. 26(e)(1) ........................................................................... 23

Fed. R. Civ. P. 26(e)(2) ........................................................................... 23

619115v1

Fed. R. Civ. P. 29.................................................................................................21

Fed. R. Civ. P. 36...........................................................................................22, 24

Fed. R. Civ. P. 36(a) ................................................................................13, 21, 22

Fed. R. Civ. P. 36(b) ......................................................................................13, 22

Fed. R. Civ. P. 37(b)(2)(A)-(C).............................................................................23

Fed. R. Civ. P. 37(c)(1).........................................................................................23

Fed. R. Civ. P. 41(a)(2)...........................................................................................1

Fed. R. Evid. 201(b)..............................................................................................13

Fed. R. Evid. 201(d)..............................................................................................13

Local Rule 83.6(d)(2).............................................................................................25

## TREATISES

18 MOORE'S FED. PRAC. § 132.03[5][b] (2003).......................................................17

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III, § 2.........................................................................................14

## INTRODUCTION

Plaintiff, Sanitec Industries, Inc. ("Industries"), moves to dismiss this action against defendant, Sanitec Worldwide, Ltd. ("Worldwide"), without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). As a result of a decision in litigation in California Superior Court, two former defendants here, Jeffrey J. Weinsten ("Weinsten") and James H. Smith ("Smith"), have no ownership interest in Worldwide and have been enjoined from asserting any such interest. Instead, James Harkess ("Harkess"), who is a director, officer and shareholder of Industries, has been determined to be the person who indirectly owns and controls Worldwide. Because Industries is now in the posture of essentially suing itself, there is no need to continue this action.

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and state statutory and common law. Industries filed this action against defendants Worldwide, Weinsten and Smith on October 25, 2004. (D.I. 1). Industries filed its first amended complaint on November 29, 2004. (D.I. 7). Industries' amended complaint alleged that Worldwide, Weinsten and Smith, who have no patent rights to the Sanitec technology, no trademark rights to the Sanitec name and/or logo, and no proprietary rights to any part of the Sanitec technology (D.I. 7 ¶¶ 15-17), have committed acts of patent and trademark infringement and business torts that have injured and continue to injure Industries' business. Industries seeks injunctive and equitable relief and damages from Worldwide for patent and trademark infringement (Counts I-III), unfair competition and deceptive trade practices (Counts II and IV), conversion of physical assets (Count V), and tortious interference with prospective business relations (Count VI).

Weinsten and Smith engaged David L. Finger, Esq. ("Finger") purportedly to act as counsel for all three defendants. (Ex. 1, Request No. 21).[1] On December 15, 2004, defendants filed a motion to stay and dismiss this action. (D.I. 10-12). On July 7, 2005, the Court denied the motion to stay and dismiss as to Worldwide, but dismissed the action without prejudice as to Weinsten and Smith for lack of personal jurisdiction. (D.I. 21-25).

On July 25, 2005, Worldwide filed its answer, denying liability to Industries and asserting affirmative defenses. (D.I. 27). However, Worldwide's answer to the amended complaint in fact admitted the following acts of infringement by Weinsten and Smith:

- In September 2004, SheGoTec Japan, Inc. entered into a Distribution Agreement with "Sanitec, Ltd.", which agreement was executed by Smith and Justin Kaufman, to market infringing units in Japan. (D.I. 7 ¶ 20; D.I. 27 ¶ 20).

- After the Distribution Agreement with SheGoTec Japan, Inc. was executed, Weinsten provided to Kaufman a letter dated September 24, 2004, which was intended for public distribution. (D.I. 7 ¶ 21 & Ex. 2; D.I. 27 ¶ 21).

- On or about October 15, 2004, Weinsten sent an email message to Steven Gallegos confirming an offer to sell a Sanitec disposal unit to him. (D.I. 7 ¶ 22; D.I. 27 ¶ 22).

- Worldwide had maintained a website, www.sanitecworldwide.com, on which it represented, among other things, that it "manufactures and distributes the proprietary Sanitec[®] line of microwave disinfection systems for medical waste treatment." The site also had a link to contact Worldwide "for sales" information, sales@sanitecworldwide.com. Smith was represented as being the President of Worldwide, and Weinsten was represented to be its Vice President. (D.I. 7 ¶ 14; D.I. 27 ¶ 14).

Worldwide did not file any counterclaim against Industries.

The Court entered a Rule 16 Scheduling Order on August 4, 2005. (D.I. 32). Industries timely served its initial disclosures on August 5, 2005. (D.I. 30). Worldwide, however, never provided its initial disclosures to Industries. (Ex. 31, Declaration of Richard J. Oparil ("Oparil

---

[1]    Ex. 1 is Industries' requests for admissions to Worldwide. As discussed below, Worldwide failed to answer those requests, meaning that they are deemed admitted.

Decl.") ¶ 3). Discovery has closed, and Worldwide did not bother to respond to Industries' requests for admission or interrogatories or to produce any documents. (*Id.* ¶¶ 3-4; Exs. 1-4).

## SUMMARY OF ARGUMENT

The California Superior Court has ruled in a final, binding, and unappealed decision, that Harkess owns and controls Windsor Holdings LLC ("Windsor"), which owns and controls Worldwide. Harkess also is a director and officer of Industries. As such, Industries is in the position of suing itself. Industries and Worldwide are no longer adverse parties and there is no actual case or controversy. Moreover, Worldwide failed to respond to Industries' requests for admission, and should therefore be deemed to have admitted that Harkess owns and controls Worldwide. Finally, Worldwide's counsel in this action, Finger, has been discharged by Worldwide's Board of Directors.

## BACKGROUND

### I.    SANITEC TECHNOLOGY

The technology at issue ("the Sanitec technology") uses a system of steam and microwave generators to disinfect and sterilize medical waste in an environmentally sound manner. Wastes treated using the Sanitec technology are thoroughly disinfected, unrecognizable, reduced in volume by approximately 80% (saving landfill space and reducing hauling requirements and costs), and safe for landfill disposal. (*See generally* D.I. 7 ¶ 9; D.I. 27 ¶ 9; Ex. 5). About the size of a bus, the on-site and mobile (truck-based) Sanitec units are fully automated, self-contained and are approved for use in all 50 states and the District of Columbia.

The Sanitec technology is the subject of product and process patents in the United States and many foreign countries. One of those patents is U.S. Patent No. 5,270,000 ("the '000 patent"), which issued on December 14, 1993 to Goldner, *et al.*, is entitled "Apparatus and

process for treating medical hazardous wastes", and contains product and process claims.  (D.I. 7 ¶ 11 & Ex. 1 thereto).

## II.    INDUSTRIES AND HARKESS

Industries, a California corporation formed in 2003, sells and/or leases products embodying the Sanitec technology to customers in the United States and foreign countries. (D.I. 7 ¶¶ 3, 10).  Industries is the owner of the entire right, title and interest in the '000 patent, and also owns the entire right, title and interest in common law and federally registered trademarks using the term "Sanitec" for waste disposal machines and related services.  (D.I. 7 ¶¶ 11-12).  Industries obtained its ownership of the Sanitec intellectual property through (a) a final judgment of foreclosure, (b) an agreement with Sanitec Group, LLC ("Group") and others, and (c) an assignment from Sanitec, Ltd. to Industries.  (D.I. 7 ¶¶ 11-13; Exs. 6-8).

In July 2005, Industries acquired Mount Holly, NC-based SafeWaste, Inc. One of this country's largest providers of on- and off-site treatment of biohazardous waste using Sanitec technology, SafeWaste provides services to more than 1,000 healthcare facilities.  (Ex. 9). Industries also has recently entered into contracts with healthcare providers, including Good Samaritan Hospital in California and Novant Health in North Carolina, to treat medical waste using the Sanitec technology.  (Exs. 10-11).

Harkess is an officer and director of Industries.  (Oparil Decl. ¶ 5).  As discussed more fully below and as admitted by Worldwide (Ex. 1, Request No. 1), Harkess owns and controls Windsor, which, in turn, owns at least a majority of the stock of Worldwide.  Harkess is a director and officer of Worldwide as well as a Delaware corporation owned 100% by Worldwide, Sanitec, Ltd.  Sanitec, Ltd. owned the patent and trademarks at issue here before they were assigned to Group and then Industries.  (D.I. 7 ¶¶ 4; D.I. 27 ¶ 4).

## III.   WORLDWIDE, WEINSTEN AND SMITH

Weinsten and Smith have held themselves out as officers of Worldwide (Vice President and President, respectively), and have also done business using the name "Sanitec, Ltd." (D.I. 7 ¶¶ 5-6; D.I. 27 ¶¶ 5-6).

Weinsten, a convicted felon,[2] also is the sole shareholder, director and officer of Salem Associates, Inc. ("Salem"), an inactive and void Delaware corporation, and North Salem Associates, Inc. Salem had owned a 49% minority interest in Worldwide. (D.I. 17 Ex 1; D.I. 17 Ex. 2 at 11:7-12:1, 14:17-16:24; Ex. 1, Request Nos. 4-6; Ex. 12 at 2).

## IV.   THE CALIFORNIA JUDGMENT

In other litigation involving the Sanitec technology and intellectual property, including in the U.S. District Court for the Northern District of Ohio, disputes arose as to the true ownership of Worldwide and Sanitec, Ltd. (Oparil Decl. ¶ 6). It was and is undisputed that Windsor owns 51% of Worldwide, which in turn owns all of the shares of Sanitec, Ltd. (*See, e.g.*, Ex. 12 at 2). Thus, whoever owns and controls Windsor indirectly owns and controls Worldwide and Sanitec, Ltd. Harkess asserted that he owned Windsor. Weinsten and Smith asserted that they, as trustees of a purported Windsor Trust allegedly created by Terrance Quatkemeyer aka Terrence Quinn ("Quinn"), owned Windsor.

In order to finally resolve the ownership dispute, Harkess initiated an action in the Superior Court of Los Angeles County, California, captioned *Harkess v. Quinn, et al.*, No. 311681, seeking a declaration that he owned and controlled Windsor, and thus Worldwide and

---

[2]      In August 1997, in a case captioned *United States v. Weinsten*, 96-CR-702(FB) (E.D.N.Y.), Weinsten was convicted of three counts of mail fraud pertaining to the sale to the government of defective chemical protective suits that were used by members of the U.S. Coast Guard during Operation Desert Storm. (D.I. 17 Exs. 5-6; Ex. 1, Request Nos. 13-14). In 2000, Weinsten was disbarred in New York based on that felony conviction. (D.I. 17 Ex. 7).

Sanitec, Ltd. ("the California litigation"). (Ex. 13). The Windsor Trust and Quinn filed a cross-complaint asserting that the Windsor Trust owned Windsor. (Ex. 14). Significantly, the defendants here previously represented to this Court that the decision in the California litigation would resolve any issue as to who owns Worldwide:

> [A] decision in the LA Action will either resolve the present action altogether or will eliminate the issue of ownership from this action. Nor is there the risk of overlapping discovery.

(D.I. 11 at 8-9).

A bench trial in the California litigation was held in Spring 2005. In their trial brief, Weinsten, Smith, Quinn and the Windsor Trust told the California Superior Court that "[i]t is undisputed that Windsor is the majority shareholder of Sanitec Worldwide, Ltd., which is the sole owner of Sanitec, Ltd." (Ex. 15 at 2). Their post-trial brief told the Court that "Windsor Holdings LLC is merely a holding company for the shares of Sanitec Worldwide, Ltd." (Ex. 16 at 5). Attached to that brief was a timeline stating that Windsor was the majority shareholder in Worldwide, and that Worldwide was the sole shareholder of Sanitec, Ltd. (*Id.* at 10). During the trial itself, Weinsten testified that Windsor owned 102 shares of Worldwide and that his company, Salem, owned 98 shares, a minority interest. (Ex. 17 at 145:7-11; Ex. 1, Request No. 23).

On July 11, 2005, the Superior Court issued a tentative ruling and proposed decision in Harkess' favor. (Ex. 18). The defendants, including Weinsten and Smith, submitted objections to that tentative ruling. (Ex. 19). Among defendants' objections was that the Court should not make any finding as to who owns Worldwide. (*Id.* at 4). The defendants went on to request that, should the Court choose to make any finding that Windsor is the majority 51% shareholder of Worldwide, the Court should also make a further finding that Salem is the minority 49% shareholder. (*Id.*). Defendants themselves noted that such "evidence was put before the Court

619115v1

- 6 -

and was undisputed by the parties." (*Id.*).  Harkess argued that the matter of who controls Windsor, Worldwide and Sanitec, Ltd. was properly before the Court and should "finally be put to bed." (Ex. 20 at 1).

The California Superior Court agreed with Harkess' position.  On August 18, 2005, after a year of litigation and a week-long bench trial, the Court entered judgment confirming that Harkess owns Windsor, and through Windsor, owns and controls Worldwide and Sanitec, Ltd..  The "undisputed evidence presented by both sides [at trial], which constituted the need for this Court to determine ownership of Windsor," was that Windsor owned Worldwide and Worldwide owned Sanitec, Ltd.[3]  (Ex. 21 Ex. A (Judgment) at 2).  The Court ruled that Harkess is the "sole owner" of Windsor and therefore the majority owner of Worldwide and that Quinn, Weinsten, Smith and their alleged "Trust" are not:

> The Court declares that HARKESS is the sole owner of Windsor and Windsor's assets, including but not limited to, Windsor's ownership interests in Worldwide and Limited [*i.e.*, Sanitec, Ltd.]. Neither QUINN, SMITH, WEINSTEN, nor any successor trustees or beneficiaries of the purported TRUST have any right, title or interest in Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Limited[.]

(*Id.* at 3).  Indeed, the judgment expressly held that Weinsten and Smith "are barred by the equitable doctrines of unclean hands and equitable estoppel from asserting ownership in Windsor." (*Id.* at 2, quoting Ex. B at 2).

The final judgment clearly and unequivocally "restrain[s] and permanently enjoin[s]" Quinn, Smith and Weinsten from "claiming any right, title or interest in Windsor and/or . . . Windsor's ownership interest in Worldwide" (*id.* at 3), and "from making any

---

[3]    Factual and legal support for the Court's judgment was set forth in a detailed statement of decision.  (Ex. 21 Ex. B).

representations that they have any ownership interest in or control over Windsor and/or Windsor's ownership interest in Worldwide" (*id.* at 3-4).

Weinstein, Quinn and Smith subsequently stipulated to entry of Final Judgment. (Ex. 21). They further waived their appeal rights, in return for Harkess' waiver of court costs against them. (*Id.*; Ex. 22 §§ 1.1, 2.1).

The following chart shows the ownership structure as determined by the California Court:



Accordingly, the dispute about who owns Worldwide and Sanitec, Ltd. is over. Weinsten, Smith, Quinn, and others acting in concert with them have been enjoined from asserting any ownership interest in Windsor and Windsor's assets, including Sanitec, Ltd. and Worldwide. As a result of this final decision in the California litigation, Harkess and Industries effectively own and control Worldwide.[4]

## V.    Corporate Resolutions By Windsor, Worldwide And Sanitec, Ltd.

After the California litigation was decided, Windsor (by its sole and managing member, Harkess) signed a written consent, electing Harkess, Russell Firestone ("Firestone") and Nord

---

[4]    On December 14, 2005, the California Court issued an Order to Show Cause why Weinsten and Smith should not be held in contempt for violating the judgment enjoining them from representing that they had any interest in Windsor, Worldwide or Sanitec, Ltd. (Ex. 23). The contempt proceeding is pending. (Oparil Decl. ¶ 7).

Sorenson ("Sorenson") to be Worldwide's Directors.[5] (Ex. 24). In turn, Worldwide, as the sole shareholder, also elected Harkess, Firestone and Sorenson to the Board of Directors of Sanitec, Ltd. (Ex. 25). By unanimous written consents, the Boards of Directors of Worldwide and Sanitec, Ltd. appointed Harkess, Firestone, and Sorenson to be officers of those companies. (Exs. 26-27).

By written consent, the Worldwide Board adopted a resolution that the officers Harkess (Chairman of the Board and President), Firestone (Vice President and Secretary), and Sorenson (Vice President) were authorized and directed to take any necessary action to conduct the business of Worldwide. (Ex. 26). Harkess was given the express authority to direct the actions of Worldwide's counsel in any pending litigation, which includes this action. (Id.). The written consent also "[r]esolved that Jeffrey Weinsten, James H. Smith, and persons acting on their behalf have no connection with and are not authorized to act on behalf of [Worldwide]." (Id.; see also Ex. 27). The resolution specifically named five law firms that were and are authorized to represent Worldwide; the Bayard Firm and Patton Boggs LLP are included, but Finger & Slanina is not. Indeed, Worldwide's Board resolved that other than the five named firms, "no other counsel is authorized to represent the Company in any pending litigation."

On November 30, 2005, Industries' counsel wrote to Finger to inform him of the outcome of the California case, to provide him with copies of the relevant judicial findings and the

---

[5]    Because Windsor owns a majority of Worldwide's shares, it could act by written consent to elect directors, without any shareholders' meeting, prior notice, or a vote. 8 Del. C. § 228(a). Windsor owns at least a majority of the shares of Worldwide. (See, e.g., Ex. 1, Request Nos. 2, 23; Ex. 17 at 145:7-11). Worldwide, Weinsten and Smith earlier argued to this Court that Delaware law "recognizes that majority shareholders have the power to control the actions of their corporations." (D.I. 18, citing Weinberger v. UOP, Inc., 409 A.2d 1262, 1266 (Del. Ch. 1979)).

settlement agreement, and to discharge him as Worldwide's counsel. (Ex. 28). The letter

demanded that Finger withdraw from representing Worldwide:

> Your firm is not authorized to represent Worldwide in this action.
> Attached is a copy of a written consent of Worldwide's Board of
> Directors confirming these facts. Please immediately file a motion
> to withdraw from representing Worldwide in this action.

(*Id.*, citation omitted). Finger neither replied to the letter nor moved to withdraw. (Oparil Decl.

¶ 8).

## VI.    DISCOVERY IN THIS ACTION

In addition to failing to serve its initial disclosures required by Fed. R. Civ. P. 26(a)

(Oparil Decl. ¶ 3), Worldwide, represented by Finger, has utterly failed to comply with its

discovery obligations. On August 8, 2005, Industries served its First Set of Requests for the

Production of Documents and Things. (D.I. 31; Ex. 3). Worldwide responded on October 5,

2005, and agreed, subject to its objections, to produce responsive documents. (D.I. 33; Ex. 4).

However, Worldwide has never produced any documents to Industries. (Oparil Decl. ¶ 3). On

December 1, 2005, Industries' counsel wrote to Worldwide's counsel, Finger, reminding him that

he had not provided Worldwide's initial disclosures or any responsive documents. (Ex. 29).

That letter was ignored and no response was ever received. (Oparil Decl. ¶ 4).

On November 15, 2005, Industries served by hand requests for admissions and

interrogatories on Worldwide. (D.I. 34; Exs. 1-2). Worldwide ignored and did not respond to

those requests. (Oparil Decl. ¶ 3). As discussed below, by failing to respond to Industries'

requests for admission, Worldwide is deemed to have admitted relevant facts supporting this

motion.

## ARGUMENT

I.    **BASED ON THE CALIFORNIA RULING AND WORLDWIDE'S ADMISSIONS, THERE IS NO ACTUAL CASE OR CONTROVERSY BETWEEN INDUSTRIES AND WORLDWIDE.**

There is no current case or controversy between Industries and Worldwide. The California Superior Court found and ruled that Industries' Chairman and President, Harkess, owns and controls Worldwide, and enjoined Smith and Weinsten from asserting that they have any interest in Worldwide. (Ex. 21).[6] Moreover, Worldwide (as represented by Finger) failed to respond to Industries' requests for admissions that, among other things, Harkess, and not Weinsten and Smith, owns and controls Worldwide. Accordingly, there is no actual dispute between Industries and Worldwide and the case should be dismissed.

The Constitution limits a federal court's jurisdiction to the adjudication of actual cases and controversies. U.S. Const. art. III, § 2; *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974); *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004); *Donovan v. Punxsutawney*

---

[6]    Industries respectfully requests that the Court take judicial notice of court documents from other relevant litigation, *i.e.*, Exs. 6, 12-21, 23. "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts appropriately take judicial notice of opinions and actions of other courts. *See, e.g., Shuttlesworth v. Birmingham*, 394 U.S. 147, 157 (1969) (courts may properly take judicial notice of the record in other litigation "between the same parties who are now before us.") (footnote omitted); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (courts may take judicial notice of guilty plea entered in another court); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir.) ("federal courts may also take notice of proceedings in other courts, both in and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."), *cert. denied*, 461 U.S. 960 (1983); *Government of the Virgin Islands v. Testamark*, 528 F.2d 742 (3d Cir. 1976) (judicial notice of court records of previous conviction); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991) ("Pursuant to Rule 201(b)(2), the Court can take judicial notice of the contents of court records from another jurisdiction."); *Uzzell v. Friday*, 592 F. Supp. 1502, 1524-25 (M.D.N.C. 1984) (court took judicial notice of orders in other court and administrative proceedings).

*Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Thus, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-699 (3d Cir. 1996). A court "may lose jurisdiction over a case because of the occurrence of facts outside the record which terminate the controversy. We have constitutional jurisdiction only over actual cases and controversies between adverse interests, with respect to which our judgment will be effective." *New Jersey Turnpike Authority v. Jersey Cent. Power and Light*, 772 F.2d 25, 27 (3d Cir. 1985); *see also Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761, 764 (Fed. Cir. 1990); *Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422, 453 (D. Del. 1999), *aff'd*, 2002 U.S. Dist. Lexis 13957 (Fed. Cir. Mar. 15, 2002). There is no actual case or controversy if the interests of the plaintiff and defendant are no longer adverse. *See, e.g., Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (a controversy disappears when a party no longer has a personal stake in the outcome of the litigation). A case or controversy exists when "each side has interests that are adverse to the other[.]" *Blakey*, 376 F.3d at 194. The requirement that a case or controversy be "actual [and] ongoing" extends throughout all stages of federal judicial proceedings. *See, e.g., Khodara Envtl., Inc. ex rel Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001).

Based on the California ruling, Worldwide's admissions, and Harkess' position as an officer and director of Industries, Industries and Worldwide are no longer adverse parties. Indeed, Industries is now in the posture of essentially suing itself. Consequently, this action should be dismissed.

II.    **THE CALIFORNIA RULING THAT INDUSTRIES' OFFICER AND DIRECTOR, HARKESS, OWNS AND CONTROLS WINDSOR, WORLDWIDE, AND SANITEC, LTD. IS FINAL AND BINDING.**

The defendants asserted in their brief in support of their motion to stay this action that the California litigation "would decide ownership of the ['000] patent" (D.I. 11 at 8). The California litigation involved the issue of who owns Windsor (and thus Worldwide and Sanitec, Ltd.) – Harkess, Quinn, or the purported Windsor Trust (with Weinsten and Smith as the alleged trustees). (D.I. 12 Ex. F; D.I. 17 Exs. 8-9).

The California Superior Court decision did, in fact, decide the ownership issue before it. The August 18, 2005 judgment ruled that Harkess owns Windsor, and through Windsor, he owns and controls Worldwide and Sanitec, Ltd. (Ex. 21 Ex. A (Judgment) at 2). The Court ruled that Harkess is the "sole owner" of Windsor and its assets, "including but not limited to, Windsor's ownership interests in Worldwide and [Sanitec, Ltd.]." (*Id.* at 3). The Court further found that Quinn, Smith, Weinsten, and the Windsor Trust did *not* "have any right, title or interest in Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Limited[.]" (*Id.*). Indeed, the Court "restrained and permanently enjoined" Quinn, Smith, Weinsten and anyone acting in their behalf from "claiming any right, title or interest in Windsor and/or . . . Windsor's ownership interest in Worldwide[.]" (*Id.* at 3). They were also "specifically restrained and permanently enjoined from making any representations that they have any ownership interest in or control over Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Limited." (*Id.* at 3-4).

The California judgment in Harkess' favor is final and binding. A state court ruling "shall have the same full faith and credit in every court within the United States and its Territories and

Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. The Third Circuit recently confirmed that:

> Where, as here, a final judgment has been entered by the state court, the Full Faith and Credit statute, 28 U.S.C. § 1738, requires such judgment be accorded the same respect and finality in federal court it would receive in its state of origin.

*In re Knapper*, 407 F.3d 573, 584 (3d Cir. 2005), citing *McDonald v. City of West Branch*, 466 U.S. 284, 287 (1984).[7] *See also Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 683 (D. Del. 1999) (a federal court is bound by § 1738 and must give a prior state judgment the same effect as would the adjudicating state).

Accordingly, the California ruling that Harkess, and not some other person or entity, owns and controls Windsor, and thus Worldwide and Sanitec, Ltd., is binding. Because Harkess owns and controls Worldwide and is a director and officer of Industries, Industries and Worldwide are no longer adverse parties. Accordingly, this action should be dismissed for lack of a case or controversy.

## III.    COLLATERAL ESTOPPEL BARS ANY CHALLENGE TO HARKESS' OWNERSHIP AND CONTROL OF WORLDWIDE.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983); *TM Patents, L.P. v. Int'l Business Machines Corp.*, 72 F. Supp. 2d 370, 375 (S.D.N.Y. 1999). "The underlying rationale is that a

---

[7]    *Knapper* found that it was "inappropriate, therefore, for the Bankruptcy Court to stand in judgment of the merits of the valid state court judgment." 407 F.3d at 584.

party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." *Mother's Restaurant, Inc.*, 723 F.2d at 1569.

There is a five part test to find collateral estoppel (also called issue preclusion):

> For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Anyanwutaku v. Fleet Mortg. Group*, 85 F. Supp. 2d 566, 572 (D. Md. 2000), quoting *Sedlack v. Braswell Servs. Group*, 134 F.3d 219, 224 (4th Cir. 1998). *See also Wolstein v. Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997); *Mother's Restaurant, Inc.*, 723 F.2d at 1569; 18 MOORE'S FED. PRAC. § 132.03[5][b] (2003). Each of these factors is met here.

### A. Any Issue As To Who Owns And Controls Worldwide Would Be The Same As The Issue Decided In The California Litigation.

"[T]he issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding. They are not identical if the legal standards governing their resolution are significantly different." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1992). To the extent that anyone purporting to represent Worldwide in this case asserts that Harkess does not own and control Worldwide, the issues would be identical to those already decided by the California Superior Court.

### B. The Issue Was Actually Decided By The California Court.

It is beyond dispute that the California Superior Court's ruling actually decided the relevant issues. The Court expressly found that the "undisputed evidence presented by both sides [at trial], which constituted the need for this Court to determine ownership of Windsor," was that Windsor owned Worldwide and Worldwide owned Sanitec, Ltd. (Ex. 21 Ex. A (Judgment) at 2).

The Court ruled that Harkess is the "sole owner" of Windsor and therefore the majority owner of Worldwide and that Quinn, Weinsten, Smith and the alleged Windsor Trust have no ownership interest.

Accordingly, the relevant issues were actually decided. *See, e.g., Mother's Restaurant, Inc.*, 723 F.2d at 1570 ("The requirement is 'generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it'") (quoting *Continental Can Co. v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979).

**C.    Determination Of The Worldwide Ownership Issue Was Necessary To The California Judgment.**

The entire reason for the California litigation was to obtain a resolution of who owned and controlled Windsor, Worldwide and Sanitec, Ltd. The determination of those relevant issues was necessary to the California judgment. *See, e.g., Mother's Restaurant, Inc.*, 723 F.2d at 1571 ("the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.").

**D.    The California Judgment Is Final.**

The California judgment is final for all purposes. Moreover, because of a Settlement Agreement and Mutual Release, the judgment will not be appealed. (Ex. 21; Ex. 22 §§ 1.1, 2.1). The finality prong has been met and collateral estoppel is proper. *See, e.g., Swentek v. USAir, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987) ("Finality for purposes of collateral estoppel is a flexible concept and 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'") (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962)); *Wolstein*, 133 F.3d at 215-16 (accord); *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir.) (accord), *cert. denied*, 377 U.S. 934 (1964).

**E.**    **Weinsten And Smith Had A Full And Fair Opportunity To Litigate The Issues In The California Action.**

Collateral estoppel "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies." *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999). *See also Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 474 (D. N.J. 2001) ("The doctrine of collateral estoppel also applies, however, to parties who have not participated in the previous litigation but are found to be in privity with the parties estopped by the previous litigation."). Worldwide admitted in this case that Smith and Weinsten held themselves out as officers of Worldwide; therefore, according to Worldwide's admissions, it is purportedly in privity with Smith and Weinsten. (D.I. 7 ¶¶ 5-6; D.I. 27 ¶¶ 5-6). Smith and Weinsten were both parties to the California litigation, which determined that Harkess indirectly owns Worldwide. (Ex. 30). Weinsten and Smith both signed the Settlement Agreement that, among other things, ended the California litigation. (Ex. 22).

There can be no dispute that there was a full and fair opportunity to litigate the ownership issue in the California case. The Court held a week-long trial, hearing from numerous witnesses, including Harkess, Smith and Weinsten. Smith and Weinsten's counsel actively participated in the trial -- making an opening statement, examining and cross-examining witnesses, and offering documentary evidence. Their counsel prepared post trial briefs and sought to have the Court modify its tentative ruling. This record shows the requisite opportunity to litigate. *See, e.g.*, *Docteroff*, 133 F.3d at 215 (there was a full and fair opportunity to litigate even though default judgment was entered as a discovery sanction). Moreover, Weinsten and Smith, individually and as alleged trustees, signed the agreement giving up their right to appeal the California decision. (Ex. 21; Ex. 22 §§ 1.1, 2.1).

Consequently, the California ruling should be given collateral estoppel effect. To find otherwise would undercut the effect of the California judgment and waste judicial resources. As a result, Industries' Chairman and President is the lawful owner of Worldwide and there is no need for Industries to continue litigating its claims against Worldwide.

## IV.   WORLDWIDE HAS ADMITTED THAT IT IS OWNED AND CONTROLLED BY HARKESS.

This case should be dismissed for another reason – by failing to answer Industries' requests for admissions, Worldwide has admitted, *inter alia*, that Harkess owns and controls Windsor and Windsor owns and controls Worldwide and Sanitec, Ltd. Worldwide also admitted that Weinsten and Smith are **not** directors, officers, employees or agents of Worldwide.

Under Fed. R. Civ. P. 36(a), an unanswered request is deemed admitted:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

*See, e.g., Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) (noting deemed admission following failure of party to deny request for admission), *cert. denied*, 429 U.S. 1038; *DirecTV, Inc. v. Gallagher*, 2005 U.S. Dist. Lexis 9898 at *5-7 (D. N.J. May 25, 2005) (defendant did not timely respond to the requests and they are deemed admitted under Rule 36(a)); *United States v. Klimek*, 952 F. Supp. 1100, 1103 (E.D. Pa. 1997) (failure to respond to the Government's two sets of requests for admissions means that the matters contained therein are deemed admitted); *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1106 (D. Del. 1988) (where defendants failed to respond to plaintiff's requests for admission, the matters were deemed admitted), *aff'd without op.*, 879 F.3d 857 (3d Cir. 1989); *Wright v. Paul Revere Life Ins.*

*Co.*, 291 F. Supp. 2d 1104, 1111 (C.D. Cal. 2003) (failure to timely respond to requests for admissions results in automatic admission of the matters requested; Rule 36(a) is self executing.); *Watson v. Riverside Osteopathic Hosp.*, 78 F. Supp. 2d 634, 647 (E.D. Mich. 1999) (request deemed admitted, by virtue of plaintiff's failure to respond within 30 days); *Ross v. United States*, 949 F. Supp. 536, 538 (N.D. Ohio 1996) (requests for admissions are deemed admitted based on the defendant's failure to answer or object to the requests).

Here, Industries served its requests for admissions on Worldwide on November 15, 2005. (D.I. 34; Ex. 1). Worldwide has never responded to those requests. (Oparil Decl. ¶ 3). Thus, each request is deemed admitted. "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b). *See, e.g., Airco Industrial Gases, Inc. Div. of BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1037 (3d Cir. 1988) (a Rule 36 admission "is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case."); *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117 (5th Cir. 1991) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."); *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 549 (5th Cir. 1985) ("According to Federal Rule of Civil Procedure 36(b), any matter admitted under rule 36(a) is conclusively established. Once the motion for admission established [a fact], no genuine issue remained as to this fact."); *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 55 F. Supp. 2d 309, 314 (D. Del. 1999) (a matter admitted under Rule 36 is "conclusively established").

Therefore, as a matter of law, the following facts are deemed true and conclusively established:

- Windsor owns at least a majority of the shares of Worldwide, and Worldwide owns all of the shares of Sanitec, Ltd. (Ex. 1, Request Nos. 2, 10).

- Harkess owns and controls Windsor. (*Id.* Request No. 1).

- The documents reflecting the decision and judgment in the California litigation and the settlement agreement rendering the decision final are authentic. (*Id.* Request Nos. 15-20).

- Weinsten, a convicted felon, and Smith are not officers, directors, employees, or agents of Worldwide. (*Id.* Request Nos. 11-14).

- Weinsten, companies that he owns and controls (*i.e.*, Salem and North Salem), or Smith do not own a majority of shares of Worldwide. (*Id.* Request No. 3-9). Weinsten testified before in the California litigation that Salem owned a *minority* interest in Worldwide. (*Id.* Request No. 23).

- The final judgment in the California litigation enjoins Smith, Weinsten, and all others acting on their behalf or in concert with them from (a) claiming any right, title or interest in Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Sanitec, Ltd., and (b) making any representations that they have any ownership interest in or control over Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Sanitec, Ltd. (*Id.* Request No. 22).

- Weinsten and/or Smith engaged David L. Finger of Finger & Slanina to act as counsel for Worldwide in this action. (*Id.* Request No. 21).

Based on this record, a Court should not find that Weinsten, Smith or any affiliates have any ownership interest in Worldwide.

Yet another basis for dismissal is Worldwide's utter failure to timely serve discovery responses or objections. Under the Federal Rules, a "party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such a failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). The Court also may oppose additional sanctions, including the award of

reasonable expenses and substantive sanctions available under Fed. R. Civ. P. 37(b)(2)(A)-(C). As noted by the Court of Appeals for the Third Circuit, "complete and accurate responses to discovery are imperative to the functioning of the modern trial process." *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1200 (3d Cir. 1989), *cert. denied*, 493 U.S. 1023 (3d Cir. 1989). Here, Worldwide, through its counsel Finger, utterly failed to provide any documents or interrogatory answers in responses to Industries' discovery requests. Such failure should preclude Worldwide, through Finger, from offering any evidence to contest that Harkess, through Windsor, owns and controls Worldwide or to assert that Weinsten, Smith or some affiliated entity owns or controls Worldwide.

Accordingly, by its failure to respond, Worldwide is deemed to admit Industries' Rule 36 requests for admissions, including that Weinsten, Smith or entities affiliated with them do not directly or indirectly own and control Windsor or Worldwide and that Harkess does own and control Worldwide. Thus, this action should be dismissed.

## V.    FINGER SHOULD NOT BE PERMITTED TO CONTINUE REPRESENTING WORLDWIDE.

Finger should be precluded from filing any response to this motion on behalf of Worldwide. Finger entered his appearance in this action representing the three original defendants – Worldwide, Weinsten, and Smith. (*See* D.I. 9-10). After Weinsten and Smith were dismissed from the action for lack of personal jurisdiction (D.I. 24), Finger continued his representation of Worldwide. On November 30, 2005, Finger was advised of the California decision and that he was not authorized to continue to represent Worldwide in this action. He was asked to "immediately file a motion to withdraw from representing Worldwide in this action." (Ex. 28). However, Finger ignored that demand. (Oparil Decl. ¶ 8).

"[A] litigant should, as much as possible, be able to use the counsel of his choice." *Satellite Financial Planning Corp. v. First Nat. Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987). *See also Combustion Eng'g Caribe, Inc. v. Geo P. Reintjes Co.*, 298 F. Supp. 2d 215, 219 (D.P.R. 2003); *Parker v. Pepsi-Cola General Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1012 (N.D. Ill. 2003). The Court should preclude Finger from continuing to appear in this action as counsel for Worldwide. "This Court clearly has the power to supervise the ethical activities of the attorneys who practice before it . . . ." *Nemours Found. v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418, 421 (D. Del. 1986). Here, Worldwide admits that Weinsten and Smith engaged Finger to represent Worldwide. (Ex. 1, Request No. 21). After the California decision in Harkess' favor, Windsor elected by written consent new members of Worldwide's Board of Directors. (Ex. 24). By unanimous written consent, Worldwide's Board adopted a resolution authorizing five law firms (including the Bayard Firm and Patton Boggs) to represent the company in various matters, including this action. (Ex. 26). Neither Finger nor his law firm were listed in that resolution. Indeed, the resolution further provided that "no other counsel is authorized to represent the Company in any pending litigation." (*Id.*). Harkess was given the authority to direct Worldwide's counsel in any litigation matter. (*Id.*).

The Local Rules of this Court provide that:

> Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Model Rules of Professional Conduct of the American Bar Association, subject to such modifications as may be required or permitted by Federal statute, court rule or decision of law, shall constitute misconduct and be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

Local Rule 83.6(d)(2). The ABA Model Rules state that a "lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Model

Rules of Prof. Conduct 1.13(a).  *See also Id.* Comm. 1 ("Officers, directors, employees and shareholders are the constituents of the corporate organizational client."); Del. Prof. Cond. R. 1.13(a) (accord).   The Model Rules further provide that a lawyer must withdraw if he is discharged by the client:

> Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, *shall withdraw* from the representation of a client if: . . . *the lawyer is discharged.*

ABA Model Rules of Prof. Conduct 1.16(a)(3) (emphasis added).  *See also Id.* Cmt. 4 ("A client has a right to discharge a lawyer at any time, with or without cause"); Del. Prof. Cond. R. 1.16(a)(3) (accord).

Here, the organization client – Worldwide – demanded that Finger withdraw from representing Worldwide in this matter.  However, Finger has ignored such demands.  Therefore, the Court should recognize Worldwide's termination of Finger and preclude him and his firm from continuing to represent Worldwide.[8]

Additionally, Finger's continued representation of Worldwide raises a conflict issue. Finger entered an appearance in this case for all three original defendants – Worldwide, Weinsten and Smith.  (*See, e.g.*, D.I. 10; Ex. 1, Request No. 21).  This Court's Order dismissing Weinsten and Smith from this action for lack of personal jurisdiction was without prejudice. (D.I. 24).  As part of the Settlement Agreement and Mutual Release, Industries did not release any claim it might have against Weinsten or Smith.  (Ex. 22 § 8.12).  As set forth above, Worldwide's answer in this action, filed by Finger, admits infringing conduct by Weinsten and

---

[8]     In addition, Finger is required to provide Worldwide with his files pertaining to Worldwide.   *See* ABA Model Rules of Prof. Conduct 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled"); Del. Prof. Cond. R. 1.16(d).

Smith. (D.I. 7 ¶¶ 14, 20-22 & Ex. 2; D.I. 27 ¶¶ 14, 20-22).  Weinsten, Smith and any affiliate have no license to the patent-in-suit, so their infringing conduct gives rise to claims for infringement.  The existence of such claims raises potential conflict of interest issues.  Model Rules of Prof. Conduct 1.7(a); *see also* Del. Prof. Cond. R. 1.7(a).  Accordingly, Finger should be precluded from continuing to represent Worldwide.

## CONCLUSION

For all the foregoing reasons, Industries' motion to dismiss this action against Worldwide without prejudice should be granted.

March 2, 2006                              THE BAYARD FIRM


                                          /s/ Richard D. Kirk (rk0922)
                                          222 Delaware Avenue, 9th Floor
                                          Wilmington, DE 19801
                                          (302) 655-5000
                                          rkirk@bayardfirm.com
                                          *Attorneys for Plaintiff Sanitec Industries, Inc.*


*Of Counsel:*                             and

Richard J. Oparil                         Jennifer L. King
PATTON BOGGS LLP                          PATTON BOGGS LLP
2550 M Street, NW                         8484 Westpark Drive
Washington, DC 20037                      McLean, VA 22102
(202) 457-6000                            (703) 744-8000

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 2, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following

> David L. Finger, Esq.
> Finger & Slanina
> One Commerce Center
> 1201 Orange Street, Suite 725
> Wilmington, DE 19801

The undersigned further certifies that copies of the foregoing were sent to the above counsel by hand on March 2, 2006.


/s/ Richard D. Kirk (#922)