UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANITEC INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1386-JJF |
| | ) | |
| SANITEC WORLDWIDE, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**APPENDIX OF EXHIBITS TO
PLAINTIFF SANITEC INDUSTRIES, INC.'S
MEMORANDUM IN SUPPORT OF ITS
MOTION FOR VOLUNTARY DISMISSAL**

Richard D. Kirk (Bar ID #922)
THE BAYARD FIRM
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardfirm.com

*Attorneys for Plaintiff Sanitec Industries, Inc.*

*Of Counsel:*                                    and

Richard J. Oparil                          Jennifer L. King
PATTON BOGGS LLP                  PATTON BOGGS LLP
2550 M Street, NW                        8484 Westpark Drive
Washington, DC 20037                  McLean, VA 22102
(202) 457-6000                              (703) 744-8000

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANITEC INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1386-JJF |
| | ) | |
| SANITEC WORLDWIDE, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT

Pursuant to Fed. R. Civ. P. 36, plaintiff, Sanitec Industries, Inc. ("Industries"), demands that that defendant, Sanitec Worldwide, Ltd. ("Worldwide"), answer the following requests for admission within 30 days of service.

### GENERAL INSTRUCTIONS

1.      The provisions and definitions contained in the Local Court Rules of the United States District Court for the District of Delaware are incorporated by reference as if fully set forth herein.

2.      Each Request is to be fully and separately answered.  Should an objection to a Request be interposed, it should indicate the part of the Request to which it is directed.

3.      With respect to each Request, if Worldwide is able to provide some, but not all, of the information requested, it must provide such information as it is able, and identify specifically the items or aspects as to which it does not have sufficient information to respond fully.

4.      If Worldwide refuses to answer any Request in whole or in part, it must state the grounds for such refusal including any claim of privilege(s) or any other claim of immunity from disclosure in sufficient detail to permit the Court to adjudicate the validity of the refusal.  In addition, Worldwide must identify each document and oral communication for which such

privilege(s) is claimed, and state specifically the privilege(s) being relied upon. In particular, it must provide:

    a.    the date of the document;

    b.    the name of any author of the document;

    c.    the name of any addressee of the document;

    d.    the name of any recipient of the document;

    e.    a brief description of the nature and subject matter of the document; and

    f.    the complete factual and legal basis for the claim of privilege or immunity.

5.    These instructions shall be deemed continuing so as to require supplemental answers if Worldwide obtains further information between the time the answers are served and the time of final judgment.

6.    Unless otherwise noted, these Requests are not limited in time.

## DEFINITIONS

1.    The terms "Industries" or "plaintiff" shall mean the plaintiff, Sanitec Industries, Inc., and its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

2.    The terms "Worldwide," "defendant," "you" or "your" shall refer to defendant, Sanitec Worldwide, Ltd., any and all of Worldwide's predecessors or successors in interest, and any of its current or former officers, directors, employees, attorneys, partners, corporate parents, subsidiaries or affiliates (including without limitation, Sanitec, Ltd.), including any person who served in such capacity at any time, and any person purporting to act on its behalf, including without limitation Jeffrey J. Weinsten and James H. Smith.

3.    The term "Amended Complaint" shall mean and refer to Industries' Amended Complaint filed in this action.

4.    The term "Answer" shall mean and refer to Worldwide's Answer filed in this action.

5.    The terms "patent-in-suit" or "the '000 patent" shall mean and refer to U.S. Patent No. 5,270,000, issued on December 14, 1993 to Goldner, *et al.*, entitled "Apparatus And Process For Treating Medical Hazardous Wastes", a copy of which is attached to the Amended Complaint, as well as any other patent asserted in this action at any time during the pendency of this action.

6.    The term "trademarks-in-suit" shall mean and refer to U.S. Trademark Registration No. 2,238,405, filed October 30, 1997; U.S. Trademark Registration No. 2,559,664, filed November 15, 1999; and U.S. Trademark Registration No. 1,991,211, filed July 31, 1995.

7.    The terms "Accused Products" or "MDU" shall mean and refer to a machine and/or system for disinfecting medical waste that is offered for sale, sold, manufactured, made for, distributed and/or imported by Worldwide, including without limitation machines or systems within the scope of one or more of the claims of U.S. Patent No. 5,270,000.

8.    As used herein, all plural terms shall include the singular and all singular terms shall include the plural, masculine and feminine terms shall be construed each to include the other, and the terms "and" as well as "or" shall be construed disjunctively or conjunctively, as necessary in order to bring within the scope of the Requests all responses which might otherwise be construed to be outside their scope.

9.    The terms "refers" or "referring" or "relates" or "relating" include, but are not limited to, the following meanings: bearing upon, concerning, constituting, addressing, respecting, regarding, discussing, mentioning, describing, reflecting, responding to, identifying, constituting, pertaining to, having to do with, or being in any way relevant to the given subject.

10.    The term "all" and the term "each" shall be construed individually as encompassing both all and each.

11.    The term "date" means the exact month, day and year, to the extent known, or, if not known, Worldwide's best approximation thereof.

12.    The term "person" refers to natural persons, groups of natural persons, corporation, partnerships, joint ventures, firms, and any other incorporated or unincorporated entity or association.

13.    The term "documents" shall be construed to include all documents and tangible things subject to discovery as provided in Rule 34 of the Federal Rules of Civil Procedure.  By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, notebooks, correspondence, interoffice communications, inter-company communications, letters, diaries, e-mails, calendars, photographs, sketches, drawings, promotional material, technical papers, printed publications, patents and all other writings, as well as all non-paper information storage means such as internet pages, sound reproductions, computer inputs and outputs, tapes, film and computer memory devices.  The term is also intended to include e-mail and computerized hard drive or server files.

14.    The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), orally, in writing, or in any other form.

### REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that James Harkess ("Harkess") owns and controls Windsor Holdings LLC ("Windsor").

**REQUEST FOR ADMISSION NO. 2:**

Admit that Windsor owns at least a majority of the shares of Worldwide.

**REQUEST FOR ADMISSION NO. 3:**

Admit that Jeffrey Weinsten ("Weinsten") does not own a majority of shares of Worldwide.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Salem Associates, Inc. ("Salem") does not own a majority of shares of Worldwide.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Salem is an inactive Delaware corporation and that its corporate status is "void."

**REQUEST FOR ADMISSION NO. 6:**

Admit that North Salem Associates, Inc. ("North Salem") does not own a majority of shares of Worldwide.

**REQUEST FOR ADMISSION NO. 7:**

Admit that no other person affiliated with Weinsten, Salem or North Salem owns a majority of shares of Worldwide.

**REQUEST FOR ADMISSION NO. 8:**

Admit that James H. Smith ("Smith") does not own a majority of shares of Worldwide.

**REQUEST FOR ADMISSION NO. 9:**

Admit that no other person affiliated with Smith owns a majority of shares of Worldwide.

**REQUEST FOR ADMISSION NO. 10:**

Admit that Worldwide owns all of the shares of Sanitec, Ltd.

**REQUEST FOR ADMISSION NO. 11:**

Admit that Weinsten is not an officer, director, employee, or agent of Worldwide.

**REQUEST FOR ADMISSION NO. 12:**

Admit that Smith is not an officer, director, employee, or agent of Worldwide.

**REQUEST FOR ADMISSION NO. 13:**

Admit that in August 1997, Weinsten was convicted of defrauding the Coast Guard, in a case captioned United States v. Weinsten, 96-CR-702 (FB) (E.D.N.Y.).

**REQUEST FOR ADMISSION NO. 14:**

Admit that the U.S. Court of Appeals for the Second Circuit affirmed Weinsten's conviction.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the final judgment of the Superior Court of Los Angeles County, California, in *Harkess v. Quinn, et al.*, No. BC 311681, attached hereto as Ex. 1, is authentic.

**REQUEST FOR ADMISSION NO. 16:**

Admit that the statement of decision of the Superior Court of Los Angeles County, California, in *Harkess v. Quinn, et al.*, No. BC 311681, attached hereto as Ex. 2, is authentic.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the Notice Of Entry Of Final Judgment In Favor Of James Harkess in *Harkess v. Quinn, et al.*, No. BC 311681, attached hereto as Ex. 3, is authentic.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the Stipulation Of Parties For Abandonment Of Appeal in *Harkess v. Quinn, et al.*, No. BC 311681, attached hereto as Ex. 4, is authentic.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Settlement Agreement, attached hereto as Ex. E, is authentic.

**REQUEST FOR ADMISSION NO. 20:**

Admit that Weinsten and Smith signed the Settlement Agreement referred to in Request No. 19.

**REQUEST FOR ADMISSION NO. 21:**

Admit that Weinsten and/or Smith engaged David L. Finger of Finger & Slanina to act as counsel for Worldwide in this action.

**REQUEST FOR ADMISSION NO. 22:**

Admit that the final judgment referred to in Request No. 15 enjoins Smith, Weinsten, and all others acting on their behalf or in concert with them from (a) claiming any right, title or interest in Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Sanitec, Ltd., and (b) making any representations that they have any ownership interest in or control over Windsor and/or any Windsor asset, including but not limited to, Windsor's ownership interests in Worldwide and Sanitec, Ltd.

**REQUEST FOR ADMISSION NO. 23:**

Admit that Weinsten testified before the Superior Court of Los Angeles County, California, in *Harkess v. Quinn, et al.*, No. BC 311681, that Salem owned a minority interest in Worldwide.

November 15, 2005                    THE BAYARD FIRM

                                    /s/ Richard D. Kirk (rk0922)
                                    Richard D. Kirk (Bar ID #922)
                                    THE BAYARD FIRM
                                    222 Delaware Avenue, 9th Floor
                                    Wilmington, DE 19801
                                    rkirk@bayardfirm.com
                                    (302) 655-5000

                                    *Attorneys for Plaintiff Sanitec Industries, Inc.*

OF COUNSEL:

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000


Jennifer L. King
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000



**ORIGINAL FILED**

AUG 1 8 2005

**LOS ANGELES SUPERIOR COURT**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES HARKESS,<br><br>        Plaintiff,<br><br>        v.<br><br>TERRENCE QUINN aka TERRANCE LEE<br>QUATKEMEYER, and DOES 1 through 10,<br>inclusive,<br><br>        Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No.: BC 311681<br><br>**JUDGMENT IN FAVOR<br>OF JAMES HARKESS** |

     This action came on regularly for trial before the Court on March 28, 2005, at 8:30 a.m. in Department 26 of the above court.  Michael Harley and Scott Leipzig of Weston Benshoof Rochefort Rubalcava & MacCuish LLP appeared on behalf of Plaintiff and Cross-Defendant James Harkess ("HARKESS").  Mark Hathaway of Slater Hathaway LLP and Peter Babos of the Law Offices of Peter Babos appeared on behalf of Defendants and Cross-Complainants Terrance Lee Quatkemeyer aka Terrence Quinn ("QUINN") and James H. Smith, as Trustee of The Windsor Trust, dated June 21, 2002 ("SMITH" and "TRUST") and Jeffrey Weinsten ("WEINSTEN"), as Co-Trustee of the TRUST.

     The Court having heard and considered testimony, documentary evidence, and arguments

1

1    presented by or on behalf of the parties, and having issued a Statement of Decision (hereinafter,

2    "Decision"), hereby orders the following Judgment to be entered in favor of HARKESS consistent

3    with the Statement of Decision, with specific reference to the following findings of the Court:

4

5        (1)    The purported TRUST "was not legally in existence and had no assets at the time

6    of the transfer" of Windsor Holdings, LLC ("Windsor") from David Kaye ("Kaye") to HARKESS.

7    (Decision, p. 1.) Any purported ownership of Windsor claimed by SMITH and WEINSTEN "is

8    purely derivative based on their status as trustees of the Trust, and the court has found that the Trust

9    was not legally in existence during the time of the transfer from Kaye to Harkess." (Decision, p.

10   2.)

11

12       (2)    The transfer of Windsor from "Kaye to Harkess was effective to transfer ownership

13   of Windsor to Harkess." (Decision, p. 1.) Windsor was formed in July 2001 and David Kaye

14   became the managing member, and sole owner, of Windsor; Quinn set up the Windsor structure in

15   such a way as to create apparent authority/ownership in Kaye; Harkess became the managing

16   member, and sole owner, of Windsor upon transfer from Kaye in July 2003.    The undisputed

17   evidence presented by both sides, which constituted the underlying premise for the need for this

18   Court to determine ownership of Windsor, was that since July 2001, Windsor owned Sanitec

19   Worldwide, Ltd. ("Worldwide"), and Worldwide was the majority shareholder of Sanitec, Ltd.

20   ("Limited").

21

22       (3)    QUINN and those acting on his behalf, including SMITH and WEINSTEN, "are

23   barred by the equitable doctrines of unclean hands and equitable estoppel from asserting ownership

24   in Windsor." (Decision, p. 2.) "In the exercise of its equitable powers, this court will not permit

25   Quinn to now assert an ownership interest in Windsor." (Decision, p. 7.)

26

27       NOW THEREFORE, IT IS HEREBY ADJUDGED AND DECREED THAT:

28

---

2

JUDGMENT IN FAVOR OF JAMES HARKESS

1    (1)    Judgment is entered FOR Plaintiff and Cross-Defendant HARKESS

2        and AGAINST Defendants and Cross-Complainants QUINN,

3        SMITH and WEINSTEN on Plaintiff's Complaint for Declaratory

4        Relief and on Defendants' Cross-Complaint for Declaratory Relief.

5        The Court declares that HARKESS is the sole owner of Windsor and

6        Windsor's assets, including but not limited to, Windsor's ownership

7        interests in Worldwide and Limited.  Neither QUINN, SMITH,

8        WEINSTEN, nor any successor trustees or beneficiaries of the

9        purported TRUST have any right, title or interest in Windsor and/or

10        any Windsor asset, including but not limited to, Windsor's

11        ownership interests in Worldwide and Limited;

12

13    (2)    QUINN, SMITH, WEINSTEN and the successor trustees and

14        beneficiaries of the purported TRUST, and each of them, as well as

15        anyone acting on their behalf or in concert with them (hereinafter,

16        "ENJOINED PARTIES"), are restrained and permanently enjoined

17        from claiming any right, title or interest in Windsor and/or any

18        Windsor asset, including but not limited to, Windsor's ownership

19        interests in Worldwide and Limited.  The ENJOINED PARTIES are

20        specifically restrained and permanently enjoined from making any

21        representations that they have any ownership interest in or control

22

23    ////

24

25    ////

26

27

28

3

JUDGMENT IN FAVOR OF JAMES HARKESS

1    over Windsor and/or any Windsor asset, including but not limited to, Windsor's

2    ownership interests in Worldwide and Limited.

3

4    DATED: ___AUG 18 2005___

5                                          **JAMES R. DUNN**

6                                          JAMES R. DUNN
                                           Judge of the Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JRD:cr        26
Harkess.jmt
8/18/05       27

28

4

JUDGMENT IN FAVOR OF JAMES HARKESS

**ORIGINAL FILED**

AUG 1 8 2005

**LOS ANGELES
SUPERIOR COURT**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES HARKESS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER, and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants.<br><br>——————————————————<br>AND RELATED CROSS-ACTION.<br>—————————————————— | Case No.: BC 311681<br><br>**STATEMENT OF DECISION** |

　　　The court finds FOR PLAINTIFF/CROSS-DEFENDANT AND AGAINST DEFENDANTS/CROSS-COMPLAINANTS on Plaintiff's Complaint for Declaratory Relief and on Defendants' Cross-Complaint for Declaratory Relief. The court declares that plaintiff James Harkess ("Harkess" herein) is the rightful owner of Windsor Holdings, LLC, ("Windsor" herein) and that defendants have no right, title or interest therein. Further, defendants, and each of them, are permanently enjoined from claiming any right, title or interest in Windsor.

　　　The court finds that the Windsor Trust ("Trust" herein) was not legally in existence and had no assets at the time of the transfer of Windsor from David Kaye ("Kaye" herein) to Harkess. Defendant Terrence Quinn aka Quatkemeyer ("Quinn" herein), in July 2001, through a series of

1

STATEMENT OF DECISION

1    companies and transactions, none of which bear his name or other indicia of his ownership,
2    transferred ownership and apparent authority to Kaye as managing member of Windsor. Thereafter,
3    back-dated documents were created virtually overnight, transferring ownership of Windsor from
4    Kaye to Harkess in July 2003. This transfer of ownership of Windsor was relied on not only by
5    Harkess, but by many other parties and attorneys, including a federal judge. The court finds that
6    the transfer from Kaye to Harkess was effective to transfer ownership of Windsor to Harkess in July
7    2003. The court further finds that, in any event, Quinn and those acting on his behalf are barred by
8    the equitable doctrines of unclean hands and equitable estoppel from asserting ownership in
9    Windsor. Any purported ownership claimed by James H. Smith ("Smith" herein) or Jeffrey
10   Weinsten ("Weinsten" herein) is purely derivative based on their status as trustees of Trust, and the
11   court has found that the Trust was not legally in existence during the time of the transfer from Kaye
12   to Harkess.

13

14   FACTUAL BACKGROUND

15        There are many different companies and individuals involved in the various lawsuits here,
16   in Ohio and elsewhere, but the essential entities for purposes of this lawsuit are Windsor, Sanitec
17   Worldwide ("Worldwide" herein) and Sanitec Limited ("Limited" herein). Windsor is a California
18   limited liability company formed on July 17, 2001. The undisputed evidence at trial was that,
19   through a series of transfers and a corporate re-organization by Quinn, in late July 2001, Windsor
20   became the sole owner of Worldwide. It was also undisputed at trial that Worldwide was the
21   majority owner of Limited and that Mr. Weinsten's company, Salem Associates, owned a minority
22   interest in Worldwide. (Ex. 189, 223) The basic premise argued by both parties at trial was that
23   whoever owns Windsor controls the other two by virtue of this ownership structure.

24

25        This court has been asked to make a ruling on a single, narrow question: who owns
26   Windsor? The court is mindful that there are other lawsuits in Ohio, and perhaps elsewhere, which
27   may be impacted by this decision, and that there may be issues between various parties impacted
28   by what the court decides here. Beyond the findings that support the Court's decision, however,

1    this court makes no findings regarding the merits of any other lawsuits or any purported claims that

2    the parties may have against one another or others.

3

4        Plaintiff contends that he is the owner of Windsor by virtue of a transfer from Kaye, the

5    managing member of Windsor.  Defendants contend that the Trust is the owner of Windsor.

6    Defendants presented evidence that in June 2002, defendant/cross-complainant Quinn was suffering

7    from a terminal illness and was facing an impending prison term, and therefore set up the Trust with

8    cross-complainant Smith and Weinsten as the trustees, and concurrently therewith transferred all

9    the assets of Windsor to Trust.  Therefore, at the time of transfer of Windsor from Kaye to Harkess,

10   defendants assert that Windsor had already been transferred to the Trust and there was nothing to

11   transfer.

12

13   THE TRUST

14       The circumstances in existence in or about June 2002, that is the illness and the impending

15   sentencing, are consistent with a desire by Mr. Quinn to form a trust to hold his property.  What is

16   missing, however, is a signed original trust document and any credible evidence that such a

17   document was ever signed by Quinn in June 2002, or at any time before he was released from prison

18   in late September 2003.  Also, like the ownership structure that Quinn set up for Windsor, the

19   structure he set up for his Trust was also incomplete.  The final, and necessary, steps were never

20   taken to consummate the Trust.

21

22       The court makes the following findings which support its conclusion that no Trust was

23   formed in June 2002 or at any time before the Kaye-Harkess transfer.

24

25   1.    The court found Smith to be a credible witness, but by his own testimony and that of others,

26         he was only a figurehead.  It was Weinsten that wrote all the letters for him to sign, and it

27         was Weinsten that monitored the litigation in Ohio.  Virtually everything that Smith knew,

28         he knew because Weinsten told him.  He had virtually no firsthand knowledge of facts.

3

2.   There is no original Trust signed by Quinn which bears a date in June 2002.  In fact, no signed original at all was offered in evidence.

3.   While there is evidence that the Litwin law firm prepared drafts of a trust in June 2002, and Smith signed some version of a trust, Smith testified that he does not know whether Quinn signed it.  (Ex. 265)

4.   Weinsten testified that he sent the Trust document which had been signed by others to Quinn for him to sign. He did not see Quinn sign the Trust document. Weinsten claims that he received a signature back from Mr. Quinn in June 2002, but the Court does not find this claim credible in light of Mr. Weinsten's other testimony in depositions and pleadings regarding ownership of Windsor (see below), and his prior conviction introduced for purposes of impeachment.   No one had personal knowledge about whether Quinn ever signed before he was released.

5.   Quinn testified that he did sign it in June 2002, but the court does not find his testimony to be credible.  On the stand Mr. Quinn repeatedly shifted responsibility for various actions from himself to his attorneys, and said he would sign virtually anything his lawyers told him to sign.  This, along with his observed demeanor while testifying, and his two felony convictions for fraud-related offenses, cause the court to disregard his testimony.  Thus, there is no independent, corroborating evidence that Quinn ever signed before he got out of prison.

6.   There is no credible evidence that shares or other indicia of ownership of Windsor were ever transferred to the Trust.

7.   Quinn testified that he fired Kaye as managing member of Windsor in June 2002 by letter,

4

STATEMENT OF DECISION

1    but there is no evidence other than the testimony of Quinn himself that the letter was ever

2    sent, and court does not find his testimony credible. Kaye denies ever receiving it, and the

3    only copy introduced in evidence apparently came from Weinsten's file.

4

5    In addition to these points, Weinsten who along with Smith was a co-trustee, denied twice

6    in depositions in other cases that he knew who owned Windsor. One can infer from this that he

7    either knew the trust had never been signed by Quinn, or that there was never any transfer of

8    Windsor assets to the Trust. It was Weinsten who was monitoring the Ohio litigation and

9    apparently was concerned enough about protecting his 48% interest in Worldwide that he attempted

10   to intervene in the Ohio litigation. In several pleadings filed in connection therewith he never

11   mentioned the Trust. (Ex. 118, 122) Even when Smith sent the letter to John Climaco, Ohio

12   counsel for Limited, et al., he did not mention the Trust. And finally, the two independent

13   witnesses who may have been able to corroborate the Trust, attorney Litwin who drafted it, and

14   attorney Mark Geragos (who was allegedly present when the Trust was signed in his office) were

15   not called by the defendants to testify.

16

17   The defendants have not met their burden of showing that the Trust was legally formed and

18   in existence at the time of the Kaye-Harkess transfer.

19

20   THE TRANSFER TO HARKESS

21   By virtue of the failure of the Trust to be formed in June 2002, the assets of Windsor were

22   still in Windsor at the time of the transfer from Kaye to Harkess. In July 2003, never referencing

23   the Trust in his letter, Smith wrote to John Climaco, Esq., Ohio counsel for Limited and Windsor

24   ("Climaco" herein), claiming that Harkess had no authority to represent Limited in the Ohio

25   litigation and that he (Climaco) was discharged as counsel. (Apparently this was one of the letters

26   written for him by Weinsten.) (Ex. 210) In response to this letter Climaco sent an urgent message

27   to Babos demanding to know who had authority to speak for Limited and who he should listen to.

28   (Ex. 211.1, 212) He was obviously very agitated and wanted answers immediately. He was

1   particularly upset over the fact that he was being put in a position to embarrass himself before a
2   federal judge. In response to that inquiry, within hours Babos, with the concurrence of Harkess and
3   Kaye, created back-dated documents that showed that Harkess was the owner of Limited. (Ex. 168)
4   Kaye (for Limited) and Harkess (for Sanitec West) had been managing the Ohio litigation and they
5   needed to show they had authority to do so. (It is not altogether clear which parties Babos was
6   actually representing as counsel in all these transactions; Climaco had repeatedly asserted that
7   Quinn needed separate counsel due to a perceived conflict of interest; Babos had served as corporate
8   counsel for some of the Sanitec companies and Quinn individually over the years.) (Ex. 212) These
9   hastily created documents showed that Kaye, acting as managing member and owner of Windsor,
10  transferred his member/owner status to Harkess. Babos continued to reaffirm that Harkess was the
11  owner of Windsor for weeks after Quinn was released from prison in September 2003. He testified
12  that it was only later he realized that he had made a mistake in having the documents prepared and
13  started making efforts to reverse position. By then, however, the representations to the Ohio federal
14  court and counsel had already been made and actions had been taken in reliance on Harkess'
15  apparent authority to represent Limited, (based on his ownership of Windsor) and commitments had
16  been made and documents signed.

17

18       Quinn is responsible for creating the environment and business structure that made this
19  possible. Windsor was formed on July 17, 2001, at Quinn's direction, with the filing of Windsor's
20  Articles of Organization with the Secretary of State, showing Kaye as the manager. This was the
21  only documentation for Windsor. Nowhere did Quinn's name appear. In late July 2001, he then
22  asked Kaye to front for him in an attempt to sell Limited and in fact Kaye acted as managing
23  member/owner in the Eden transaction and in dealing with Stericycle. He also was sent by Quinn
24  to Limited back East to monitor operations and represent himself as the managing member of
25  Windsor. Quinn claims that Kaye was only appointed to deal with specific sales or activities, but
26  Quinn is the one who put him in a position to represent himself as owner of Windsor. It was Quinn
27  who set up Windsor but never set up any formal ownership structure or had any documents prepared
28  which identified him as being involved in Windsor. All of the assets that went through the various

STATEMENT OF DECISION

1  re-organizations ended up in Windsor. Windsor became a holding company with no ownership
2  structure, and no connnection with Quinn. When it was to his advantage in having Kaye step
3  forward for specified transactions that benefitted Quinn, he validates his authority. The court does
4  not recognize, however, such selective delegations of authority, especially in a case where there is
5  no documentation showing an owner of Windsor at all. Mr. Babos and Mr. Mitchell R. Miller (a
6  corporation lawyer who drew up the Windsor documents for the Secretary of State) both testified
7  that Quinn never set up any ownership structure because he wasn't sure how he wanted to do it.
8  The only person placed in a position of apparent authority/ownership was Kaye. There is no
9  evidence that either Quinn, or Babos or Miller did anything at all to remedy this uncompleted
10 ownership structure after Quinn went to prison, thus enabling the later events to occur. The Court
11 finds that Mr. Kaye was the sole managing member, and therefore sole owner, of Windsor Holdings
12 from its inception in July 2001 through the transfer to Mr. Harkess in July 2003.

13

14       When the Climaco emergency came, Mr. Kaye did not step forward to act as owner/
15 manager, rather he wanted out, so it was agreed that he would transfer his member/owner status to
16 Harkess. Rather than explain the dilemma to Mr. Climaco and seek a resolution with the Ohio
17 court, counsel Babos, with the concurrence of Harkess and Kaye prepared the back-dated
18 documents within a matter of hours and sent them to Climaco. Those documents were sent to Ohio
19 with the knowledge that they were to be presented by Mr. Climaco, an officer of the court, to a
20 federal judge representing that Mr. Harkess was the owner of Windsor. And then everyone sat back
21 and allowed others to rely on that representation. This court finds that Mr. Harkess is the owner
22 of Windsor and became the owner with the transfer from Mr. Kaye in July 2003. That entire chain
23 of events was created by the anonymous and incomplete creation of Windsor by Quinn, and the
24 attempt to selectively assign ownership/authority to Kaye.

25

26       The court is mindful that defendant contends that there was an agreement that Harkess was
27 only taking the shares of Windsor temporarily and that he was to give them back after Quinn was
28 released. Mr. Babos supports this purported agreement, as does Quinn, but Harkess vehemently

1 denies it. There is evidence that Harkess said "If I own Limited by virtue of my ownership of

2 Windsor, then I want the documents." This would suggest, however, that Harkess did indeed

3 believe he owned Windsor although had some question as to what impact it had on ownership of

4 Limited. Whether there was or was not such a private agreement between Quinn and Harkess is

5 between them. As far as the rest of the world is concerned, Mr. Kaye transferred ownership of

6 Windsor to Harkess and Harkess, Kaye and Babos represented to the federal court and the litigants

7 that Harkess was the owner of Windsor. The transfer to Harkess was effective.

8

9 UNCLEAN HANDS AND EQUITABLE ESTOPPEL

10        Further, in the exercise of its equitable powers, this court will not permit Quinn to now

11 assert an ownership interest in Windsor. Plaintiff spent a great deal of the trial laying out the series

12 of transactions involving the original purchase of Limited by Quinn with investor money and the

13 use of various corporations to do so. Plaintiff made the point that Mr. Quinn's name personally did

14 not appear on any of the documentation of these companies. For the most part the court found that

15 to be true, based on the limited evidence presented on those issues. This court is being asked to take

16 note of a pattern of ownership and apparent evasion of accountability to creditors and suppression

17 of identity in order to establish the defense of unclean hands. This court is not making any findings

18 as to whether Mr. Quinn defrauded the original investors in connection with his use of their funds

19 to purchase Limited. This court does take note, however, of this trail of companies, re-

20 organizations and the resultant anonymity of Quinn for purposes of whether Quinn was attempting

21 to hide his assets, (i.e., Windsor's controlling interest in Worldwide and through Worldwide,

22 ownership of Limited) in order to avoid any claims these investors might have, and comes before

23 this Court with unclean hands. The court also takes note of the fact that Quinn never used any of

24 his own money to purchase these companies. The court did not find credible his testimony that he

25 also put his own money into Limited from the sale of luxury cars. No documentary or other

26 evidence was presented to support that assertion.

27

28        All of this is corroboration for the testimony of Mr. Quinn himself. Quinn testified on the

8

1  stand that he created Windsor to "keep the assets of Sanitec away from Barbara Sager, Steve Ventre,

2  Joe Delloiacovo and the investors in Ohio that were laying claim to those assets." He further

3  testified that he asked Mr. Kaye to be the managing member because he was "having difficulties"

4  and "troubles" at the time. It is clear that Quinn did not want his assets in his own name and in fact

5  his apparent 80% interest in Sanitec West was in the name of his friend Mary Reidiger rather than

6  himself. This is sufficient evidence for the court to conclude that Quinn was secreting his assets

7  to defeat the claims of his creditors and that he comes to this court with unclean hands. (*See*

8  <u>Allstead vs. Laumeister</u> (1911) 16 Cal.App. 59 and <u>Belling vs. Croter</u> (1943) 57 Cal.App.2d 296.)

9

10  In addition, the court invokes the doctrine of equitable estoppel. While Mr. Quinn himself

11  did not make the representations to those who relied and acted on them (the Ohio federal court and

12  counsel and others related to that litigation), he is directly responsible for setting in motion the chain

13  of events that led to those representations. He put Kaye and Harkess in the position of having

14  apparent authority for and ownership of Windsor, from the point of view of the court and the parties

15  in the East, to accomplish his own ends of selling off Limited without having his name in any way

16  associated with the sale. Many have relied on the resulting representations about Harkess'

17  ownership of Windsor to their potential detriment in the event that transactions consummated in

18  reliance thereon were to be overturned. Quinn is estopped from now claiming that the

19  representations regarding ownership of Windsor are false, or that Kaye did not have authority to

20  transfer the company to Harkess.

21

22  Plaintiff/Cross-Defendant Harkess to prepare the judgment consistent with this Tentative

23  Ruling. This Tentative Ruling shall be the Statement of Decision unless within ten days either party

24  specifies controverted issues or makes proposals not covered in the Tentative Ruling.

JRD:cr
Harkess.sd
8/18/05

25                                                                 JAMES R. DUNN

26  Dated: __AUG 18 2005__

27                                                                 _____
                                                                   JAMES R. DUNN
28                                                                 Judge of the Superior Court

9

STATEMENT OF DECISION

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 2 4 2005

John A. Clarke. Executive Officer/Clerk
By R. Arraiga , Deputy
R. Arraiga

1   MICHAEL J. HARTLEY (State Bar No. 189375)
    LISA GILFORD (State Bar No. 171641)
2   SCOTT J. LEIPZIG (State Bar No. 192005)
    **WESTON BENSHOOF ROCHEFORT**
3        **RUBALCAVA & MacCUISH LLP**
    333 South Hope Street
4   Sixteenth Floor
    Los Angeles, California 90071
5   Telephone:  (213) 576-1000
    Facsimile:  (213) 576-1100
6
7   Attorneys for Plaintiff and Cross-Defendant
    **JAMES HARKESS**

8

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

### FOR THE COUNTY OF LOS ANGELES

10

11  JAMES HARKESS,

12              Plaintiff,

13      v.

14  TERRENCE QUINN aka TERRANCE LEE
    QUATKEMEYER, and DOES 1 through 10,
15  inclusive,

16              Defendants.

17

18  AND RELATED ACTIONS.

19

20

Lead Case No.:  BC 311681

(Assigned for All Purposes to the
Honorable James R. Dunn – Dept. 26)

**NOTICE OF ENTRY OF FINAL
JUDGMENT IN FAVOR OF JAMES
HARKESS**

21

22

23

24

25

26

27

28

1 | **TO: ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2 |    PLEASE TAKE NOTICE that the Court filed and entered the Stipulation and

3 | Order Re: Entry of Final Judgment on October 17, 2005.  A true and correct copy is attached

4 | hereto as Exhibit A.

5 |

6 | DATED:  October 24, 2005  MICHAEL J. HARTLEY
            LISA GILFORD

7 |             SCOTT J. LEIPZIG

8 |             WESTON, BENSHOOF, ROCHEFORT,
             RUBALCAVA & MacCUISH LLP

9 |

10 | _____

11 |               Lisa Gilford
          Attorneys for Plaintiff and Cross-Defendant
          **JAMES HARKESS**

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

NOTICE OF ENTRY OF FINAL JUDGMENT IN FAVOR OF JAMES HARKESS

713213.1

**EXHIBIT A**

COPY

ORIGINAL FILED

OCT 1 7 2005

LOS ANGELES
SUPERIOR COURT

1  MICHAEL J. HARTLEY (State Bar No. 189375)
   LISA GILFORD (State Bar No. 171641)
2  SCOTT J. LEIPZIG (State Bar No. 192005)
   **WESTON BENSHOOF ROCHEFORT**
3     **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
6
   Attorneys for Plaintiff and Cross-Defendant
7  JAMES HARKESS

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10

11  JAMES HARKESS,                          Case No.: BC 311681
                                            (Assigned for All Purposes to the
12          Plaintiff,                       Honorable James R. Dunn – Dept. 26)

13      v.                                  **STIPULATION AND [PROPOSED]**
                                            **ORDER RE: ENTRY OF FINAL**
14  TERRENCE QUINN aka TERRANCE LEE         **JUDGMENT**
    QUATKEMEYER, and DOES 1 through 10,
15  inclusive,

16          Defendants.

17  ─────────────────────────────────

    AND RELATED CROSS-ACTION.
18  ─────────────────────────────────

19  TO: THE HONORABLE JAMES R. DUNN, ALL PARTIES IN INTEREST, AND THEIR

20  RESPECTIVE ATTORNEYS OF RECORD:

21          Plaintiff and Cross-Defendant James Harkess ("Harkess"), Defendant and

22  Cross-Complainant Terrence Quinn aka Terrance Lee Quatkemeyer ("Quinn"), and

23  Defendants and Cross-Complainants James H. Smith ("Smith") and Jeffrey Weinsten

24  ("Weinsten"), as Trustees of the purported Windsor Trust, u/d/t dated June 21, 2002

25  ("Windsor Trust") (collectively the "Parties"), by and through their counsel of record, hereby

26  stipulate as follows:

27          1.    Quinn, on behalf of himself, and Smith and Weinsten on behalf of

28  themselves and the Windsor Trust, hereby waive all rights to appeal or otherwise challenge

                                            1
694191.1

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as

2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3  Final Judgment as the final judgment of the Court.

4      2.    Harkess hereby withdraws his memorandum for costs and waives his

5  right to those costs as the prevailing party, so that all parties shall bear their own costs and

6  attorneys' fees in this case.

7  **IT IS SO STIPULATED.**

8  DATED: ~~September~~ Oct 10, 2005

9

10  _____
    JAMES R. HARKESS, individually

11

12  DATED: September ___, 2005

13  _____
    TERRANCE QUATKEMEYER,
    aka TERRY QUINN, individually

14

15  DATED: September ___, 2005

16  _____
    JAMES H. SMITH, individually

17

18  DATED: September ___, 2005

19  _____
    JEFFREY WEINSTEN, individually

20

21  DATED: September ___, 2005    **THE WINDSOR TRUST**

22

23  By:_____
    TERRANCE QUATKEMEYER,
    aka TERRY QUINN

24  Its: Beneficiary

25  DATED: September ___, 2005    **THE WINDSOR TRUST**

26

27  By:_____
    JAMES H. SMITH

28  Its: Trustee

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

2

694191.1

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as
2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3  Final Judgment as the final judgment of the Court.

4       2.    Harkess hereby withdraws his memorandum for costs and waives his
5  right to those costs as the prevailing party, so that all parties shall bear their own costs and
6  attorneys' fees in this case.

7      IT IS SO STIPULATED.

8
9  DATED: October ___, 2005

10                      JAMES R. HARKESS, individually

11  DATED: October 7th 2005
12
13                      TERRANCE QUATKEMEYER,
                    aka TERRY QUINN, individually
14
15  DATED: October ___, 2005
16
17                      JAMES H. SMITH, individually
18  DATED: October ___, 2005
19
20                      JEFFREY WEINSTEN, individually
21  DATED: October 7th 2005     THE WINDSOR TRUST
22
23      By:                   TERRANCE QUATKEMEYER,
                    aka TERRY QUINN
24      Its: Beneficiary
25
26  DATED: October ___, 2005     THE WINDSOR TRUST
27      By:_____
                JAMES H. SMITH
28      Its: Trustee

          2

694191 1

1 | the Court's Statement of Decision and Final Judgment (copies of which are attached as
2 | Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3 | Final Judgment as the final judgment of the Court.

4         2.     Harkess hereby withdraws his memorandum for costs and waives his
5 | right to those costs as the prevailing party, so that all parties shall bear their own costs and
6 | attorneys' fees in this case.

7         **IT IS SO STIPULATED.**

8
9 | DATED: October __, 2005

10                  _____
                 JAMES R. HARKESS, individually

11
12 | DATED: October __, 2005

13                  _____
                 TERRANCE QUATKEMEYER,
14                  aka TERRY QUINN, individually

15 | DATED: October 7, 2005

16                  _____
17                  JAMES H. SMITH, individually

18 | DATED: October __, 2005

19
20                  _____
                 JEFFREY WEINSTEN, individually

21 | DATED: October __, 2005     THE WINDSOR TRUST

22
23                  By:_____
                 TERRANCE QUATKEMEYER,
                 aka TERRY QUINN
24                  Its: Beneficiary

25
26 | DATED: October 7, 2005     THE WINDSOR TRUST

27                  By:_____
28                  Its: Trustee     JAMES H. SMITH

2

694191.1

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as
2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3  Final Judgment as the final judgment of the Court.

4        2.    Harkess hereby withdraws his memorandum for costs and waives his
5  right to those costs as the prevailing party, so that all parties shall bear their own costs and
6  attorneys' fees in this case.

7        IT IS SO STIPULATED.

8
9  DATED: October ___, 2005

10                            JAMES R. HARKESS, individually

11 DATED: October ___, 2005
12

13                            TERRANCE QUATKEMEYER,
14                            aka TERRY QUINN, individually

15 DATED: October ___, 2005
16

17                            JAMES H. SMITH, individually

18 DATED: October 7, 2005
19

20                            JEFFREY WEINSTEN, individually

21 DATED: October ___, 2005    THE WINDSOR TRUST
22

23       By:_____
                         TERRANCE QUATKEMEYER,
24                          aka TERRY QUINN
      Its: Beneficiary
25

26 DATED: October ___, 2005    THE WINDSOR TRUST
27

      By:_____
28                          JAMES H. SMITH
      Its: Trustee

                                    2

694191.1

1   DATED: October ⁷, 2005    THE WINDSOR TRUST

2

3                    By:_____

                                JEFFREY WEINSTEN

4                  Its Trustee

5

6                    **ORDER**

7        IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8   Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9   costs and attorneys' fees.

10

11   DATED: _OCT 1 7 2005_____      **JAMES R. DUNN**

12                         HONORABLE JAMES R. DUNN

13                         Judge of the Superior Court

14   APPROVED AS TO FORM:

15

16   DATED: October ___, 2005    MICHAEL J. HARTLEY

                            LISA GILFORD

17                       SCOTT J. LEIPZIG

                            WESTON BENSHOOF ROCHEFORT

18                       RUBALCAVA & MacCUISH LLP

19

20                     Michael J. Hartley

                  Attorneys for Plaintiff and Cross-Defendant

21                  JAMES HARKESS

22

23   DATED: October___, 2005    THE LAW OFFICES OF PETER J. BABOS

24

25                     Peter J. Babos

                  Attorney for Defendant and Cross-Complainant

26                  TERRENCE QUINN aka TERRANCE LEE

                  QUATKEMEYER and Cross-Complainants JAMES H.

27                  SMITH and JEFFREY WEINSTEIN, as Trustees of THE

                  WINDSOR TRUST

28

604191.1

1

2     DATED: October __, 2005      THE WINDSOR TRUST

3                                  By:_____
                                        JEFFREY WEINSTEN
4                                     Its:  Trustee

5

6                                  ORDER

7              IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8     Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9     costs and attorneys' fees.

10

11

12    DATED: _____
                                  _____
13                                HONORABLE JAMES R. DUNN
                                  Judge of the Superior Court
14    APPROVED AS TO FORM:

15

16    DATED: October __, 2005      MICHAEL J. HARTLEY
                                   LISA GILFORD
17                                 SCOTT J. LEIPZIG
                                   WESTON BENSHOOF ROCHEFORT
18                                   RUBALCAVA & MacCUISH LLP

19

20                                 _____
                                            Michael J. Hartley
21                                 Attorneys for Plaintiff and Cross-Defendant
                                   JAMES HARKESS
22

23    DATED: October___, 2005      THE LAW OFFICES OF PETER J. BABOS

24

25                                 _____
                                           Peter J. Babos
26                                 Attorney for Defendant and Cross-Complainant
                                   TERRENCE QUINN aka TERRANCE LEE
27                                 QUATKEMEYER and Cross-Complainants JAMES H.
                                   SMITH and JEFFREY WEINSTEN, as Trustees of THE
28                                 WINDSOR TRUST

                                          3
694191.1

1
2  DATED: October ___, 2005       THE WINDSOR TRUST

3                                 By:_____
4                                       JEFFREY WEINSTEN
                                   Its: Trustee
5
6                                    ORDER

7        IT IS SO ORDERED. The clerk is directed to enter the Court's Statement of

8  Decision and Final Judgment as the final judgment in this case. Each party shall bear its own

9  costs and attorneys' fees.

10

11
12 DATED: _____          HONORABLE JAMES R. DUNN
                                   Judge of the Superior Court
13

14 APPROVED AS TO FORM:

15 DATED: October ___, 2005       MICHAEL J. HARTLEY
16                                 LISA GILFORD
                                   SCOTT J. LEIPZIG
17                                 WESTON BENSHOOF ROCHEFORT
                                      RUBALCAVA & MacCUISH LLP
18

19                                 _____
20                                       Michael J. Hartley
                                   Attorneys for Plaintiff and Cross-Defendant
21                                 JAMES HARKESS

22 DATED: October 7, 2005         THE LAW OFFICES OF PETER J. BABOS
23

24                                 _____
25                                       Peter J. Babos
                                   Attorney for Defendant and Cross-Complainant
26                                 TERRENCE QUINN aka TERRANCE LEE
                                   QUATKEMEYER and Cross-Complainants JAMES H.
27                                 SMITH and JEFFREY WEINSTEN, as Trustees of THE
                                   WINDSOR TRUST
28
                                   3
           STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
   694191 1

**EXHIBIT A**

1

2                              **ORIGINAL FILED**

3                                   AUG 1 8 2005

4                              LOS ANGELES
5                              SUPERIOR COURT

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES

10

11   JAMES HARKESS,                    )    Case No.: BC 311681
                                       )
12                 Plaintiff,          )
                                       )
13          v.                         )
                                       )
14   TERRENCE QUINN aka TERRANCE LEE   )    JUDGMENT IN FAVOR
     QUATKEMEYER, and DOES 1 through 10, )   OF JAMES HARKESS
15   inclusive,                        )
                                       )
16                 Defendants.         )
                                       )
17                                     )
     AND RELATED CROSS-ACTION.         )
18                                     )

19       This action came on regularly for trial before the Court on March 28, 2005, at 8:30 a.m. in

20   Department 26 of the above court. Michael Harley and Scott Leipzig of Weston Benshoof

21   Rochefort Rubalcava & MacCuish LLP appeared on behalf of Plaintiff and Cross-Defendant James

22   Harkess ("HARKESS"). Mark Hathaway of Slater Hathaway LLP and Peter Babos of the Law

23   Offices of Peter Babos appeared on behalf of Defendants and Cross-Complainants Terrance Lee

24   Quatkemeyer aka Terrence Quinn ("QUINN") and James H. Smith, as Trustee of The Windsor

25   Trust, dated June 21, 2002 ("SMITH" and "TRUST") and Jeffrey Weinsten ("WEINSTEN"), as

26   Co-Trustee of the TRUST.

27

28       The Court having heard and considered testimony, documentary evidence, and arguments

                                            1
                          JUDGMENT IN FAVOR OF JAMES HARKESS