1   presented by or on behalf of the parties, and having issued a Statement of Decision (hereinafter,

2   "Decision"), hereby orders the following Judgment to be entered in favor of HARKESS consistent

3   with the Statement of Decision, with specific reference to the following findings of the Court:

4

5       (1)    The purported TRUST "was not legally in existence and had no assets at the time

6   of the transfer" of Windsor Holdings, LLC ("Windsor") from David Kaye ("Kaye") to HARKESS.

7   (Decision, p. 1.) Any purported ownership of Windsor claimed by SMITH and WEINSTEN "is

8   purely derivative based on their status as trustees of the Trust, and the court has found that the Trust

9   was not legally in existence during the time of the transfer from Kaye to Harkess." (Decision, p.

10  2.)

11

12      (2)    The transfer of Windsor from "Kaye to Harkess was effective to transfer ownership

13  of Windsor to Harkess." (Decision, p. 1.) Windsor was formed in July 2001 and David Kaye

14  became the managing member, and sole owner, of Windsor; Quinn set up the Windsor structure in

15  such a way as to create apparent authority/ownership in Kaye; Harkess became the managing

16  member, and sole owner, of Windsor upon transfer from Kaye in July 2003.   The undisputed

17  evidence presented by both sides, which constituted the underlying premise for the need for this

18  Court to determine ownership of Windsor, was that since July 2001, Windsor owned Sanitec

19  Worldwide, Ltd. ("Worldwide"), and Worldwide was the majority shareholder of Sanitec, Ltd.

20  ("Limited").

21

22      (3)    QUINN and those acting on his behalf, including SMITH and WEINSTEN, "are

23  barred by the equitable doctrines of unclean hands and equitable estoppel from asserting ownership

24  in Windsor." (Decision, p. 2.) "In the exercise of its equitable powers, this court will not permit

25  Quinn to now assert an ownership interest in Windsor." (Decision, p. 7.)

26

27      NOW THEREFORE, IT IS HEREBY ADJUDGED AND DECREED THAT:

28

2

JUDGMENT IN FAVOR OF JAMES HARKESS

1    (1)    Judgment is entered FOR Plaintiff and Cross-Defendant HARKESS

2        and AGAINST Defendants and Cross-Complainants QUINN,

3        SMITH and WEINSTEN on Plaintiff's Complaint for Declaratory

4        Relief and on Defendants' Cross-Complaint for Declaratory Relief.

5        The Court declares that HARKESS is the sole owner of Windsor and

6        Windsor's assets, including but not limited to, Windsor's ownership

7        interests in Worldwide and Limited.  Neither QUINN, SMITH,

8        WEINSTEN, nor any successor trustees or beneficiaries of the

9        purported TRUST have any right, title or interest in Windsor and/or

10        any Windsor asset, including but not limited to, Windsor's

11        ownership interests in Worldwide and Limited;

12

13    (2)    QUINN, SMITH, WEINSTEN and the successor trustees and

14        beneficiaries of the purported TRUST, and each of them, as well as

15        anyone acting on their behalf or in concert with them (hereinafter,

16        "ENJOINED PARTIES"), are restrained and permanently enjoined

17        from claiming any right, title or interest in Windsor and/or any

18        Windsor asset, including but not limited to, Windsor's ownership

19        interests in Worldwide and Limited.  The ENJOINED PARTIES are

20        specifically restrained and permanently enjoined from making any

21        representations that they have any ownership interest in or control

22

23    ////.

24

25    ////

26

27

28

3

JUDGMENT IN FAVOR OF JAMES HARKESS



1  over Windsor and/or any Windsor asset, including but not limited to, Windsor's

2  ownership interests in Worldwide and Limited.

3

4  DATED: _AUG 18 2005_

5

6  **JAMES R. DUNN**
   JAMES R. DUNN
   Judge of the Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  JRD:cr
    Harkess.jmt
27  8/18/05

28

4

JUDGMENT IN FAVOR OF JAMES HARKESS

07

**EXHIBIT B**

**ORIGINAL FILED**

· AUG 1 8 2005

LOS ANGELES
SUPERIOR COURT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES HARKESS,<br><br>                    Plaintiff,<br><br>    v.<br><br>TERRENCE QUINN aka TERRANCE LEE<br>QUATKEMEYER, and DOES 1 through 10,<br>inclusive,<br><br>                    Defendants.<br>_____<br>AND RELATED CROSS-ACTION. | Case No.: BC 311681<br><br>STATEMENT OF DECISION |

The court finds FOR PLAINTIFF/CROSS-DEFENDANT AND AGAINST DEFENDANTS/CROSS-COMPLAINANTS on Plaintiff's Complaint for Declaratory Relief and on Defendants' Cross-Complaint for Declaratory Relief. The court declares that plaintiff James Harkess ("Harkess" herein) is the rightful owner of Windsor Holdings, LLC, ("Windsor" herein) and that defendants have no right, title or interest therein. Further, defendants, and each of them, are permanently enjoined from claiming any right, title or interest in Windsor.

The court finds that the Windsor Trust ("Trust" herein) was not legally in existence and had no assets at the time of the transfer of Windsor from David Kaye ("Kaye" herein) to Harkess. Defendant Terrence Quinn aka Quatkemeyer ("Quinn" herein), in July 2001, through a series of

1

STATEMENT OF DECISION

08

1  companies and transactions, none of which bear his name or other indicia of his ownership,
2  transferred ownership and apparent authority to Kaye as managing member of Windsor. Thereafter,
3  back-dated documents were created virtually overnight, transferring ownership of Windsor from
4  Kaye to Harkess in July 2003. This transfer of ownership of Windsor was relied on not only by
5  Harkess, but by many other parties and attorneys, including a federal judge. The court finds that
6  the transfer from Kaye to Harkess was effective to transfer ownership of Windsor to Harkess in July
7  2003. The court further finds that, in any event, Quinn and those acting on his behalf are barred by
8  the equitable doctrines of unclean hands and equitable estoppel from asserting ownership in
9  Windsor. Any purported ownership claimed by James H. Smith ("Smith" herein) or Jeffrey
10 Weinstein ("Weinsten" herein) is purely derivative based on their status as trustees of Trust, and the
11 court has found that the Trust was not legally in existence during the time of the transfer from Kaye
12 to Harkess.

13

14 FACTUAL BACKGROUND

15    There are many different companies and individuals involved in the various lawsuits here,
16 in Ohio and elsewhere, but the essential entities for purposes of this lawsuit are Windsor, Sanitec
17 Worldwide ("Worldwide" herein) and Sanitec Limited ("Limited" herein). Windsor is a California
18 limited liability company formed on July 17, 2001. The undisputed evidence at trial was that,
19 through a series of transfers and a corporate re-organization by Quinn, in late July 2001, Windsor
20 became the sole owner of Worldwide. It was also undisputed at trial that Worldwide was the
21 majority owner of Limited and that Mr. Weinsten's company, Salem Associates, owned a minority
22 interest in Worldwide. (Ex. 189, 223) The basic premise argued by both parties at trial was that
23 whoever owns Windsor controls the other two by virtue of this ownership structure.

24

25    This court has been asked to make a ruling on a single, narrow question: who owns
26 Windsor? The court is mindful that there are other lawsuits in Ohio, and perhaps elsewhere, which
27 may be impacted by this decision, and that there may be issues between various parties impacted
28 by what the court decides here. Beyond the findings that support the Court's decision, however,

---

2

STATEMENT OF DECISION

1    this court makes no findings regarding the merits of any other lawsuits or any purported claims that

2    the parties may have against one another or others.

3

4        Plaintiff contends that he is the owner of Windsor by virtue of a transfer from Kaye, the

5    managing member of Windsor.  Defendants contend that the Trust is the owner of Windsor.

6    Defendants presented evidence that in June 2002, defendant/cross-complainant Quinn was suffering

7    from a terminal illness and was facing an impending prison term, and therefore set up the Trust with

8    cross-complainant Smith and Weinsten as the trustees, and concurrently therewith transferred all

9    the assets of Windsor to Trust.  Therefore, at the time of transfer of Windsor from Kaye to Harkess,

10   defendants assert that Windsor had already been transferred to the Trust and there was nothing to

11   transfer.

12

13   THE TRUST

14       The circumstances in existence in or about June 2002, that is the illness and the impending

15   sentencing, are consistent with a desire by Mr. Quinn to form a trust to hold his property.  What is

16   missing, however, is a signed original trust document and any credible evidence that such a

17   document was ever signed by Quinn in June 2002, or at any time before he was released from prison

18   in late September 2003.  Also, like the ownership structure that Quinn set up for Windsor, the

19   structure he set up for his Trust was also incomplete.  The final, and necessary, steps were never

20   taken to consummate the Trust.

21

22       The court makes the following findings which support its conclusion that no Trust was

23   formed in June 2002 or at any time before the Kaye-Harkess transfer.

24

25   1.    The court found Smith to be a credible witness, but by his own testimony and that of others,

26        he was only a figurehead.  It was Weinsten that wrote all the letters for him to sign, and it

27        was Weinsten that monitored the litigation in Ohio.  Virtually everything that Smith knew,

28        he knew because Weinsten told him.  He had virtually no firsthand knowledge of facts.

2.    There is no original Trust signed by Quinn which bears a date in June 2002. In fact, no signed original at all was offered in evidence.

3.    While there is evidence that the Litwin law firm prepared drafts of a trust in June 2002, and Smith signed some version of a trust, Smith testified that he does not know whether Quinn signed it. (Ex. 265)

4.    Weinsten testified that he sent the Trust document which had been signed by others to Quinn for him to sign. He did not see Quinn sign the Trust document. Weinsten claims that he received a signature back from Mr. Quinn in June 2002, but the Court does not find this claim credible in light of Mr. Weinsten's other testimony in depositions and pleadings regarding ownership of Windsor (see below), and his prior conviction introduced for purposes of impeachment. No one had personal knowledge about whether Quinn ever signed before he was released.

5.    Quinn testified that he did sign it in June 2002, but the court does not find his testimony to be credible. On the stand Mr. Quinn repeatedly shifted responsibility for various actions from himself to his attorneys, and said he would sign virtually anything his lawyers told him to sign. This, along with his observed demeanor while testifying, and his two felony convictions for fraud-related offenses, cause the court to disregard his testimony. Thus, there is no independent, corroborating evidence that Quinn ever signed before he got out of prison.

6.    There is no credible evidence that shares or other indicia of ownership of Windsor were ever transferred to the Trust.

7.    Quinn testified that he fired Kaye as managing member of Windsor in June 2002 by letter,

4

STATEMENT OF DECISION

1    but there is no evidence other than the testimony of Quinn himself that the letter was ever

2    sent, and court does not find his testimony credible. Kaye denies ever receiving it, and the

3    only copy introduced in evidence apparently came from Weinsten's file.

4

5        In addition to these points, Weinsten who along with Smith was a co-trustee, denied twice

6    in depositions in other cases that he knew who owned Windsor. One can infer from this that he

7    either knew the trust had never been signed by Quinn, or that there was never any transfer of

8    Windsor assets to the Trust. It was Weinsten who was monitoring the Ohio litigation and

9    apparently was concerned enough about protecting his 48% interest in Worldwide that he attempted

10    to intervene in the Ohio litigation. In several pleadings filed in connection therewith he never

11    mentioned the Trust. (Ex. 118, 122) Even when Smith sent the letter to John Climaco, Ohio

12    counsel for Limited, et al., he did not mention the Trust. And finally, the two independent

13    witnesses who may have been able to corroborate the Trust, attorney Litwin who drafted it, and

14    attorney Mark Geragos (who was allegedly present when the Trust was signed in his office) were

15    not called by the defendants to testify.

16

17        The defendants have not met their burden of showing that the Trust was legally formed and

18    in existence at the time of the Kaye-Harkess transfer.

19

20    THE TRANSFER TO HARKESS

21        By virtue of the failure of the Trust to be formed in June 2002, the assets of Windsor were

22    still in Windsor at the time of the transfer from Kaye to Harkess. In July 2003, never referencing

23    the Trust in his letter, Smith wrote to John Climaco, Esq., Ohio counsel for Limited and Windsor

24    ("Climaco" herein), claiming that Harkess had no authority to represent Limited in the Ohio

25    litigation and that he (Climaco) was discharged as counsel. (Apparently this was one of the letters

26    written for him by Weinsten.) (Ex. 210) In response to this letter Climaco sent an urgent message

27    to Babos demanding to know who had authority to speak for Limited and who he should listen to.

28    (Ex. 211.1, 212) He was obviously very agitated and wanted answers immediately. He was

5
STATEMENT OF DECISION

1  particularly upset over the fact that he was being put in a position to embarrass himself before a

2  federal judge. In response to that inquiry, within hours Babos, with the concurrence of Harkess and

3  Kaye, created back-dated documents that showed that Harkess was the owner of Limited. (Ex. 168)

4  Kaye (for Limited) and Harkess (for Sanitec West) had been managing the Ohio litigation and they

5  needed to show they had authority to do so. (It is not altogether clear which parties Babos was

6  actually representing as counsel in all these transactions; Climaco had repeatedly asserted that

7  Quinn needed separate counsel due to a perceived conflict of interest; Babos had served as corporate

8  counsel for some of the Sanitec companies and Quinn individually over the years.) (Ex. 212) These

9  hastily created documents showed that Kaye, acting as managing member and owner of Windsor,

10  transferred his member/owner status to Harkess. Babos continued to reaffirm that Harkess was the

11  owner of Windsor for weeks after Quinn was released from prison in September 2003. He testified

12.  that it was only later he realized that he had made a mistake in having the documents prepared and

13  started making efforts to reverse position. By then, however, the representations to the Ohio federal

14  court and counsel had already been made and actions had been taken in reliance on Harkess'

15  apparent authority to represent Limited, (based on his ownership of Windsor) and commitments had

16  been made and documents signed.

17

18      Quinn is responsible for creating the environment and business structure that made this

19  possible. Windsor was formed on July 17, 2001, at Quinn's direction, with the filing of Windsor's

20  Articles of Organization with the Secretary of State, showing Kaye as the manager. This was the

21  only documentation for Windsor. Nowhere did Quinn's name appear. In late July 2001, he then

22  asked Kaye to front for him in an attempt to sell Limited and in fact Kaye acted as managing

23  member/owner in the Eden transaction and in dealing with Stericycle. He also was sent by Quinn

24  to Limited back East to monitor operations and represent himself as the managing member of

25  Windsor. Quinn claims that Kaye was only appointed to deal with specific sales or activities, but

26  Quinn is the one who put him in a position to represent himself as owner of Windsor. It was Quinn

27  who set up Windsor but never set up any formal ownership structure or had any documents prepared

28  which identified him as being involved in Windsor. All of the assets that went through the various

6

STATEMENT OF DECISION

1   re-organizations ended up in Windsor. Windsor became a holding company with no ownership

2   structure, and no connnection with Quinn.  When it was to his advantage in having Kaye step

3   forward for specified transactions that benefitted Quinn, he validates his authority.  The court does

4   not recognize, however, such selective delegations of authority, especially in a case where there is

5   no documentation showing an owner of Windsor at all.  Mr. Babos and Mr. Mitchell R. Miller (a

6   corporation lawyer who drew up the Windsor documents for the Secretary of State) both testified

7   that Quinn never set up any ownership structure because he wasn't sure how he wanted to do it.

8   The only person placed in a position of apparent authority/ownership was Kaye.  There is no

9   evidence that either Quinn, or Babos or Miller did anything at all to remedy this uncompleted

10  ownership structure after Quinn went to prison, thus enabling the later events to occur.  The Court

11  finds that Mr. Kaye was the sole managing member, and therefore sole owner, of Windsor Holdings

12  from its inception in July 2001 through the transfer to Mr. Harkess in July 2003.

13

14      When the Climaco emergency came, Mr. Kaye did not step forward to act as owner/

15  manager, rather he wanted out, so it was agreed that he would transfer his member/owner status to

16  Harkess.  Rather than explain the dilemma to Mr. Climaco and seek a resolution with the Ohio

17  court, counsel Babos, with the concurrence of Harkess and Kaye prepared the back-dated

18  documents within a matter of hours and sent them to Climaco.  Those documents were sent to Ohio

19  with the knowledge that they were to be presented by Mr. Climaco, an officer of the court, to a

20  federal judge representing that Mr. Harkess was the owner of Windsor.  And then everyone sat back

21  and allowed others to rely on that representation.  This court finds that Mr. Harkess is the owner

22  of Windsor and became the owner with the transfer from Mr. Kaye in July 2003.  That entire chain

23  of events was created by the anonymous and incomplete creation of Windsor by Quinn, and the

24  attempt to selectively assign ownership/authority to Kaye.

25

26      The court is mindful that defendant contends that there was an agreement that Harkess was

27  only taking the shares of Windsor temporarily and that he was to give them back after Quinn was

28  released.  Mr. Babos supports this purported agreement, as does Quinn, but Harkess vehemently

7
STATEMENT OF DECISION

1  denies it.  There is evidence that Harkess said "If I own Limited by virtue of my ownership of

2  Windsor, then I want the documents."  This would suggest, however, that Harkess did indeed

3  believe he owned Windsor although had some question as to what impact it had on ownership of

4  Limited.  Whether there was or was not such a private agreement between Quinn and Harkess is

5  between them.  As far as the rest of the world is concerned, Mr. Kaye transferred ownership of

6  Windsor to Harkess and Harkess, Kaye and Babos represented to the federal court and the litigants

7  that Harkess was the owner of Windsor.  The transfer to Harkess was effective.

8

9  UNCLEAN HANDS AND EQUITABLE ESTOPPEL

10      Further, in the exercise of its equitable powers, this court will not permit Quinn to now

11  assert an ownership interest in Windsor.  Plaintiff spent a great deal of the trial laying out the series

12  of transactions involving the original purchase of Limited by Quinn with investor money and the

13  use of various corporations to do so.  Plaintiff made the point that Mr. Quinn's name personally did

14  not appear on any of the documentation of these companies.  For the most part the court found that

15  to be true, based on the limited evidence presented on those issues.  This court is being asked to take

16  note of a pattern of ownership and apparent evasion of accountability to creditors and suppression

17  of identity in order to establish the defense of unclean hands.  This court is not making any findings

18  as to whether Mr. Quinn defrauded the original investors in connection with his use of their funds

19  to purchase Limited.  This court does take note, however, of this trail of companies, re-

20  organizations and the resultant anonymity of Quinn for purposes of whether Quinn was attempting

21  to hide his assets, (i.e., Windsor's controlling interest in Worldwide and through Worldwide,

22  ownership of Limited) in order to avoid any claims these investors might have, and comes before

23  this Court with unclean hands.  The court also takes note of the fact that Quinn never used any of

24  his own money to purchase these companies.  The court did not find credible his testimony that he

25  also put his own money into Limited from the sale of luxury cars.  No documentary or other

26  evidence was presented to support that assertion.

27

28      All of this is corroboration for the testimony of Mr. Quinn himself.  Quinn testified on the

8

STATEMENT OF DECISION

15

1  stand that he created Windsor to "keep the assets of Sanitec away from Barbara Sager, Steve Ventre,

2  Joe Delloiacovo and the investors in Ohio that were laying claim to those assets." He further

3  testified that he asked Mr. Kaye to be the managing member because he was "having difficulties"

4  and "troubles" at the time. It is clear that Quinn did not want his assets in his own name and in fact

5  his apparent 80% interest in Sanitec West was in the name of his friend Mary Reidiger rather than

6  himself. This is sufficient evidence for the court to conclude that Quinn was secreting his assets

7.  to defeat the claims of his creditors and that he comes to this court with unclean hands. (*See*

8  <u>Allstead vs. Laumeister</u> (1911) 16 Cal.App. 59 and <u>Belling vs. Croter</u> (1943) 57 Cal.App.2d 296.)

9

10      In addition, the court invokes the doctrine of equitable estoppel. While Mr. Quinn himself

11  did not make the representations to those who relied and acted on them (the Ohio federal court and

12  counsel and others related to that litigation), he is directly responsible for setting in motion the chain

13  of events that led to those representations. He put Kaye and Harkess in the position of having

14  apparent authority for and ownership of Windsor, from the point of view of the court and the parties

15  in the East, to accomplish his own ends of selling off Limited without having his name in any way

16  associated with the sale. Many have relied on the resulting representations about Harkess'

17  ownership of Windsor to their potential detriment in the event that transactions consummated in

18  reliance thereon were to be overturned. Quinn is estopped from now claiming that the

19  representations regarding ownership of Windsor are false, or that Kaye did not have authority to

20  transfer the company to Harkess.

21

22      Plaintiff/Cross-Defendant Harkess to prepare the judgment consistent with this Tentative

23  Ruling. This Tentative Ruling shall be the Statement of Decision unless within ten days either party

24  specifies controverted issues or makes proposals not covered in the Tentative Ruling.

JRD:cr
Harkess.sd
8/18/05

25

26  Dated: ___AUG 18 2005___

27

28

             **JAMES R. DUNN**

             JAMES R. DUNN
             Judge of the Superior Court

9

STATEMENT OF DECISION

**PROOF OF SERVICE**

I, Yolanda S. Ramos, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is c/o Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California, 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On October 24, 2005, I served the document(s) described as NOTICE OF ENTRY OF FINAL JUDGMENT IN FAVOR OF JAMES HARKESS on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☐ BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS ☐ UPS ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS ☐ UPS ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☒ [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 24, 2005, at Los Angeles, California.

YOLANDA S. RAMOS

1

*Harkess v. Quinn, et al.*
**Los Angeles Superior Court, Case No. BC 311681**

2

3

**SERVICE LIST**

4

5
6
7
8
9

| | |
|---|---|
| Mark M. Hathaway, Esq. | Attorneys for TERRENCE QUINN aka |
| Slater Hathaway LLP | TERRANCE LEE QUATKEMEYER; |
| 200 South Los Robles Avenue | JAMES H. SMITH, as Trustee of THE |
| Suite 530 | WINDSOR TRUST, u/d/t dated June 21, |
| Pasadena, California 91101-2432 | 2002; SANITEC WORLDWIDE |
| | Telephone:  (626) 795-1600 |
| | Facsimile:  (626) 795-1616 |

10
11
12

**Courtesy Copy:**
Mark Hathaway, Esq.
801 South Figueroa Street, 11th Floor      Telephone:  (213) 624-7200
Los Angeles, CA 90015                           Facsimile:  (213) 624-7220

13
14
15
16

Mark Overland, Esq.                             Telephone:  (213) 613-4655
Overland Borenstein Scheper & Kim LLP           Facsimile:  (213) 613-4656
300 South Grand Avenue
Suite 2750
Los Angeles, CA 90071-3144

17
18
19
20

Mark Jay Richardson, Esq.                       Telephone:  (310) 393-9992
Laura Murtaugh, Esq.                            Facsimile:  (310) 393-2004
Richardson & Associates
Attorneys at Law
233 Wilshire Boulevard, Suite 820
Santa Monica, CA 90401

21
22
23
24

Joel Thvedt, Esq.                               Telephone:  (213) 312-9200
Knott & Glazier LLP                             Facsimile:  (213) 312-9201
601 South Figueroa Street
Suite 1950
Los Angeles, CA 90017

25
26
27
28

Joseph Delloiacovo                              Telephone:  (973) 989-2680
32 Dogwood Trail                                Facsimile:  (973) 989-2681
Randolph, NJ 07869



1  Guy P. Glazier, SBN 162628
   Joel A. Thvedt, SBN 130577
2  Deborah M. Parker, SBN 228203
   KNOTT & GLAZIER LLP
3  601 South Figueroa Street
   Suite 1950
4  Los Angeles, California 90017
   Telephone:    (213) 312-9200
5  Facsimile:    (213) 312-9201

6  Attorneys for Plaintiff,
   Sanitec Industries, Inc.
7

**ORIGINAL FILED**

Civil Appeals
Room 111

OCT 1 3 2005

**LOS ANGELES
SUPERIOR COURT**

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF LOS ANGELES

10

11  SANITEC INDUSTRIES, INC.,              Case No. BS 095182

12         Plaintiff,

13     v.                                  **STIPULATION OF PARTIES FOR
                                           ABANDONMENT OF APPEAL**
14  TERRY QUATKEMEYER, aka TERRY
    QUINN,
15
           Defendant.
16

17

18  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19         SANITEC INDUSTRIES, INC., and TERRY QUATKEMEYER, aka TERRY QUINN

20  (together, the "Parties"), by and through their counsel of record, HEREBY STIPULATE AND

21  AGREE, that, pursuant to the Settlement Agreement and Mutual Release, dated October 7th, by

22  and between the Parties and others, the Appeal in this matter be abandoned. THE PARTIES

23  FUTHER STIPULATE AND AGREE that they shall bear their own costs and attorney's fees.

24  SANITEC INDUSTRIES, INC.

25

26  _____          Dated: _10/10/05_____

27  By Joel A. Thvedt, Esq.
28  Knott & Glazier, LLP
    Counsel to Appellant Sanitec Industries, Inc.

Knott & Glazier
LLP

694183.1

STIPULATION FOR ABANDONMENT OF APPEAL

TERRY QUATKEMEYER, aka TERRY QUINN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: _October 7, 2005_

By Peter Babos, Esq.
Counsel to Respondent Terry Quatkemeyer

Knim & Goeder
LLP

694183.1

2

STIPULATION FOR ABANDONMENT OF APPEAL

1

# PROOF OF SERVICE

2

I, CLAUDETTE BONMAN, declare:

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California, 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

4

5

6

On October 13, 2005, I served the document(s) described as **STIPULATION OF PARTIES FOR ABANDONMENT OF APPEAL** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: See attached Service List

7

8

☒    BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

9

10

11

12

13

☐    BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS ☐ UPS    ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS ☐ UPS ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

14

15

16

17

18

☐    BY FACSIMILE:    I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

19

20

☒    [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

21

☐    [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

22

23

Executed on October 13, 2005, at Los Angeles, California.

24

25

*Claudette Bonman*

[Signature]

26

27

28

1
2
3
4
5

## SERVICE LIST

6
7
8
9

Peter J. Babos
Law Offices of Peter J. Babos
9401 Wilshire Boulevard
Suite 650
Beverly Hills, CA  90212

Attorneys for Defendant and Cross-Complainant TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER and Cross-Complainants JAMES H. SMITH, as Trustee of THE WINDSOR TRUST, u/d/t dated June 21, 2002

10
11

Telephone:    (310) 248-4822
Facsimile:    (310) 248-4406

12
13
14
15

Joel Thvedt
Knott & Glazier LLP
601 South Figueroa Street
Suite 1950
Los Angeles, CA  90017

Attorneys for Plaintiff
SANITEC INDUSTRIES, INC.
Telephone:    (213) 312-9200
Facsimile:    (213) 312-9201

16
17
18
19
20
21

**Courtesy Copy:**
Mark M. Hathaway, Esq.
Slater Hathaway LLP
200 South Los Robles Avenue
Suite 530
Pasadena, CA  91101-2432

Attorneys for Defendant and Cross-Complainant TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER and Cross-Complainants JAMES H. SMITH, as Trustee of THE WINDSOR TRUST, u/d/t dated June 21, 2002

22
23

Telephone:    (626) 795-1600
Facsimile:    (626) 795-1616

24
25
26
27

**Courtesy Copy:**
Mark Hathaway, Esq.
801 South Figueroa Street
11th Floor
Los Angeles, CA  90015

Telephone:    (213) 624-7200
Facsimile:    (213) 624-7220

28

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into as of the last signature date below (the "Effective Date"), by and between Dr. Mary Riedinger ("Riedinger"), Terrance Quatkemeyer aka Terry Quinn ("Quinn"), Peter J. Babos ("Babos"), James Smith ("Smith"), Jeffrey Weinsten ("Weinsten"), The Windsor Trust ("Windsor Trust"), James R. Harkess ("Harkess"), David Kaye ("Kaye"), Nord S. Sorensen ("Sorensen"), A.B.B. Sanitec West, Inc. ("Sanitec West"), Sanitec Industries, Inc. ("Sanitec Industries"), Sanitec USA, Inc. ("Sanitec USA"), and Windsor Holdings LLC ("Windsor Holdings") (collectively the "Parties").

### RECITALS

A.    In March 2004, Harkess filed a lawsuit to declare his ownership of a California limited liability company named Windsor Holdings LLC ("Windsor Holdings"). The lawsuit is captioned *James Harkess v. Terrance Quatkemeyer aka Terry Quinn et al.,* L.A. Superior Court Case No. BC311681 (the "Windsor Litigation"). Quinn is named as an individual defendant.    Smith, as trustee of the Windsor Trust, subsequently cross-claimed against Harkess seeking a declaration that the Windsor Trust owned Windsor Holdings rather than Harkess.

B.    The claims and cross-claims in the Windsor Litigation were tried to the Court in March and April 2005. In August 2005, the Court issued a Statement of Decision and a Final Judgment (collectively "Final Judgment") in favor of Harkess and against Quinn, Smith and Weinsten.    The Court subsequently issued an order that Harkess is entitled to costs as the prevailing party in the Windsor Litigation. Harkess has filed a memorandum seeking approximately $60,000 in such costs, and Quinn and the Windsor Trust have filed a motion opposing those costs. The appeal period on the Final Judgment has not yet run.

C.    In September 2004, Riedinger filed an individual and shareholder derivative lawsuit against Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries and Sanitec USA. The lawsuit is captioned *Mary Riedinger v. James Harkess et al.,* Los Angeles Superior Court No. BC 322202 (the "Riedinger Litigation").    The lawsuit alleges, among other things, that Defendants engaged in conduct that breached duties owed to Riedinger and to Sanitec West and that Riedinger was the majority shareholder and controlled Sanitec West.    Sanitec West subsequently cross-claimed (the "Cross-Complaint") against Riedinger, Quinn, and Peter Babos, alleging, among other things, that the Cross-Defendants wrongfully converted Sanitec West funds and assets. Babos has indicated that he intends to file a cross-complaint against Sanitec West, and perhaps other parties, and Riedinger and Quinn may do so as well. A bifurcated trial of certain standing defenses raised by Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries and Sanitec USA is set for trial on February 27, 2006.

1

D.    In February 2005, Sanitec Industries filed a lawsuit against Quinn to domesticate in California an approximately $1.4 million Ohio default judgment (plus interest and costs). The Ohio judgment was entered against Quinn on or about September 19, 2002 in Ohio state court in the matter of *Paul Wagner et al. v. George J. Fiorini, II, et al.,* Court of Common Please, Hamilton County, Ohio, Case No. A-0203262 (the "Ohio Default Judgment"). The California lawsuit seeking to domesticate this default judgment is captioned *Sanitec Industries v. Terry Quinn aka Terry Quatkemeyer,* L.A. Superior Court Case No. BS095182 (the "Industries Litigation"). The trial court subsequently declined to domesticate the Ohio default judgment on service of process grounds. Sanitec Industries has appealed that decision. A briefing date has not yet been set by the Court of Appeals.

E.    The Parties have engaged in substantial settlement discussions, and now wish to save litigation costs by entering into a global settlement that resolves the Windsor Litigation, the Riedinger Litigation, the Industries Litigation, and all related cross-complaints.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements described below, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed:

## Section 1.    Stipulation to Judgment and Waiver of Court Costs in the Windsor Litigation

1.1    Simultaneous with the execution of this Agreement, Harkess, Quinn, Smith and Weinsten (individually and as trustees of the Windsor Trust), shall execute a Stipulation and [Proposed] Order for Entry of Final Judgment in the Windsor Litigation. The Stipulation shall be in the form attached as Exhibit A hereto, and shall include a waiver of appellate rights by Quinn, Smith and Weinsten (individually and on behalf of the Windsor Trust), and shall provide that each party shall bear their own attorneys' fees and costs. Quinn, Smith and Weinsten shall deliver their executed signature pages to Harkess' counsel, Michael J. Hartley of Weston Benshoof Rochefort Rubalcava & MacCuish LLP ("Harkess' Counsel"), who shall promptly file the Stipulation with the Court. Harkess' Counsel shall then serve on Riedinger's counsel, Michael Weinsten of Liner Yankelevitz Sunshine & Regenstreif ("Riedinger's Counsel"), by first class mail, a conformed copy of the executed Stipulation.

## Section 2.    Dismissal of Appeal In The Industries Litigation

2.1    Simultaneous with the execution of this Agreement, Sanitec Industries and Quinn shall execute a Stipulation and [Proposed] Order dismissing Sanitec Industries'

2

appeal in the Industries Litigation with prejudice. The Stipulation shall be in the form attached as Exhibit B hereto, and shall provide that each party shall bear their own attorneys' fees and costs. Quinn shall deliver his executed signature page to Harkess' Counsel, who shall promptly file the fully executed Stipulation with the Court of Appeal. Harkess' Counsel shall then serve on Riedinger's Counsel, by first class mail, a conformed copy of the executed Stipulation.

2.2     Sanitec Industries represents and warrants that the plaintiffs in the underlying action that resulted in the Ohio Default Judgment have assigned their entire right, title and interest in the Ohio Default Judgment to Sanitec Industries in perpetuity. Sanitec Industries also represents and warrants that it has not assigned or otherwise transferred its rights in the Ohio Default Judgment, continues to hold such right, title and interest in the Ohio Default Judgment as of the Effective Date, and shall not assign or otherwise transfer its right, title and interest in the Ohio Default Judgment, in whole or in part, in the future. It is the intent of the Parties herein that the releases below shall include the release of the entire, right, title and interest and any claims assigned to Sanitec Industries against Quinn in the Ohio Default Judgment ("Assigned Interest"), and that the Assigned Interest shall be extinguished by this Agreement.

### Section 3.     Dismissal of Riedinger Litigation

3.1     Simultaneous with the execution of this Agreement, Riedinger and Sanitec West shall execute a dismissal with prejudice of the operative complaint and cross-complaint in the Riedinger Litigation. The dismissal shall be in the form attached as Exhibit C hereto. Harkess' Counsel shall be responsible for filing the dismissal promptly with the Court. Harkess' Counsel shall then serve on Riedinger's Counsel, by first class mail, a conformed copy of the executed dismissal.

3.2     All parties in the Riedinger Litigation shall bear their own costs and attorneys' fees.

### Section 4.     Stipulation As To Termination/Dilution Date

4.1     Riedinger hereby stipulates that on or about June 21, 2003, the Sanitec West Board of Directors validly diluted her ownership interest in Sanitec West from 80% to 40% and terminated her as Chief Financial Officer of Sanitec West, so that she was no longer the majority stockholder or an officer or employee of Sanitec West as of that date.

### Section 5.     Ownership Interests In Sanitec Entities

5.1     Riedinger represents and warrants as follows:

3

5.1.1   She has not been issued any of the equity capital of, or any debt or convertible securities issued by the "Sanitec Entities" (defined as Sanitec West, Sanitec USA, Sanitec Industries, Sanitec Worldwide, Ltd. ("Worldwide"), Sanitec, Ltd. ("Limited"), Sanitec USA National, Inc. ("SUSAN"), Windsor Holdings or any other Sanitec-related entities), or any options, warrants or other rights to acquire any of the foregoing, or any other ownership interest in the Sanitec Entities or their assets, other than Sanitec West Stock Certificate No. 1, in the amount of 5,700,000 shares of Sanitec West stock (the "Riedinger Shares").

5.1.2   She has not transferred, sold, assigned, pledged, mortgaged, hypothecated or otherwise encumbered her rights in the Riedinger Shares.

5.1.3   She has not caused Sanitec West to issue any shares of equity capital, other equity securities, rights to acquire any equity securities, or any other ownership of any kind in Sanitec West or its assets, to any person or entity, other than to Harkess, Sorensen, Kaye and/or Babos, and has not caused any other Sanitec Entity to issue to any person any ownership interest, or right to acquire any ownership interest, in that Entity or its assets.

5.1.4   She has no assets of the Sanitec Entities in her possession, custody or control.

5.1.5   From at least July 1, 2003 forward, She has not executed, or purported to execute, any agreements or other contracts on behalf of the Sanitec Entities, or otherwise incurred any liabilities or obligations on behalf of the Sanitec Entities, or otherwise committed the Sanitec Entities to any transaction or obligation, except for a purported agreement with Jeffrey Weinsten allegedly dated July 15, 2003. The Parties reserve their rights with respect to the validity or invalidity of this agreement and Jeffrey Weinsten and Jim Smith expressly do not agree with the stipulation in paragraph 4.1 above.

5.2   Riedinger hereby resigns and relinquishes all positions with Sanitec West or any of the Sanitec Entities, if any, and hereby transfers and assigns to Sanitec Industries all of her ownership interests, if any, in any of the Sanitec Entities or their assets, including but not limited to the Riedinger Shares, effective as of June 21, 2003; and hereby covenants to execute all stock powers, share registries or other documents necessary to transfer the Riedinger Shares to Sanitec Industries, and hereby irrevocably appoints Harkess as her attorney in fact to execute all documents necessary to transfer such Shares on the books and records of Sanitec West or otherwise relinquish all ownership interests or positions with any Sanitec Entities.

5.3   Quinn represents and warrants as follows:

4

5.3.1   He has not ever been issued any of the equity capital of, or any debt or convertible securities issued by Sanitec West, or any options, warrants or other rights to acquire any of the foregoing, or any other ownership interest in Sanitec West or its assets.

5.3.2   He has not caused Sanitec West to issue any shares of equity capital, other equity securities, rights to acquire any equity securities, or any other ownership of any kind in Sanitec West or its assets, to any person or entity, other than to Riedinger, Harkess, Sorensen, Kaye and/or Babos.

5.3.3   He has no assets of any Sanitec Entities in his possession, custody or control.

5.3.4   He has not executed, or purported to execute, any agreements or other contracts on behalf of Sanitec West, or otherwise incurred any liabilities or obligations on behalf of Sanitec West, or otherwise committed Sanitec West to any transaction or obligation.

5.4   Quinn hereby resigns and relinquishes all positions with Sanitec West or any of the Sanitec Entities, if any, and hereby transfers and assigns to Sanitec Industries all of his ownership interests, if any, in any of the Sanitec Entities or their assets; and hereby covenants to execute all stock powers, share registries or other documents necessary to transfer such interest(s), if any, to Sanitec Industries, and hereby irrevocably appoints Harkess as his attorney in fact to execute all documents necessary to transfer such interests on the company books and records or otherwise relinquish all ownership interests or positions with any Sanitec Entities.

5.5   Babos represents and warrants as follows:

5.5.1   He has not been issued any of the equity capital, or any debt or convertible securities issued by the "Sanitec Entities," or any options, warrants or other rights to acquire any of the foregoing, or any other ownership interest in the Sanitec Entities or their assets, other than Sanitec West Stock Certificate No. 5, in the amount of 712,500 shares of Sanitec West stock (the "Babos Shares").

5.5.2   He has not transferred, sold, assigned, pledged, mortgaged, hypothecated or otherwise encumbered his rights in the Babos Shares.

5.5.3   He has not caused Sanitec West to issue any shares of equity capital, other equity securities, rights to acquire any equity securities, or any other ownership of any kind in Sanitec West or its assets, to any person or entity, other than to Riedinger, Harkess, Sorensen, Kaye and/or himself, and has not caused Sanitec Industries or Sanitec

5

USA, Inc. to issue to any person any ownership interest, or right to acquire any ownership interest, in those entities or their assets.

        5.5.4  He has no assets of the Sanitec Entities in his possession, custody or control.

        5.5.5  Since November 2003, he has not executed, or purported to execute, any agreements or other contracts on behalf of Sanitec West, Sanitec USA or Sanitec Industries, or otherwise incurred any liabilities or obligations on behalf of those entities, or otherwise committed those entities to any transaction or obligation.

        5.6  Babos hereby resigns and relinquishes all positions with Sanitec West or any of the Sanitec Entities, if any, and hereby transfers and assigns to Sanitec Industries all of his ownership interests, if any, in any of the Sanitec Entities or their assets, including but not limited to the Babos Shares; and hereby covenants to execute all stock powers, share registries or other documents necessary to transfer the Babos Shares to Sanitec Industries, and hereby irrevocably appoints Harkess as his attorney in fact to execute all documents necessary to transfer such Shares on the books and records of Sanitec West or otherwise relinquish all ownership interests or positions with any Sanitec Entities.

## Section 6.    Sanitec West Investor Releases

        6.1  Prior to execution of this Agreement, Sanitec West has provided Riedinger's Counsel with a sample investor release in the form attached as Exhibit D hereto. Sanitec West represents and warrants that all persons investing in any Sanitec West security have either executed a release in the form attached as Exhibit D, or have been repaid by Sanitec West the full amount of their principal investment plus all interest accrued and owed by the company and do not hold any shares or any other interest in Sanitec West.

## Section 7.    Sanitec West Documents And Other Sanitec-Related Documents And Riedinger American Express Records

        7.1  Within ten (10) business days following execution of this Agreement, and subject to Section 7.3 below, Quinn, Riedinger and Babos shall deliver to Harkess' Counsel the originals (or copies if originals are not available) of all non-privileged documents in their possession, custody or control relating to Sanitec West, including but not limited to any corporate books and records of Sanitec West (such as the original "corporate book," articles of incorporation, bylaws, stockholder minutes or consents, etc.), agreements relating to Sanitec West, regulatory documents relating to Sanitec West, and all financial or accounting information relating to Sanitec West.

7.2    Within ten (10) business days following execution of this Agreement, Quinn, Riedinger and Babos shall also deliver to Harkess' Counsel the originals (or copies if originals are not available) of all non-privileged documents in their possession, custody or control, relating to any other Sanitec-related entity, including but not limited to Sanitec Industries, Sanitec USA, Limited, Worldwide, and Sanitec USA National. Such documents shall include, but shall not be limited to, the categories of documents referenced by way of illustration in Section 7.1 above.

7.3    Quinn, Riedinger and Babos acknowledge, represent and warrant that no documents may be withheld from production except on attorney-client privilege or attorney work-product grounds. They also acknowledge, represent and warrant that they will not assert the privileges or work-product protections of any Sanitec-related company as the basis for withholding documents, but may only do so with respect to privileges and protections that they hold themselves as individual parties in any of the litigations referenced in this Agreement.

7.4    Quinn, Riedinger and Babos shall be entitled to keep copies of any documents that they produce to Harkess' Counsel pursuant to this Section.

7.5    Sanitec West, Harkess, Sorenson and Kaye represent and warrant that neither they nor any of their agents, attorneys or representatives are in possession, have been in possession or will be in possession of any documents produced by American Express in connection with the August 4, 2005 subpoena issued to American Express seeking among other things the credit card records of Riedinger. Promptly after execution of this agreement, Harkess, Sanitec West, Kaye and Sorenson through counsel shall cause any documents delivered by American Express to the deposition officer listed on said subpoena to be immediately turned over to Riedinger's counsel, Michael E. Weinsten, and will further direct the deposition officer to destroy any copies made of those documents.

## Section 8.    <u>Mutual Releases</u>

8.1    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Riedinger (on behalf of herself and her respective descendents, dependents, heirs, executors, administrators, assigns, successors, agents, attorneys, employees, trusts, estates, partnerships, corporations and subsidiaries or divisions thereof, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec USA, Limited, Worldwide, SUSAN, and Windsor Holdings, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims,

7

actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Riedinger now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.2    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Quinn (on behalf of himself and his respective descendents, dependents, heirs, executors, administrators, assigns, successors, agents, attorneys, employees, trusts, estates, partnerships, corporations and subsidiaries or divisions thereof, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec USA, Limited, Worldwide, SUSAN, and Windsor Holdings, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Quinn now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.3    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Babos (on behalf of himself and his respective descendents, dependents, heirs, executors, administrators, assigns, successors, agents, attorneys, employees, trusts, estates, partnerships, corporations and subsidiaries or divisions thereof, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec USA, Limited, Worldwide, SUSAN, and Windsor Holdings, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Babos now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

703674.1

8.4    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, the Windsor Trust hereby waives, releases, acquits, covenants not to sue, and forever discharges Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec USA, Limited, Worldwide, SUSAN, and Windsor Holdings, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Windsor Trust now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.5    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Harkess (on behalf of himself and his respective descendents, dependents, heirs, executors, administrators, assigns, successors, agents, attorneys, employees, trusts, estates, partnerships, corporations and subsidiaries or divisions thereof, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Harkess now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.6    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Kaye (on behalf of himself and his respective descendents, dependents, heirs, executors, administrators, assigns, successors, agents, attorneys, employees, trusts, estates, partnerships, corporations and subsidiaries or divisions thereof, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of

9

every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Kaye now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.7    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Sorensen (on behalf of himself and his respective descendents, dependents, heirs, executors, administrators, assigns, successors, agents, attorneys, employees, trusts, estates, partnerships, corporations and subsidiaries or divisions thereof, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Sorenson now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.8    Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Sanitec West (on its own behalf and on behalf of its officers, directors, shareholders, agents, employees, representatives, principals, attorneys, insurers, affiliates, parents, divisions, subsidiaries, partnerships, partners, joint venturers, members, heirs, executors, administrators, trusts, trustees, beneficiaries, predecessors, successors, and assigns, and each of their respective successors, assigns, heirs and representatives, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Sanitec West now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

10

703674.1

8.9     Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Sanitec USA (on its own behalf and on behalf of its officers, directors, shareholders, agents, employees, representatives, principals, attorneys, insurers, affiliates, parents, divisions, subsidiaries, partnerships, partners, joint venturers, members, heirs, executors, administrators, trusts, trustees, beneficiaries, predecessors, successors, and assigns, and each of their respective successors, assigns, heirs and representatives, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Sanitec USA now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.10     Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Sanitec Industries (on its own behalf and on behalf of its officers, directors, shareholders, agents, employees, representatives, principals, attorneys, insurers, affiliates, parents, divisions, subsidiaries, partnerships, partners, joint venturers, members, heirs, executors, administrators, trusts, trustees, beneficiaries, predecessors, successors, and assigns, and each of their respective successors, assigns, heirs and representatives, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Sanitec Industries now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.11     Except to enforce any provision of this Agreement, subject to Subsection 8.14 below, and upon full execution of this Agreement, Windsor Holdings (on its own behalf and on behalf of its officers, directors, shareholders, agents, employees, representatives, principals, attorneys, insurers, affiliates, parents, divisions, subsidiaries, partnerships, partners, joint venturers, members, heirs, executors, administrators, trusts,

11

trustees, beneficiaries, predecessors, successors, and assigns, and each of their respective successors, assigns, heirs and representatives, past and present) hereby waives, releases, acquits, covenants not to sue, and forever discharges Riedinger, Quinn and Babos, including but not limited to their respective officers, directors, shareholders, affiliates, parents, subsidiaries, partners, principals, indemnitees, employees, attorneys, agents, consultants or experts, insurers, or any other person acting on their behalf, or their respective predecessors, successors, heirs, or assigns, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, fees, expenses, compensation or benefits, of every kind and nature whatsoever, direct or indirect, anticipated or unanticipated, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or otherwise, which Windsor Holdings now has or may have or may be capable of asserting on account of or in any way growing out of, relating to, resulting from or in connection with any act or omission concerning any matter.

8.12   Except as set forth in Section 1.1 above, Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec USA, and Windsor Holdings are not releasing any claims, regardless of their nature, that they had, now have, or may have, against Weinsten, Smith, Salem Associates, Inc., North Salem Associates, Inc., or any entity related in any manner whatsoever to them. Weinsten, Smith, Salem Associates, and any other entity related in any manner whatseover to them are not intended beneficiaries of this release.   By this limitation, Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec USA, Sanitec Ltd., Sanitec Worldwide and Windsor Holdings intend to preserve any and all claims, regardless of their nature, that they had, have, or may have against Smith, Weinsten or Salem Associates, Inc., North Salem Associates, Inc., or any other entity related in any manner whatsoever to them other than Quinn, Riedinger and Babos.

8.13   Except as set forth in Section 1.1 above, Weinsten, Smith, Salem Associates, Inc., North Salem Associates, Inc., or any entity related in any manner whatsoever to them are not releasing any claims, regardless of their nature, that they had, now have, or may have, against Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec Worldwide, Sanitec Ltd., Sanitec USA, and Windsor Holdings.  By this limitation, Weinsten, Smith, Salem Associates, and any other entity related in any manner whatsoever to them intend to preserve any and all claims, regardless of their nature, that they had, have, or may have against Harkess, Kaye, Sorensen, Sanitec West, Sanitec Industries, Sanitec Worldwide, Sanitec Ltd., Sanitec USA, and Windsor Holdings, or any other entity related in any manner whatsoever to them other than Quinn, Riedinger and Babos.

8.14   The mutual releases provided for in Subsections 8.1 through 8.13 of this Agreement shall cover all claims provided by statute, at law, common law, or in equity. Nothing in Section 8 of this Agreement shall preclude any Party from pursuing Litigation

12

against another Party or Parties to enforce the provisions, terms and/or conditions of this Agreement.

8.15   The Parties executing mutual releases in Subsections 8.1 through 8.13 of this Agreement hereby waive any and all rights under California Civil Code Section 1542. California Civil Code Section 1542 provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

8.16   All releases in favor of Babos are intended to include any matter wherein Babos was acting in any capacity as an attorney for or on behalf of Sanitec West.

8.17   Riedinger, Quinn, Babos, The Windsor Trust, Harkess, Kaye, Sorensen, Sanitec West, Sanitec USA, and Sanitec Industries acknowledge that they have executed the releases contained in Subsections 8.1 through 8.13 voluntarily, with full knowledge of their significance and limitations, and with the express intention of affecting the legal consequences provided by California Civil Code Section 1542.

## Section 9.    **Exchange of Counterparts**

If this Agreement is executed in counterparts by the Parties and signatures exchanged by facsimile or in electronic form, it shall be considered fully executed to the same extent as if the Parties had signed the original document.

## Section 10.    **Approvals and Notifications**

Any and all notices required or permitted under this Agreement shall be in writing and shall be deemed to be given when: (1) hand-delivered; (2) sent by overnight mail; or (3) upon receipt after mailing when mailed by certified mail return receipt requested, postage prepaid addressed to the party for whom it is intended as follows:

**If to Riedinger:**
c/o Michael Weinsten, Esq.
Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA  90024

13

**If to Quinn:**
c/o Peter J. Babos, Esq.
Law Offices of Peter J. Babos
9401 Wilshire Boulevard, Suite 650
Beverly Hills, CA 90212

**If to Babos:**
c/o Peter J. Babos, Esq.
Law Offices of Peter J. Babos
9401 Wilshire Boulevard, Suite 650
Beverly Hills, CA 90212

**If to Smith:**
c/o Michael E. Weinsten, Esq.
Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024

**If to Weinsten:**
c/o Michael E. Weinsten, Esq.
Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024

**If to Windsor Trust:**
c/o Peter J. Babos, Esq.
Law Offices of Peter J. Babos
9401 Wilshire Boulevard, Suite 650
Beverly Hills, CA 90212

**If to Kaye:**
c/o Mark E. Overland, Esq.
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144

**If to Harkess and Sorensen:**
c/o Michael J. Hartley, Esq.
Weston, Benshoof, Rochefort,
  Rubalcava & MacCuish LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071

14

**If to Sanitec USA, Sanitec West and Sanitec Industries:**
c/o Joel A. Thvedt, Esq.
Knott & Glazier LLP
601 South Figueroa Street
Suite 1950
Los Angeles, CA 90017

### Section 11.    Choice of Law

This Agreement shall be deemed to have been entered into in the State of California and all questions concerning the validity, interpretation or performance of any of its terms or provisions or of any rights or obligations of the Parties thereto, shall be governed by and resolved in accordance with the laws of the State of California. All legal actions concerning the validity, interpretation or enforcement of this Agreement must be originally brought in the Superior Court of the State of California, County of Los Angeles. By executing this Agreement, all Parties hereto are submitting to the jurisdiction of the State of California with respect to any dispute which may arise out of this Agreement.

### Section 12.    Advice of Counsel

Riedinger, Quinn, Babos, The Windsor Trust, Harkess, Kaye, Sorensen, Sanitec West, Sanitec USA, and Sanitec Industries acknowledge that they have obtained the advice of independent legal counsel prior to signing this Agreement and the other Parties acknowledge that they have had the opportunity to do so. Quinn further acknowledges that on September 21, 2005, Babos was disqualified from representing him in the Riedinger Litigation; however, Sanitec West has subsequently agreed to allow Babos to continue representing Quinn for the limited purpose of advising him with respect to this Agreement. Quinn acknowledges and agrees that he may not subsequently assert Babos' conflict as a basis for having this Agreement or any part of it invalidated or set aside.

### Section 13.    Costs and Attorneys' Fees

Except as otherwise provided in this Agreement, the Parties shall bear their own costs and attorneys' fees in connection with the Windsor, Riedinger and Industries Litigations and any other matters covered in this Agreement.

### Section 14.    Litigation Fees And Costs

In any Litigation between the Parties to enforce the provisions of the Agreement, the Party prevailing in the Litigation, whether at trial, arbitration or an appeal, shall be awarded its costs and expenses of suit, including, without limitation, a reasonable sum for attorneys' fees and expert witness fees incurred in such Litigation. The term "prevailing

15

703674.1

party" as used in this paragraph shall not be limited to a prevailing plaintiff Party, but shall also include, without limitation, any Party who is made a defendant in Litigation in which damages or other relief or both may be sought against such Party and a final judgment or dismissal or decree is entered in such Litigation in favor of such Party defendant. Attorneys' fees and expert witness fees incurred in enforcing any judgment or order rendered in connection with the interpretation or enforcement of this Agreement are recoverable by the Party in whose favor such judgment or award is rendered, as a separate item of damages. The provisions of this Section are severable from the other provisions of this Agreement and shall survive any such judgment or award, and the provisions of this Section shall not be deemed merged into any such judgment or award.

## Section 15.    Cooperation

The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms of this Agreement.

## Section 16.    Severability

In the event that any provision of this Agreement is determined by a court to be invalid, the remaining portions are to remain in full force and effect, unless a declaratory judgment is obtained to determine that the portion of the Agreement determined invalid is material to the Agreement to such an extent as to render the entire Agreement void. It is the intent of the Parties that the provisions in Sections 1-8 shall be presumed material to the Agreement.

## Section 17.    Non-Waiver

The failure in any one or more instances of a Party to insist upon performance of any of the terms, covenants or conditions of this Agreement to exercise any right or privilege in this Agreement conferred, or the waiver by said Party of any breach of any of the terms, covenants or conditions of this Agreement shall not be construed as a subsequent waiver of any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver have occurred. No waiver shall be effective unless it is in writing and signed by an authorized representative of the waiving Party.

## Section 18.    Rules of Construction

The Parties represent that each Party entered into this Agreement with full knowledge and understanding of the covenants and conditions contained therein and of the transactions contemplated by the respective Parties. Accordingly, any rule of law, including but not limited to Section 1654 of the California Civil Code, or any legal

16