# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANITEC INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1386-JJF |
| | ) | |
| SANITEC WORLDWIDE, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S INTERROGATORIES TO DEFENDANT

Plaintiff, Sanitec Industries, Inc. ("Industries"), demands pursuant to Fed. R. Civ. P. 33 that defendant, Sanitec Worldwide, Ltd. ("Worldwide"), answer the following interrogatories within 30 days of service.

## GENERAL INSTRUCTIONS

1.    The provisions and definitions contained in the Local Court Rules of the United States District Court for the District of Delaware are incorporated by reference as if fully set forth herein.

2.    Each Interrogatory is to be fully and separately answered.  Should an objection to an Interrogatory be interposed, it should indicate the part of the Interrogatory to which it is directed.

3.    With respect to each Interrogatory, if Worldwide is able to provide some, but not all, of the information requested, it must provide such information as it is able, and identify specifically the items or aspects as to which it does not have sufficient information to respond fully.

4.    If Worldwide refuses to answer any Interrogatory in whole or in part, it must state the grounds for such refusal including any claim of privilege(s) or any other claim of immunity

from disclosure in sufficient detail to permit the Court to adjudicate the validity of the refusal. In addition, Worldwide must identify each document and oral communication for which such privilege(s) is claimed, and state specifically the privilege(s) being relied upon. In particular, it must provide:

      a.     the date of the document;

      b.     the name of any author of the document;

      c.     the name of any addressee of the document;

      d.     the name of any recipient of the document;

      e.     a brief description of the nature and subject matter of the document; and

      f.     the complete factual and legal basis for the claim of privilege or immunity.

5.     These instructions shall be deemed continuing so as to require supplemental answers if Worldwide obtains further information between the time the answers are served and the time of final judgment.

6.     Unless otherwise noted, these Interrogatories are not limited in time.

## DEFINITIONS

1.     The terms "Industries" or "plaintiff" shall mean the plaintiff, Sanitec Industries, Inc., and its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

2.     The terms "Worldwide," "defendant," "you" or "your" shall refer to defendant, Sanitec Worldwide, Ltd., any and all of Worldwide's predecessors or successors in interest, and any of its current or former officers, directors, employees, attorneys, partners, corporate parents, subsidiaries or affiliates (including without limitation, Sanitec, Ltd.), including any person who served in such capacity at any time, and any person purporting to act on its behalf, including without limitation Jeffrey J. Weinsten and James H. Smith.

608673v1                                   2

3.    The term "Amended Complaint" shall mean and refer to Industries' Amended Complaint filed in this action.

4.    The term "Answer" shall mean and refer to Worldwide's Answer filed in this action.

5.    The terms "patent-in-suit" or "the '000 patent" shall mean and refer to U.S. Patent No. 5,270,000, issued on December 14, 1993 to Goldner, *et al.*, entitled "Apparatus And Process For Treating Medical Hazardous Wastes", a copy of which is attached to the Amended Complaint, as well as any other patent asserted in this action at any time during the pendency of this action.

6.    The term "trademarks-in-suit" shall mean and refer to U.S. Trademark Registration No. 2,238,405, filed October 30, 1997; U.S. Trademark Registration No. 2,559,664, filed November 15, 1999; and U.S. Trademark Registration No. 1,991,211, filed July 31, 1995.

7.    The terms "Accused Products" or "MDU" shall mean and refer to a machine and/or system for disinfecting medical waste that is offered for sale, sold, manufactured, made for, distributed and/or imported by Worldwide, including without limitation machines or systems within the scope of one or more of the claims of U.S. Patent No. 5,270,000.

8.    The term "Sanitec technology" shall mean and refer to a machine and/or system using one or more microwave generators for disinfecting medical waste, including without limitation machines or systems within the scope of one or more of the claims of U.S. Patent No. 5,270,000.

9.    As used herein, all plural terms shall include the singular and all singular terms shall include the plural, masculine and feminine terms shall be construed each to include the other, and the terms "and" as well as "or" shall be construed disjunctively or conjunctively, as

necessary in order to bring within the scope of the Interrogatories all responses which might otherwise be construed to be outside their scope.

10.    The terms "refers" or "referring" or "relates" or "relating" include, but are not limited to, the following meanings: bearing upon, concerning, constituting, addressing, respecting, regarding, discussing, mentioning, describing, reflecting, responding to, identifying, constituting, pertaining to, having to do with, or being in any way relevant to the given subject.

11.    The term "all" and the term "each" shall be construed individually as encompassing both all and each.

12.    The term "date" means the exact month, day and year, to the extent known, or, if not known, Worldwide's best approximation thereof.

13.    The term "person" refers to natural persons, groups of natural persons, corporation, partnerships, joint ventures, firms, and any other incorporated or unincorporated entity or association.

14.    The term "documents" shall be construed to include all documents and tangible things subject to discovery as provided in Rule 34 of the Federal Rules of Civil Procedure. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, notebooks, correspondence, interoffice communications, inter-company communications, letters, diaries, e-mails, calendars, photographs, sketches, drawings, promotional material, technical papers, printed publications, patents and all other writings, as well as all non-paper information storage means such as internet pages, sound reproductions, computer inputs and outputs, tapes, film and computer memory devices. The term is also intended to include e-mail and computerized hard drive or server files.

15.    The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), orally, in writing, or in any other form.

## INTERROGATORIES

### INTERROGATORY NO. 1:

To the extent that Worldwide does not expressly admit each of Industries' accompanying requests for admissions, set forth in compete detail the basis for each denial or refusal to expressly admit, and identify all persons with knowledge and documents.

### RESPONSE:

### INTERROGATORY NO. 2:

Identify all persons to which Worldwide has offered to sell or sold any device encompassing the Sanitec technology, and identify all persons with knowledge and documents.

### RESPONSE:

### INTERROGATORY NO. 3:

Identify all persons with which Worldwide has entered into agreements to manufacture, distribute, market, offer to sell, or sell any device encompassing the Sanitec technology, and identify all persons with knowledge and documents.

### RESPONSE:

### INTERROGATORY NO. 4:

Set forth in complete factual detail all agreements, contracts, understandings, contacts, communications, and discussions between Worldwide and the following persons:  Justin Kaufman, SheGoTec Japan, Inc., Steven Gallegos, Paul Bulson, and Dalco Point, and identify all documents and persons with factual knowledge.

**RESPONSE:**

**INTERROGATORY NO. 5:**

State when Worldwide first became aware of the '000 patent, identify the officer, director, agent or employee of Worldwide who first became aware of the '000 patent, and describe in detail all steps taken by Worldwide to determine whether it did or did not infringe any claim of the '000 patent, and identify all persons with knowledge and documents.

**RESPONSE:**

**INTERROGATORY NO. 6:**

State whether Worldwide sought or obtained any opinion of counsel as to infringement, validity, or enforceability of the patent-in-suit, and identify all persons with knowledge and documents.

**RESPONSE:**

**INTERROGATORY NO. 7:**

State whether Worldwide contends that the District Court must construe any claim term or limitation of the '000 patent, and if yes, describe in detail the claim term or limitation for which construction is necessary and Worldwide's proposed construction, and identify all persons with knowledge and documents.

**RESPONSE:**

**INTERROGATORY NO. 8:**

Set forth in complete factual detail the basis for Worldwide's Affirmative Defenses, and identify all documents and persons with factual knowledge.

**RESPONSE:**


**INTERROGATORY NO. 9:**

Set forth in complete detail all efforts made by Worldwide to manufacture, market, distribute, sell, or offer to sell the Accused Products, and identify all documents and persons with knowledge.

**RESPONSE:**


**INTERROGATORY NO. 10:**

State whether Worldwide has sold or leased any Accused Product and, if so, set forth in complete detail the factual circumstances surrounding such sale or lease as to each Accused Product, including without limitation, the date of sale or lease, the identity of the manufacturer, distributor, purchaser or lessor, the sales price, cost, and the profit or loss, and identify all documents and persons with knowledge.

**RESPONSE:**


**INTERROGATORY NO. 11:**

For each Accused Product that is (a) sold or leased in the United States and/or (b) manufactured in the United States for sale or lease abroad, state the amount of gross and net

profit that Micro-Waste earned, the method of calculating such profit, and identify all documents and persons with knowledge.

**RESPONSE:**

November 15, 2005                    THE BAYARD FIRM

                                     /s/ Richard D. Kirk (rk0922)
                                     Richard D. Kirk (Bar ID #922)
                                     THE BAYARD FIRM
                                     222 Delaware Avenue, 9th Floor
                                     Wilmington, DE 19801
                                     rkirk@bayardfirm.com
                                     (302) 655-5000

                                     *Attorneys for Plaintiff Sanitec Industries, Inc.*

OF COUNSEL:

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000


Jennifer L. King
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SANITEC INDUSTRIES, INC.,              )
                                       )
              Plaintiff,               )
                                       )
       v.                              )       Civil Action No. 04-1386-JJF
                                       )
SANITEC WORLDWIDE, LTD.,               )
                                       )
              Defendant.               )

**PLAINTIFF'S FIRST SET OF
REQUESTS FOR THE PRODUCTION OF
DOCUMENTS AND THINGS TO DEFENDANT**

Plaintiff/counterclaim defendant, Sanitec Industries, Inc., demands pursuant to Fed. R.
Civ. P. 34 that defendant, Sanitec Worldwide, Ltd., answer the following first set of requests for
the production of documents and things within 30 days of service. Production of all documents
and things is to be made at the offices of Patton Boggs LLP, 2550 M Street, NW, Washington,
DC 20037.

**GENERAL INSTRUCTIONS**

1.     The provisions and definitions contained in the Local Court Rules of the United
States District Court for the District of Delaware are incorporated by reference as if fully set
forth herein.

2.     Each Request is to be fully and separately answered. Should an objection to a
Request be interposed, it should indicate the part of the Request to which it is directed.

3.     With respect to each Request, if Worldwide is able to provide some, but not all, of
the information requested, it must provide such information as it is able, and identify specifically
the items or aspects as to which it does not have sufficient information to respond fully.

4.    If Worldwide refuses to answer any Request in whole or in part, it must state the grounds for such refusal including any claim of privilege(s) or any other claim of immunity from disclosure in sufficient detail to permit the Court to adjudicate the validity of the refusal. In addition, Worldwide must identify each document and oral communication for which such privilege(s) is claimed, and state specifically the privilege(s) being relied upon. In particular, it must provide:

    a.    the date of the document;

    b.    the name of any author of the document;

    c.    the name of any addressee of the document;

    d.    the name of any recipient of the document;

    e.    a brief description of the nature and subject matter of the document; and

    f.    the complete factual and legal basis for the claim of privilege or immunity.

5.    These instructions shall be deemed continuing so as to require supplemental answers if Worldwide obtains further information between the time the answers are served and the time of final judgment.

6.    Unless otherwise noted, these Requests are not limited in time.

## DEFINITIONS

1.    The terms "Industries" or "plaintiff" shall mean the plaintiff/counterclaim defendant, Sanitec Industries, Inc., and its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

2.    The terms "Worldwide," "defendant," "you" or "your" shall refer to defendant/counterclaim plaintiff, Sanitec Worldwide, Ltd., any and all of Worldwide's predecessors in interest, and any of its current or former officers, directors, employees, attorneys,

partners, corporate parents, subsidiaries or affiliates, including any person who served in such capacity at any time, and any person purporting to act on its behalf, including without limitation Jeffrey J. Weinstein and James H. Smith.

3.     The term "Amended Complaint" shall mean and refer to Industries' Amended Complaint filed in this action.

4.     The term "Answer" shall mean and refer to Worldwide's Answer filed in this action.

5.     The terms "patent-in-suit" or "the '000 patent" shall mean and refer to U.S. Patent No. 5,270,000, issued on December 14, 1993 to Goldner, *et al.*, entitled "Apparatus and process for treating medical hazardous wastes", a copy of which is attached to the Amended Complaint, as well as any other patent asserted in this action at any time during the pendency of this action.

6.     The term "trademarks-in-suit" shall mean and refer to U.S. Trademark Registration No. 2,238,405, filed October 30, 1997; U.S. Trademark Registration No. 2,559,664, filed November 15, 1999; and U.S. Trademark Registration No. 1,991,211, filed July 31, 1995.

7.     The terms "Accused Products" or "MDU" shall mean and refer to a machine and/or system for disinfecting medical waste that is offered for sale, sold, manufactured, made for, distributed and/or imported by Worldwide, including without limitation machines or systems within the scope of one or more of the claims of U.S. Patent No. 5,270,000.

9.     The term "Sanitec, Ltd." shall mean Sanitec, Ltd. and its current or former officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, shareholders (including without limitation, Sanitec Worldwide, Ltd.), and persons purporting to act on its behalf, including without limitation, Terrence Quinn aka Terrance Lee Quatkemeyer, Jeffrey J. Weinstein, and James H. Smith.

10.    As used herein, all plural terms shall include the singular and all singular terms shall include the plural, masculine and feminine terms shall be construed each to include the other, and the terms "and" as well as "or" shall be construed disjunctively or conjunctively, as necessary in order to bring within the scope of the Requests all responses which might otherwise be construed to be outside their scope.

11.    The terms "refers" or "referring" or "relates" or "relating" include, but are not limited to, the following meanings: bearing upon, concerning, constituting, addressing, respecting, regarding, discussing, mentioning, describing, reflecting, responding to, identifying, constituting, pertaining to, having to do with, or being in any way relevant to the given subject.

12.    The term "all" and the term "each" shall be construed individually as encompassing both all and each.

13.    The term "date" means the exact month, day and year, to the extent known, or, if not known, Worldwide's best approximation thereof.

14.    The term "person" refers to natural persons, groups of natural persons, corporation, partnerships, joint ventures, firms, and any other incorporated or unincorporated entity or association.

15.    The term "documents" shall be construed to include all documents and tangible things subject to discovery as provided in Rule 34 of the Federal Rules of Civil Procedure. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, notebooks, correspondence, interoffice communications, inter-company communications, letters, diaries, e-mails, calendars, photographs, sketches, drawings, promotional material, technical papers, printed publications, patents and all other writings, as well as all non-paper information storage

means such as internet pages, sound reproductions, computer inputs and outputs, tapes, film and computer memory devices.  The term is also intended to include e-mail and computerized hard drive or server files.

16.    The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), orally, in writing, or in any other form.

## REQUESTS

1.    All documents sufficient to identify the organizational structure of Worldwide.

2.    The articles of incorporation and bylaws of Worldwide.

3.    All documents sufficient to identify the current and former directors and officers of Worldwide.

4.    All documents sufficient to identify the shareholders of Worldwide.

5.    All documents sufficient to identify the lines of business engaged in by Worldwide.

6.    All documents referring or relating to securities offerings, loans, lines of credit and all other means of financing made by or on behalf of Worldwide.

7.    All documents referring or relating to the patent-in suit.

8.    All documents referring or relating to the trademarks-in suit.

9.    All documents referring or relating to the patentability, prosecution, claim scope, infringement, validity, enforceability or unenforceability of the patent-in-suit, including but not limited to, notes of meetings, discussions or communications, agendas, minutes, resolutions, presentations, handouts and notes of Board of Directors meetings, any notice(s) of the existence of the patent-in-suit and/or notice(s) of infringement, licenses to the patent-in-suit, searches performed or analyses done with respect to potential or actual infringement of the patent-in-suit,

and written or oral opinions of counsel requested or obtained by any person concerning the patent-in-suit and/or Accused Products.

10.    All documents that describe or otherwise set forth or reflect the design of the Accused Products, including without limitation, plans, schematics, drawings and models.

11.    All documents that describe or otherwise set forth or reflect intellectual property and know how pertaining to the Accused Products, including without limitation, drawings, specifications, plans, designs, software, source code, blueprints, drawings and manuals.

12.    All documents referring or relating to design changes, improvements, modifications, and attempts to design around the '000 patent.

13.    All documents sufficient to show products and services offered for sale or sold or leased by Worldwide that do not fall within the scope of the claims of the '000 patent.

14.    All documents referring or relating to patents, patent applications, publications, or other documents, things, activities or events that Worldwide knows to be, believes might be, or ever considered to be, prior art to the '000 patent and/or searches therefor.

15.    All documents that Worldwide or persons affiliated therewith have written, published or made available to the public as author or co-author that relate to the subject matter disclosed and/or claimed in the patent-in-suit.

16.    All documents referring or relating to Industries and/or its employees, including but not limited to correspondence, reports, meeting minutes, or notes that discuss or refer to such business and/or persons.

17.    All documents referring or relating to all decisions by Worldwide to enter into any license, cross-license, assignment or other agreement conveying any rights relating to the development, manufacture, distribution, offer for sale, sale or use of the Accused Products.

18.    All documents referring or relating to licenses by Worldwide pertaining to the Accused Products, including agreements and reports showing the amount, if any, of royalties paid.

19.    All documents referring or relating to all decisions by Worldwide to develop, manufacture, distribute, offer to sell, sell and/or use the Accused Products, including but not limited to correspondence, memoranda, reports, presentations, analyses, market surveys, strategic plans, and handouts, minutes and notes of Board of Directors meetings.

20.    All documents referring or relating to the research and/or development of any Accused Products and/or the methods for their formulation and manufacture, including but not limited to, all patents, patent applications, publications, reports, scientific papers, research records, clinical studies, regulatory submissions, notebooks, proposals, analyses, tests, quality assurance materials, samples, proposed labels and packaging materials, and market analyses and surveys.

21.    All documents referring or relating to the design and manufacture of the Accused Products by or on behalf of Worldwide, including but not limited to specifications, procedures, production and/or technical manuals, industry standards, clinical studies, regulatory submissions, instructional materials, production records, analyses, quality assurance materials, labels, packaging materials, records, reports, proposals, contracts, invoices, purchase orders, and all other materials relating to fixed and variable costs associated with the manufacture of Accused Products.

22.    All documents referring or relating to any testing or comparisons of the Accused Products.

23.    All documents referring or relating to the purchase by Worldwide of Accused Products and/or their components from third parties, including but not limited to specifications, purchase orders, invoices, contracts, proposals, reports, analyses, quality control records, production records, product literature, advertisements and promotional materials, and records.

24.    All documents referring or relating to Worldwide's current, former, or potential suppliers, purchasers and/or distributors of Accused Products.

25.    All documents referring or relating to the promotion and sale, lease or distribution by Worldwide of Accused Products to third parties, including but not limited to advertisements, public announcements or educational materials, promotional materials, sponsorship or participation in any trade shows, product literature and inserts, product labels and packaging materials, proposals, contracts, regulatory compliance materials, instructions, manuals, catalogs, brochures, financial reports, sales records, leasing records, inventory records, monthly, quarterly and annual reports, product pre-launch documents, product release documents, and any other materials relating to sales revenues and the fixed and variable costs (including but not limited to discounts, rebates, special customer pricing arrangements and returns and allowances) associated with Worldwide's sale, lease and/or distribution of Accused Products.

26.    All documents referring or relating to any Accused Products refurbished, renovated or restored by Worldwide.

27.    All documents referring or relating to Worldwide's market studies, business plans, strategic plans, marketing brochures and material, consultant reports, analysis of competitors, market share analysis, and comparisons of Worldwide's products to products of other persons.

28.    All documents referring or relating to communications, discussions, and correspondence between Worldwide and actual or prospective customers for the Accused Products.

29.    All documents referring or relating to labels, inserts, manuals and patent marking for the Accused Products.

30.    All documents referring or relating to amount of sales or leases of the Accused Products by Worldwide by unit and dollar amount, including without limitation accounting books and records, balance sheets, profit and loss statements, and cash flow statements.

31.    All documents referring or relating to Worldwide's gross and net profit obtained from sales or leases of Accused Products, and the method of calculating such profits, and all underlying documents used to calculate such profits.

32.    All documents referring or relating to Sanitec, Ltd.

33.    All documents referring or relating to Industries.

34.    34.    All documents referring or relating to agreements, contracts and understandings between Worldwide and Sanitec, Ltd.

35.    All documents referring or relating to communications, discussions, and negotiations for any actual or contemplated agreements, contracts and understandings between Worldwide and Sanitec, Ltd.

36.    All documents referring or relating to communications, discussions or negotiations between Worldwide and James Harkess.

37.    All documents referring or relating to communications, discussions or negotiations between Worldwide and Terrence Quinn aka Terrance Lee Quatkemeyer.

597104v1                                        9

38.    All documents referring or relating to communications, discussions or negotiations between Worldwide and Jeffrey J. Weinsten.

39.    All documents referring or relating to communications, discussions or negotiations between Worldwide and James H. Smith.

40.    All documents reflecting the personal calendars for Jeffrey J. Weinsten from January 1, 2003 to the present, that pertain to the subject matter of the claims, defenses and counterclaims in this action.

41.    All documents reflecting the personal calendars for James H. Smith from January 1, 2003 to the present, that pertain to the subject matter of the claims, defenses and counterclaims in this action.

42.    All documents referring or relating to or supporting Worldwide's Affirmative Defenses alleged in its answer and/or documents referred to and/or relied upon in forming the basis for said defenses.

43.    All documents referring or relating to the identification of customers and potential customers of Worldwide.

44.    All documents referring or relating to the identification of customers and potential customers of Sanitec, Ltd.

45.    All documents not otherwise requested herein referring or relating to the patent-in-suit or the subject matter disclosed and/or claimed therein and the trademarks-in-suit.

August 8, 2005                    THE BAYARD FIRM

                                  _Richard D. Kirk (rk0922)_
                                  222 Delaware Avenue, 9th Floor
                                  Wilmington, DE 19801
                                  (302) 655-5000
                                  rkirk@bayardfirm.com

                                  *Attorneys for Plaintiff Sanitec Industries, Inc.*

*Of Counsel:*

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

and

Jennifer L. King
PATTON BOGGS LLP
8484 Westpark Drive
McLean, VA 22102
(703) 744-8000