# EXHIBIT 7

## SETTLEMENT AGREEMENT

This Agreement is made among the following parties: Sanitec Industries, Inc. ("Industries"); Sanitec Group LLC ("Group"); Guardian Investments LLC ("Guardian"); Steven Ventre ("Ventre"); and the Represented Investors and note-holders in Guardian Investments, LLC ("Investors") as defined herein (collectively herein the "Parties").

**WHEREAS**, the Parties enter into this Settlement Agreement to resolve and compromise the claims and counterclaims asserted in the pending litigation, as defined herein.

**NOW, THEREFORE**, for the foregoing reasons and in consideration of the representations, warranties, covenants, and promises hereinafter stated, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

1.    **Definitions.**

1.1    "Investors" as used herein shall include both of the following:

    (a)    "Represented Investors," which includes those individuals and entities who are noteholders of Guardian Investments, LLC, or a subsidiary or predecessor-in-interest of Guardian Investments, LLC, and who have, as of April 30, 2003, filed litigation against any one or more of the other parties to this agreement and who are listed on Exhibit "A," attached hereto.

    (b)    "Unrepresented Investors" includes all individuals and entities who are noteholders of Guardian Investments, LLC, or a subsidiary or predecessor-in-interest of Guardian Investments, LLC and who are not "Represented Investors."

    (c)    "Settling Investors" shall mean the represented investors and those unrepresented investors who, upon receipt of notice, elect to join the settlement by executing a release in the form of Exhibit "C", attached hereto, as more fully set out herein.

1.2    "Litigation" shall mean the following listed pending cases: *Wagner, et al. v. Fiorini, et al.*, Case No. A0203262 (Hamilton County Court of Common Pleas); *Franz v. Fiorini*, A0200257 (Hamilton County Court of Common Pleas); *Fischer, et al. v. Fiorini*, A0202470 (Hamilton County Court of Common Pleas); *Geiger v. Fiorini, et al.*, A0201017 (Hamilton County Court of Common Pleas); *Robben v. Fiorini, et al.*, A0200088 (Hamilton County Court of Common Pleas); *Schaefer v. Guardian*, A0105906 (Hamilton County Court of Common Pleas); *Ploegsma v. Fiorini, et al.*, A0203762 (Hamilton County Court of Common Pleas); *DiMuzio v. Fiorini, et al.*, A0201812 (Hamilton County Court of Common Pleas); *Hamad v. Fiorini, et al.*, A0204272 (Hamilton County Court of Common Pleas); *Burns v.*

*Fiorini, et al.,* A0201895 (Hamilton County Court of Common Pleas); *Curtis v. Fiorini, et al.,* 01-CV-831 (USDC, SD Ohio); *Meyer v. Guardian, et al.,* 01-CV-806 (USDC, SD Ohio); *Liston v. Sanitec International Holdings,* 01-CV-807 (USDC, SD Ohio); *Sanitec West, et al. v. Delloiacovo, et al.,* Case No. 01-02-1582-DCN (USDC, N.D. Ohio); *Guardian Investments, LLC, et al. v. Terry Lee Quatkemeyer,* CA19851-NC (Court of Chancery, State of Delaware).

1.3    "Investors' Counsel" shall mean the attorneys who have been hired by the Represented Investors as defined above <u>and</u> who are listed on Exhibit "A," attached hereto.

1.4    "The sale of any new patented Sanitec medical waste treatment unit" shall be defined to mean "the transfer, encumbrance, or other alienation of any title, rights, and/or interests which Industries owns and/or has for any new, patented Sanitec medical waste treatment unit, in return for money, other consideration, or no consideration whatsoever."

1.5    As used in paragraph 6 herein, "the sale of the intellectual property" shall be defined to mean "either (i) the transfer, licensing, sub-licensing, encumbrance, and/or other alienation of any title, rights, and/or interests in the intellectual property which Industries has and/or will be acquiring under the Settlement Agreement, or (ii) the transfer, assignment, pledging, encumbrance, and/or other alienation of any Industries' shareholder's capital stock in Industries, if that transaction, separately or in combination with any previous transactions, results in a change in the identity of the person(s) and/or entities who/which has/have, either individually or collectively, the controlling interest in Industries."

1.6    As used in paragraph 1.5(ii) herein, "the controlling interest in Industries" shall be defined to mean "that number of shares which, if exercised by the shareholder(s) owning or holding them in trust, would allow such shareholder(s) to authorize the sale of all or substantially all of Industries' corporate assets or to elect the directors who could take that action."

1.7    As used in paragraph 10 herein, "purchaser(s)" shall be defined to mean "any person and/or entity that acquires any title, right, and/or interest in any new patented Sanitec medical waste treatment unit, the intellectual property referred to above, or the controlling interest in Industries".

1.8    "Trust" shall be defined to mean a trust or any other entity, including but not limited to a not-for-profit limited liability company, created or organized by Investors' Counsel to manage, account for and disburse any of the funds paid pursuant to this Agreement.

2.    Group, Guardian, and Ventre hereby assign all rights, title and interest they claim or could forever from this date forward claim in the assets (as reflected in the December 31, 2002 balance sheet of Group) of Group to Industries and intellectual property of Group to Industries.

2

SI 002001

Upon execution of the Settlement Agreement, Group shall execute and deliver to Industries an assignment of patents and/or trademarks in a form suitable for filing in the U.S. Patent and Trademark Office , and (b) a consent to foreclosure. The assignments and consent are attached hereto as Exhibit "B". Upon execution of this Settlement Agreement, all engineering drawings pertaining to any Sanitec equipment, machinery, technology and devices and process ("Documents") shall be forwarded to Industries.

3.    Settling Investors hereby assign to Industries all rights, title and interest they claim or could forever from this date forward claim in the assets of A.B.B. Sanitec West, Inc. ("Sanitec West"), Industries, Sanitec, Ltd. ("Limited"), and Group.

4.    Upon execution of this Settlement Agreement, any Sanitec internet website now administered by Group, Ventre or Guardian, at the sole option of Industries will either indicate "under construction" or will direct contacts to Industries or its designee rather than the current list of contacts.

5.    The represented investors or their counsel shall create a Trust which shall be initially managed and maintained by Robert C. Kranz of Cincinnati, Ohio, an independent Administrator who is acceptable and accountable to counsel for the Represented Investors. All payments called for to be paid to Investors shall be directed to the Administrator for deposit into a Trust Account.

6.    Payments to the Trust shall be made as follows:  (a) Industries shall make an annual payment of Fifty Thousand  and 00/100 Dollars ($50,000.00) to the Trust, paid quarterly in the amount of Twelve Thousand Five Hundred and 00/100 Dollars ($12,500.00), beginning on May 1, 2004 for the months of January through March, 2004; and (b) Industries also shall make payment of Fifty Thousand and 00/100 Dollars ($50,000.00) on the sale of any new patented Sanitec medical waste treatment unit; a separate check shall be cut at the closing of any such sale and sent via overnight delivery to the Administrator within one day of the sale. Upon sale of the intellectual property, the proceeds shall be used to pay the Investors the balance owed at the time of sale. Industries shall supply to the Administrator copies of its annual Federal Tax Returns within 90 days of the end of each fiscal year. At such time as the Investors are paid through the foregoing payments to the Trust, if ever, or upon the expiration of the patents, Industries shall own the assets and intellectual property free and clear of the lien held by such Trust.

7.    The payments called for herein shall terminate when the amount paid to the Trust equals Four Million and 00/100 Dollars ($4,000,000.00), or upon December 31, 2008, or upon expiration of the patent rights whichever comes first. Industries shall make a pro rata payment to the Trust for the partial period immediately prior to the expiration of this Agreement owed pursuant to paragraph 6(a).

8.    Within five days after execution of this Agreement, Industries shall provide the Trust with Five Thousand and 00/100 Dollars ($5,000.00) to expend for administrative purposes. This sum shall not be credited against any of the payments made or to be made pursuant to paragraph 6 of this Agreement, and is a separate obligation of Industries under this Agreement.

SI 002002

9.    Within thirty (30) days of the recordation in the U.S. Patent and Trademark Office of the assignment of all patent rights assigned to Industries pursuant to paragraph 2 of this Agreement, Industries shall provide Investors' Counsel with evidence that Industries has obtained a commitment from a reputable financial institution for financing in an amount of at least $500,000.00. In order to secure the obligation of paragraph 6(a) of this Agreement, upon the closing of such financing, Industries will create an escrow account, in favor of the Trust, in an amount the net present value of which is sufficient to pay the maximum amount required by paragraph 6(a) and any necessary escrow fees. In the event that Industries fails to make the payments required by paragraph 6(a) within ten (10) days of the date on which they are due, the Escrow Agent shall make such payments to the Trust upon receiving a written demand from the Administrator.    Any balance in the escrow account remaining after the obligation under paragraph 6 has been satisfied shall belong to Industries.

9.5    In addition to the provisions set forth in paragraph 9 above, Industries, the Trust and the Escrow Agent shall enter into a separate Escrow Agreement, which provides that (a) to the extent there are any liens on the funds in the Escrow Account, the Trust shall have the first lien on said funds until all obligations contained within the Settlement Agreement are satisfied in full, (b) the Escrow Agent is an individual or entity mutually acceptable to Industries and the Trust, (c) any disputes arising under the terms of the Escrow Agreement shall be governed by Ohio law and, any claim and/or dispute arising from or relating to the Escrow Agreement shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

10.    Notwithstanding anything stated or implied to the contrary in paragraph 7 of the Settlement Agreement, Industries shall owe the Investors the royalties and other payments specified in the stated section for any sales of new, patented Sanitec medical waste treatment units and/or intellectual property which have been negotiated and agreed upon with any existing or prospective purchaser thereof prior to the expiration date of the Settlement Agreement, regardless of whether such transaction has been fully documented and/or closed upon, as if such sales had been completed prior to such expiration date.

11.    The Administrator shall divide the funds received pursuant to this Agreement into three separate funds, an administration fund, to be used for payment of the costs of administration of the Trust, a fee fund, to be distributed to Investors' Counsel, and an investor fund, to be distributed to all Settling Investors. The percentage of the total amount to be placed into each of these three funds is as follows: 5.00% shall first be placed into the administrative fund for the payment of costs associated with the management of the Trust, 63.00% shall be placed into the investor fund, and 32.00% shall be placed into the fee fund. The Administrator, in his discretion, may open separate bank accounts for the management of these funds, or may maintain one bank account for all three, but in any event shall separately account for the sums contained within each fund.

12.    Upon final execution of the Settlement Agreement, the Administrator shall notify all Unrepresented Investors of the terms of the settlement and shall allow each of them to submit

4

SI 002003

a proof of claim and execute a release of claims similar to those executed by the Represented Investors. All Represented Investors and all approved Unrepresented Investors (defined as the "Settling Investors") shall be paid such sums as are available for distribution by the Administrator pro-rata, based upon the total amount of any unreturned investment, exclusive of interest, as of January 1, 2003. Such distributions shall be made by the Administrator from time to time as the Administrator deems appropriate.

13.    At the time of any distribution to the Settling Investors, the Administrator shall distribute to Investors' Counsel a legal fee from the fee fund in the percentages as set out in the attached Exhibit "D".

14.    The Administrator shall submit a written account of the activities of the Trust at least annually to Investors' Counsel. In the event that funds in the administration fund are not used in the administration of the Trust, such funds shall be transferred to the investor fund for distribution to the Investors.

15.    Upon execution of this Settlement Agreement by all parties hereto, Investors' Counsel, or their designee(s) shall (a) prepare an appropriate notice to the Unrepresented Investors; (b) establish the criteria for participation in the settlement fund by Unrepresented Investors; (c) prepare an appropriate release to be signed by any such investors who hold unpaid notes from Guardian Investments, LLC as of January 1, 2003; (d) retain the services of the Trust Administrator; (e) direct that the Administrator mail a notice of this settlement to the Unrepresented Investors, allowing them to elect to join in the distribution of the settlement funds as set out herein, upon submission of adequate evidence of their claim and upon execution of the release in the form of Exhibit "C".

16.    **Mutual Release.** The Parties hereto, for themselves and for their heirs, executors, administrators and assigns, do hereby release, discharge and covenant not to sue the other Parties hereto, including their officers, directors, partners (both general and limited), shareholders, agents, and employees (including their respective heirs, executors, administrators, and assigns) (jointly referred to as "Releasee"), of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have against any Releasee occurring at any time prior to and after the date of this Release.

17.    Industries shall request Sanitec West and Limited to voluntarily dismiss their claims against Barbara Sager in the action captioned *Sanitec West v. Delloiacovo*, Civil Action No. 02-1582 (N.D. Ohio). Nothing in this Settlement Agreement shall limit any claims Sanitec West and Sanitec, Ltd. have against Coolidge Wall Womsley & Lombard Co., L.P.A.

18.    **Applicable Law, Jurisdiction, and Venue.** The instruction, interpretation, and enforcement of this Agreement shall be governed by Ohio law. Furthermore, any claim and/or dispute arising from or relating to this Settlement Agreement shall be brought in Hamilton County, Ohio, in either the Hamilton County Court of Common Pleas or the U.S. District Court

5

SI 002004

for the Southern District of Ohio, Western Division, at Cincinnati, Ohio, and the parties waive any objection which they might otherwise have as to the jurisdiction and venue of either Court.

19.   **Representations and Warranties.** The   following   representations   and warranties shall be fully admissible as evidence in any dispute pertaining to this Settlement Agreement or the subject matter thereof

(a) The Represented Investors and the Settling Investors represent and warrant to Industries that, prior to November 1, 2003, neither they nor their counsel, if any, were aware of a purported License Agreement dated as of April 17, 2003 ("Micro-Waste License Agreement") between Group and Micro-Waste Corporation ("Micro-Waste").

(b) Group and Ventre represent and warrant to the other parties hereto that, as of April 2003: (i) at the time Ventre executed any agreement, contract or understanding between Group and Micro-Waste, including without limitation, any letter agreement and Micro-Waste License Agreement, Micro-Waste, including Robert Bollinger, was aware of a dispute as to the ownership of the intellectual property that is the subject of the Settlement Agreement, including litigation related thereto; (ii) prior to executing the Micro-Waste License Agreement Group did not obtain an independent economic analysis as to the amount of  royalties to be paid pursuant to that agreement; (iii) Ventre believed he could sign the License Agreement; (iv) in April 2003, Robert Bollinger represented to Group and Ventre that: (A) Micro-Waste was the sole bidder on a contract for a mobile microwave disinfection unit, (B) the contract would shortly be awarded to Micro-Waste for such unit, and (C) Micro-Waste would pay a $100,000 royalty; (vi) based on Bollinger's representations, Ventre executed the Micro-Wave License Agreement; and (v) despite Bollinger's representation, Micro-Waste has not make any payments, including royalty payments, to Group or Ventre.

20.   **Action Against Micro-Waste.**

(a)   The parties to the Settlement Agreement hereby assign and transfer any claim or cause of action that they have or may have had against Micro-Waste to Industries.

(b)   Group and/or Ventre shall reasonably cooperate with Industries in connection with any litigation with Micro-Waste.

(c)   Industries does hereby release, discharge and covenant not to sue Ventre of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have

SI 002005

against such releasees pertaining to the Micro-Waste License Agreement. Nothing in this subparagraph shall be construed to apply to Terry Quatkemeyer, aka Terry Quinn. Industries shall cause Sanitec West to execute a comparable release to Ventre.

21. This Agreement and the releases signed pursuant thereto shall not affect any of the claims of the Investors or any of the Parties hereto as to any individual or entity that is not a Party to this Agreement.

22. Upon the execution of this Settlement Agreement by all parties, the Parties shall execute and file a stipulation and order of dismissal with respect to each of the pending Litigation cases, with each Party to bear its own litigation expenses and court costs, in the form of Exhibit "E" attached hereto. If claims made in those cases remain pertaining to individuals or entities who are not a party to this Agreement, or claims remain that are allowed to be maintained, then partial final dismissals with prejudice shall be entered into those cases as to the claims resolved by this Settlement Agreement, allowing the permitted claims to continue.

23. This Settlement Agreement is an expression of intent by the parties to conclude an agreement including these terms. However, its terms are not enforceable against any party until such time as the it has been executed by all parties hereto, or their counsel. The parties hereto, or their counsel, shall execute any additional documents reasonably necessary to effectuate this Settlement Agreement.

24. This Settlement Agreement may be signed in original or telecopied counterparts, each of which shall be considered an original, but all of which together shall be considered one Settlement Agreement. The Settlement Agreement shall be effective when such counterparts have been exchanged, by facsimile or otherwise.

25. SIGNATURES ON FOLLOWING PAGES

7

SI 002006

Sunitec Industries, Inc.

By: _____

Its: _____

Sunitec Group, LLC

By: _____

Its: _____

Guardian Investments, LLC

By: Steven Ventre _____

Its: _____


_____

Steven Ventre, Individually


_____

Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini


_____

Douglas Haman, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini


_____

Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini


_____

Edward L. Hoseus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini


8

SI 002007

Sanitec Industries, Inc.

\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_

By:\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ .

Its:\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ . \_

Sanitec Group, LLC

By: _Stephen R. Ventre_

Its: _Sole Member_

Guardian Investments, LLC

By: Steven Ventre

Its: _Sole Member_

Steven Ventre, Individually

\_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_
Timothy A. Fischer, Esq.
Attorney for Plaintiffs in *Wagner v. Fiorini*

\_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_
Douglas Haman, Esq.
Attorney for Plaintiffs in *Wagner v. Fiorini*

\_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_
Michael J. Bergmann, Esq.
Attorney for Plaintiffs in *Franz v. Fiorini*

\_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_
Edward L. Hoscus, Esq.
Attorney for Plaintiffs in *Fischer v. Fiorini*

- 8 -

1

SI 002008

Sanitec Industries, Inc.

_____          _____

By: _____          _____

Its:_____          _____

Sanitec Group, LLC

_____          _____

By: _____          _____

Its:___          _____          ___

Guardian Investments, LLC

_____          _____

By:  Steven Ventre

Its:_____          _____

_____          ___

Steven Ventre, Individually

_____

Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

_____

Douglas Hamso, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

_____

Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini

_____

Edward L. Hoseus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini

8

SI 002009

Sanitec Industries, Inc.

_____

By:_____

Its:_____

Sanitec Group, LLC

_____

By:_____

Its:_____

Guardian Investments, LLC

_____

By: Steven Ventre

Its:_____

_____

Steven Ventre, Individually

_____

Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

_____

Douglas Haman, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini

_____

Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini

_____

Edward L. Hoseus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini

8

SI 002010

Sanitec Industries, Inc.

_____

By: _____

Its: _____

Sanitec Group, LLC

_____

By: _____

Its: _____

Guardian Investments, LLC

_____

By: Steven Ventre

Its: _____


_____

Steven Ventre, Individually


_____

Timothy A. Fischer, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini


_____

Douglas Haman, Esq.
Attorney for Plaintiffs in Wagner v. Fiorini


_____

Michael J. Bergmann, Esq.
Attorney for Plaintiffs in Franz v. Fiorini


_____

Edward L. Hoscus, Esq.
Attorney for Plaintiffs in Fischer v. Fiorini


8

SI 002011

_____
Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

_____
Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

_____
John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

_____
Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

_____
Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

_____
Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

_____
Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

_____
Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec

- 9 -

SI 002012

ORIGINAL

Barry Fagel. Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

_Geoffrey F. Damon, Esq_
Attorney for Plaintiffs in Robben v. Fiorini

John M. Cloud. Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

Steven R. Hicks. Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

Robert G. Kelly. Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

Stacey L. Graus. Esq.
Attorney for Plaintiffs in Murtis v. Fiorini.
Meyer v. Guardian and Liston v. Sanitec

9

SI 002013

_____
Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini


_____
Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

_____
John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian


_____
Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini


_____
Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini


_____
Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini


_____
Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini


_____
Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec

SI 002014

Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini


Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini


John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian


Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini


Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini


Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini


Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini


Stacey L. Graus, Esq.
Attorney for Plaintiffs in Munis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec

9

SI 002015

Barry Fagel. Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v.
Guardian

Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v.
Fiorini

Timothy A. Garry, Esq. (0032904)
Attorney for Plaintiffs in DiMuzio v. Fiorini

Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec

8

1

SI 002016

Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec

9

SI 002017

_____
Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini


_____
Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini


_____
John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian


_____
Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini


_____
Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini


_____
Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini


_____   2-6-04
Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini


_____
Stacey L. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Meyer v. Guardian and Liston v. Sanitec


9


1


SI 002018

Barry Fagel, Esq.
Attorney for Plaintiffs in Geiger v. Fiorini

Geoffrey P. Damon, Esq.
Attorney for Plaintiffs in Robben v. Fiorini

John M. Cloud, Esq.
Attorney for Plaintiffs in Shaefer v. Guardian

Steven R. Hicks, Esq.
Attorney for Plaintiffs in Ploegsma v. Fiorini

Timothy A. Garry, Esq.
Attorney for Plaintiffs in DiMuzio v. Fiorini

Robert G. Kelly, Esq.
Attorney for Plaintiffs in Hamad v. Fiorini

Joseph M. Luken, Esq.
Attorney for Plaintiffs in Burns v. Fiorini

Stacey J. Graus, Esq.
Attorney for Plaintiffs in Murtis v. Fiorini,
Moyer v. Guardian and Liston v. Sanitec

9

1

SI 002019

# EXHIBIT A

LIST OF REPRESENTED INVESTORS

| Plaintiffs | Attorney Last Name |
|---|---|
| Donald Sallee | Fischer/Haman |
| Donald Sallee | Fischer/Haman |
| Donald Sallee | Fischer/Haman |
| Donald Sallee | Fischer/Haman |
| Garry Frederick | Fischer/Haman |
| Mary Hagen | Fischer/Haman |
| Mary Hagen | Fischer/Haman |
| Mary Hagen | Fischer/Haman |
| Richard Hagen | Fischer/Haman |
| Richard Hagen | Fischer/Haman |
| Richard Hagen | Fischer/Haman |
| Lowell Lay | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Donald Michaels | Fischer/Haman |
| Marie Minges | Fischer/Haman |
| Helen Runk | Fischer/Haman |
| Helen Runk | Fischer/Haman |
| Robert Runk | Fischer/Haman |
| Robert Runk | Fischer/Haman |
| Mike Ward | Fischer/Haman |
| Mike Ward | Fischer/Haman |
| Lillian Wilpers | Fischer/Haman |
| Gertrude Franz | Bergman |
| Est. of C. Fischer | Hoseus |
| Est. of C. Fischer | Hoseus |
| Maxine Geiger | Fagel |
| Paul Robben | Damon |
| Evelyn Schaefer | Cloud |
| Evelyn Schaefer | Cloud |
| Howard Ploegsma | Hicks |
| Howard Ploegsma | Hicks |
| Marva Dimuzio | Garry |
| Fred Hamad | Kelly |
| Fred Hamad | Kelly |
| Larry Burns | Luken |
| Larry Burns | Luken |
| Kenneth Curtis | Graus |

10

SI 002020

| | |
|---|---|
| Kenneth Curtis | Graus |
| Dennis Meyer | Graus |
| Dennis Meyer | Graus |
| Dennis Meyer | Graus |
| Dennis Meyer | Graus |
| Dorothy Liston | Graus |
| Dorothy Liston | Graus |
| Jack Payne | Graus |

**11**

**Exhibit B**

SI 002022

Attorney Docket No. 021867.0101                                    PATENT

## ASSIGNMENT

In consideration of the payment by ASSIGNEE to ASSIGNOR of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

ASSIGNOR:

>   SANITEC GROUP, LLC
>   a Delaware Limited Liability Company
>
>   having a place of business at
>   23 Fairfield Place,
>   West Caldwell, New Jersey 07006

(1)    hereby sells, assigns, transfers, and conveys to

ASSIGNEE:

>   SANITEC INDUSTRIES, INC.,
>   a California Corporation
>
>   11570 Sunshine Terrace
>   Studio City, CA 91604

and the successors, assigns, and legal representatives of Assignee

(a)    the entire right, title and interest for the United States of America and its territorial possessions and in all foreign countries, including all rights to claim priority, in and to U.S. Patent Serial No. 5,270,000 ('000 Patent) issued to Helmut Goldner, Reinhold Kamann, and Heinz Leinski on December 14, 1993 and entitled

APPARATUS AND PROCESS FOR TREATING MEDICAL HAZARDOUS WASTES

and the entire right, title, and interest in and to any inventions and discoveries described in said '000 Patent, any and all other patents and applications for patent on said inventions and/or discoveries, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications), and any patents issuing therefrom, based in whole or in part upon said inventions or discoveries, and/or claiming priority to and/or benefit of said '000 Patent, and every priority right that is or may be predicated upon or arise from said inventions, said discoveries, said applications, and/or said '000 Patent; and

the entire right, title, and interest in and to any substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries

(Assignment page 1 of 6)

SI 002023

Attorney Docket No. 021867.0101                                    PATENT

described in and/or claiming priority to and/or benefit of said '000 Patent and every priority right that is or may be predicated upon or arise from said foreign applications and patents, to the extent that Assignor has any right, title, or interest in any such foreign applications and/or patents;

(b)    the entire right, title and interest for the United States of America and its territorial possessions and in all foreign countries, including all rights to claim priority, in and to U.S. Patent Serial No. 5,529,687 ('687 Patent) issued to Joachim Mertsch on June 25, 1996 and entitled

FILLING SLUICE FOR APPLIANCES FOR THE TREATMENT OF INFECTIOUS WASTE,

and the entire right, title, and interest in and to any inventions and discoveries described in said '687 Patent, any and all other patents and applications for patent on said inventions and/or discoveries, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications), and any patents issuing therefrom, based in whole or in part upon said inventions or discoveries, and/or claiming priority to and/or benefit of said '687 Patent, and every priority right that is or may be predicated upon or arise from said inventions, said discoveries, said applications, and/or said '687 Patent, to the extent that Assignor has any right, title, or interest in said '687 Patent; and

the entire right, title, and interest in and to any substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries described in and/or claiming priority to and/or benefit of said '687 Patent and every priority right that is or may be predicated upon or arise from said foreign applications and patents, to the extent that Assignor has any right, title, or interest in any such foreign applications and/or patents;

(c)    the entire right, title and interest for the United States of America and its territorial possessions and in all foreign countries, including all rights to claim priority, in and to U.S. Patent Application Serial No. 08/276,871 ('871 Application) filed in the name of Joachim Mertsch on July 18, 1994 and entitled

FILLING SLUICE FOR APPLIANCES FOR THE TREATMENT OF INFECTIOUS WASTE,

and the entire right, title, and interest in and to any inventions and discoveries described in said '871 Application, any and all other patents and applications for patent on said inventions and/or discoveries, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications), and any patents issuing therefrom, based in whole or in part upon

(Assignment page 2 of 6)

Attorney Docket No. 021867.0101                              PATENT

said inventions or discoveries and/or claiming priority to and/or benefit of said '871 Application, and every priority right that is or may be predicated upon or arise from said inventions, said discoveries, said applications, and/or said '871 Application; and

the entire right, title, and interest in and to any substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries described in and/or claiming priority to and/or benefit of said '871 Application and every priority right that is or may be predicated upon or arise from said foreign applications and patents, to the extent that Assignor has any right, title, or interest in any such foreign applications and/or patents;

(2)    (a)    hereby authorizes Assignee to file patent applications in any and all countries for any or all of said inventions and/or discoveries described in said '000 Patent in Assignor's name or in the name of Assignee or any name that Assignee may deem advisable, under an International Convention or Treaty or otherwise;

    (b)    to the extent that Assignor has any right, title, or interest in said '687 Patent, hereby authorizes Assignee to file patent applications in any and all countries for any or all of said inventions and/or discoveries described in said '687 Patent in Assignor's name or in the name of Assignee or any name that Assignee may deem advisable, under an International Convention or Treaty or otherwise;

    (c)    hereby authorizes Assignee to file patent applications in any and all countries for any or all of said inventions and/or discoveries described in said '871 Application in Assignor's name or in the name of Assignee or any name that Assignee may deem advisable, under an International Convention or Treaty or otherwise;

(3)    (a)    hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States of America to issue or transfer said '000 Patent and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '000 Patent, including all divisional, renewal, reissue, re-examination, and continuation applications and any patents issuing therefrom, to Assignee, as Assignee of the entire right, title, and interest therein or otherwise as Assignee may direct;

    (b)    to the extent that Assignor has any right, title, or interest in said '687 Patent, hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States of America to issue or transfer said '687 Patent and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '687 Patent, including all divisional, renewal, reissue, re-examination, and continuation applications and any patents issuing therefrom, to Assignee, as Assignee of the entire right, title, and interest therein or otherwise as Assignee may direct;

    (c)    hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States of America to issue or transfer said '871 Application and all

(Assignment page 3 of 6)

SI 002025

aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '871 Application, including all divisional, renewal, reissue, re-examination, and continuation applications and any patents issuing therefrom, to Assignee, as Assignee of the entire right, title, and interest therein or otherwise as Assignee may direct;

(d)    hereby authorizes and requests the empowered officials of all other governments to issue or transfer all aforementioned substitute, international, foreign, and convention applications and patents drawn to any inventions and/or discoveries described in and/or claiming priority to and/or benefit of said '000 Patent, '687 Patent, and/or '871 Application, to the extent that Assignor has any right, title, or interest in any such foreign applications and patents, to Assignee; and

(4)    (a)    hereby binds Assignor's heirs, legal representatives, and assigns, as well as Assignor to do, upon Assignee's request and at Assignee's expense, but without additional consideration to Assignor or Assignor's heirs, legal representatives, or assigns, all acts reasonably serving to assure that said inventions and/or discoveries, said '000 Patent, and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '000 Patent, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications) and any patents issuing therefrom shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by Assignor, Assignor's heirs, legal representatives, and assigns if this assignment had not been made; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; to communicate to Assignee all facts known to Assignor relating to said '000 Patent, said applications and patents, and said inventions and/or discoveries or the history thereof; to furnish Assignee with any and all documents, photographs, models, samples, and other physical exhibits in Assignor's control or in the control of Assignor's heirs, legal representatives, or assigns which may be useful for establishing the facts of conceptions, disclosures, and reduction to practice of said inventions and/or discoveries; and to testify to the same in any interference, arbitration, or litigation;

(b)    to the extent that Assignor has any right, title, or interest in said '687 Patent, hereby binds Assignor's heirs, legal representatives, and assigns, as well as Assignor to do, upon Assignee's request and at Assignee's expense, but without additional consideration to Assignor or Assignor's heirs, legal representatives, or assigns, all acts reasonably serving to assure that said inventions and/or discoveries, said '687 Patent, and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '687 Patent, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request

(Assignment page 4 of 6)

PATENT

for Continued Examination (RCE) applications) and any patents issuing therefrom shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by Assignor, Assignor's heirs, legal representatives, and assigns if this assignment had not been made; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; to communicate to Assignee all facts known to Assignor relating to said '687 Patent, said applications and patents, and said inventions and/or discoveries or the history thereof; to furnish Assignee with any and all documents, photographs, models, samples, and other physical exhibits in Assignor's control or in the control of Assignor's heirs, legal representatives, or assigns which may be useful for establishing the facts of conceptions, disclosures, and reduction to practice of said inventions and/or discoveries; and to testify to the same in any interference, arbitration, or litigation; and

(c)   hereby binds Assignor's heirs, legal representatives, and assigns, as well as Assignor to do, upon Assignee's request and at Assignee's expense, but without additional consideration to Assignor or Assignor's heirs, legal representatives, or assigns, all acts reasonably serving to assure that said inventions and/or discoveries, '871 Application, and all aforementioned applications and patents claiming priority to and/or benefit of or drawn to any inventions and/or discoveries described in said '871 Application, including all renewal applications, reissue applications, re-examination applications, and continuation applications (including, for example, but not limited to Divisional, Continuation, Continuation-In-Part (CIP), Continued Prosecution (CPA), and Request for Continued Examination (RCE) applications) and any patents issuing therefrom shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by Assignor, Assignor's heirs, legal representatives, and assigns if this assignment had not been made; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; to communicate to Assignee all facts known to Assignor relating to said '871 Application, said applications and patents, and said inventions and/or discoveries or the history thereof; to furnish Assignee with any and all documents, photographs, models, samples, and other physical exhibits in Assignor's control or in the control of Assignor's heirs, legal representatives, or assigns which may be useful for establishing the facts of conceptions, disclosures, and reduction to practice of said inventions and/or discoveries; and to testify to the same in any interference, arbitration, or litigation.

(5)   The undersigned hereby grant the attorneys of the firm of Patton Boggs LLP, Attorneys at Law, 8484 Westpark Drive, 9th Floor, McLean, VA 22102, the power to insert on this Assignment any further identification which may be necessary or desirable in order to comply with the rules of the United States Patent and Trademark Office for recordation of this document.

(Assignment page 5 of 6)

SI 002027

Attorney Docket No. 021867.0101                                    PATENT

(6)    In the event that any of the paragraph(s) or provision(s) of this Assignment is unenforceable or inapplicable for any reason, such paragraph(s) or provision(s) will be limited or deleted to the minimum extent necessary so that the remaining paragraphs and provisions remain in full force and effect. Likewise, in the event that any assignment under this Assignment is unenforceable or inapplicable for any reason, such invalid assignment shall be disregarded and shall be void. Each and every other assignment under this instrument shall be considered valid and shall remain in full force and effect.

(7)    To facilitate execution, this Assignment may be executed in as many counterparts as may be required. It shall not be necessary that the signature on behalf of both parties hereto appear on each counterpart hereof. All counterparts hereof shall collectively constitute a single agreement.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on the respective dates below.

ASSIGNOR:

By: _____

Its: _____

Date: _____

ASSIGNEE:

By: _____

Its: _____

Date: _____

#3630049

(Assignment page 6 of 6)

SI 002028

## TRADEMARK ASSIGNMENT

WHEREAS, Sanitec Group, LLC, a Delaware limited liability company having a place of business at 23 Fairfield Place, West Caldwell, New Jersey 07006 ("Assignor"), is the owner of the common law and federally registered trademark SANITEC, INC. (U.S. Trademark Registration No. 1,991,211); the common law and federally registered trademark SANITEC (U.S. Trademark Registration No. 2,238,405); and the common law and federally registered service mark SANITEC (U.S. Trademark Registration No. 2,559,664), including all formats and variations thereof, whether registered or not (collectively, "the Marks"), and owns and enjoys all goodwill symbolized by said Marks, having acquired said Marks from Sanitec, Ltd. on February 22, 2002, along with all goodwill and other rights and interest in the Marks and other assets of Sanitec, Ltd.; and

WHEREAS, Sanitec Industries, Inc., a California corporation having a place of business at 11570 Sunshine Terrace, Studio City, California 91604 ("Assignee"), is desirous of acquiring said Marks and the goodwill associated with and symbolized by said Marks;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,

1.  Assignor hereby sells, assigns, transfers and sets over, to Assignee, all right, title and interest in and to said Marks, along with the goodwill of the business symbolized by said Marks, in the United States and in all foreign countries, including the right to maintain any claim or action for infringement or other violation of rights, to maintain or obtain the registration thereof, and to take any other action with respect to said Marks.

2.  Assignor hereby warrants and represents that it has sole title and interest in and to the Marks, that it has not sold, assigned, transferred or hypothecated any interest in or to any of those Marks, and that it is fully authorized and empowered to enter into this Agreement and effectuate the transfer contemplated hereunder.

3.  Assignor hereby agrees that it, and any successor or assign, will execute and deliver any further assignments and/or documentation as reasonably requested, without additional consideration, to effectuate this Assignment and to obtain or maintain the Marks and trademark registrations therefore.

SANITEC GROUP, LLC

By _____

Its _____

Subscribed and sworn to before me this

_17_ <sup>TH</sup> day of _February_ , 2004.

_Patrick J. Hanley_
Notary Public

PATRICK J. HANLEY, Attorney at Law
.OTARY PUBLIC - STATE OF OHIO
My Commission has no expiration
date. Section 147-03 O.R.C.

2

SI 002030

:

:

**Exhibit C**

SI 002031

## RELEASE

This AGREEMENT is entered into as of _____, 2004, by and among the following persons and entities: Sanitec Industries, Inc., Sanitec Group LLP, Guardian Investments LLC, and Steven Ventre, (all jointly referred to as "Sanitec"); and _____ (referred to as "Investor").

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.    Investor accepts the Agreement dated as of January ____, 2004, a copy of which is attached to this Release.

2.    Investor, for himself/herself and for his/her heirs, executors, administrators and assigns, do hereby release, discharge and covenant not to sue Sanitec, including Sanitec's officers, directors, partners (both general and limited), shareholders, agents, and employees (including their respective heirs, executors, administrators, and assigns) (jointly referred to as "Releasee"), of, from, and for all manner of actions, suits, debts, sums of money, accounts, covenants, controversies, agreements, promises, damages, judgments, claims, warranties (express and implied), demands or causes of action, at law, in equity or otherwise, of any nature, whether known or unknown, which they had, now have or can, shall or may ever have against any Releasee occurring at any time prior to and after the date of this Release.

3.    This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

4.    This Release shall be binding upon, and inure to the benefit of, the parties and

their respective successors, assigns, subsidiaries, trustees, officers, directors, partners (both general and limited), heirs, executors and administrators of the parties.

5. This Release contains and embodies the entire agreement between the parties and supersedes, replaces, cancels, nullifies, and terminates all prior agreements, understandings, warranties, assurances, or representations between or among the parties.

6. The Investor acknowledges that (s)he entered into this Agreement voluntarily and without duress of any kind.

_____

#33731850

- 2 -

SI 002033

# EXHIBIT D

Pro-rata distribution to plaintiffs' attorneys

| ATTORNEY | TOTAL CLIENT INVESTMENTS | PRO-RATA DISTRIBUTION |
|---|---|---|
| Garry | $ 11,527.10 | 0.38% |
| Hoseus | $ 84,921.58 | 2.80% |
| Damon | $ 33,692.87 | 1.11% |
| Fagel | $ 68,294.52 | 2.25% |
| Cloud | $ 68,561.64 | 2.26% |
| Graus | $ 349,999.87 | 11.53% |
| Kelly | $ 100,000.00 | 3.29% |
| Hicks | $ 248,000.00 | 8.17% |
| Luken | $ 252,471.23 | 8.32% |
| Bergman | $ 365,000.00 | 12.03% |
| Fischer/Haman | $ 1,452,815.04 | 47.86% |
| TOTAL | $ 3,035,283.85 | 100% |

#3739849

12

SI 002034

**Exhibit E**

SI 002035

[CAPTION]

## STIPULATION AND ORDER OF DISMISSAL

The undersigned parties, by counsel, hereby stipulate and agree as follows:

1.    The undersigned parties have entered into a Settlement Agreement, dated January

____, 2004, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference.

2.    As a result of the Settlement Agreement, this action is dismissed, with prejudice,

each party to bear its own costs.  [If action not being entirely dismissed, use: "As a result of the

Settlement Agreement, this action is dismissed with respect to defendant(s) _____, with

prejudice, each party to bear its own costs."]

SO ORDERED, this ___ day of _____, 2004

_____
Judge

[COUNSEL SIGNATURES]

# SUPERIOR COURT OF NEW JERSEY



I, Donald F. Phelan, Clerk of the Superior Court of New Jersey,

The same being a Court of Record, do hereby certify

That the foregoing is a true copy of **FINAL JUDGMENT IN**

**FORECLOSURE** filed March 5, 2004, in the cause wherein

**SANITEC INDUSTRIES, INC.** is the Plaintiff; and **SANITEC**

**GROUP, LLC; JOSEPH DELLOIACOVO; WAYNE**

**DANSON; GUARDIAN INVESTMENTS, LLC** are the

Debtors, now on file in my office.

IN TESTIMONY WHEREOF, I have hereto set my hand and affixed the seal of

Said Court, at Trenton, this 6ᵗʰ Day of April two thousand and four.

_____
Clerk

_____

I, **MARYANN K. BIELAMOWICZ,** Judge of the Superior Court of New Jersey, do

hereby certify That Donald F. Phelan, whose name is subscribed to the above certificate, was, at

that date thereof, and now is, the Clerk of the Superior Court of New Jersey, that the foregoing

attestation is in proper form, that the seal thereto annexed is the seal of said court, and that the

signature of the said Donald F. Phelan, is in his own proper handwriting.

WITNESS my hand at the City of Trenton, this 6ᵗʰ Day of April

Two thousand and four.

_____
Judge

NOTE--This certificate is made pursuant to an act of Congress
(Title 28 U.S. Code, Sec. 1738 effective September 1, 1948)

SI 002037

FILED
SUPERIOR COURT OF NEW JERSEY

MAR 5   2004

MARGUERITE T. SIMON
P.J.S.C.

FOX ROTHSCHILD LLP
Formed in the Commonwealth of Pennsylvania
BY:    Roberto A. Rivera-Soto, Esq.
           Thomas R. Hower, Esq.
Princeton Pike Office Park
997 Lenox Drive – Building 3
Lawrenceville, New Jersey 08648-2311
(609) 896-3600

ATTORNEYS FOR PLAINTIFF SANITEC INDUSTRIES, INC.

| | |
|---|---|
| SANITEC INDUSTRIES, INC., | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION:BERGEN COUNTY |
| Plaintiff, | : DOCKET NO.: F-22524-03 |
| v. | : CIVIL ACTION |
| SANITEC GROUP, LLC; JOSEPH<br>DELLOIACOVO; WAYNE DANSON;<br>GUARDIAN INVESTMENTS, LLC, | : **FINAL JUDGMENT**<br>: **IN FORECLOSURE** |
| Defendants. | : |

**THIS MATTER** having been opened to the Court on the application of Fox

Rothschild LLP, attorneys for plaintiff Sanitec Industries, Inc. ("**Plaintiff**"), and it

appearing that the Summons and Complaint in Foreclosure have been duly issued and

served upon the defendant Sanitec Group, LLC ("**Defendant Group**") and Guardian

Investment, LLC ("**Defendant Guardian**"), in accordance with the Rules of this Court,

and Defendant Group and Defendant Guardian having failed to answer or otherwise

respond to Plaintiff's Complaint in Foreclosure and their default having been entered by

LV1 239693v3 02/06/04

SI 002038

# EXHIBIT 8

PTO/SB/97 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U. S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Application No. (if known): | Attorney Docket No.:  022928.0200 |
|---|---|

# Certificate of Transmission under 37 CFR 1.8

I hereby certify that this correspondence is being facsimile transmitted to the United States Patent and Trademark Office.

on      February 14, 2006      .
　　　　　　　　Date

_Martin S. Sulsky_
Signature

Martin S. Sulsky
Typed or printed name of person signing Certificate

| 45,403 | (703) 744-8000 |
|---|---|
| Registration Number, if applicable | Telephone Number |

Note:    Each paper must have its own certificate of transmission, or this certificate must identify each submitted paper.

Assignment (2 pages)
Recordation Form Cover Sheet (1 page)
Payment by credit card.  Form PTO-2038 is attached (1 page)
Charge $40.00 to credit card

Form PTO-1595 (Rev. 07/05)
OMB No. 0651-0027 (exp. 6/30/2008)

U.S. DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

## RECORDATION FORM COVER SHEET
# PATENTS ONLY

To the Director of the U.S. Patent and Trademark Office: Please record the attached documents or the new address(es) below.

| 1. Name of conveying party(ies): | 2. Name and address of receiving party(ies) |
|---|---|
| SANITEC, LTD.<br>A Delaware Limited Liability Company<br>9065 Norris Avenue<br>Sun Valley, CA 91352<br><br>Additional name(s) of conveying party(ies) attached?  ☐ Yes  ☒ No | Name:      SANITEC INDUSTRIES, INC.<br><br>Internal Address:      A California Corporation<br><br>Street Address: |

| 3. Nature of conveyance/Execution Date(s): | 1250 24th Street, NW<br>Suite 350<br>Washington, DC 20037 |
|---|---|
| Execution Date(s):  **July 12, 2005**<br><br>☒ Assignment   ☐ Merger   ☐ Change of Name<br><br>☐ Security Agreement   ☐ Joint Research Agreement<br><br>☐ Government Interest Assignment<br><br>☐ Executive Order 9424, Confirmatory License<br><br>☐ Other _____ | City: _____ Washington<br><br>State: _____ DC<br><br>Country: _United States of America_ Zip: _20037_<br><br>Additional name(s) & address(es)  ☐ Yes  ☒ No<br>attached: |

| 4. Application or patent number(s): | ☐ This document is being filed together with a new application. |
|---|---|
| A. Patent Application No.(s)<br><br><br><br>Additional numbers attached?  ☐ Yes  ☒ No | B. Patent No.(s)<br>5,270,000 |

| 5. Name and address to whom correspondence<br>concerning document should be mailed: | 6. Total number of applications and<br>patents involved:    1 |
|---|---|
| Name:          Jennifer L. King<br>             PATTON BOGGS LLP<br><br>Internal Address:<br><br>Street Address: 2550 M Street, NW<br><br><br><br><br><br>City: _____ Washington, DC<br>State: ____ DC ____ Zip: __20037__<br>Phone Number: ____(202) 457-6000____<br>Fax Number: ____(202) 457-6315____<br>Email Address: ____jking@pattonboggs.com____ | 7. Total fee (37 CFR 1.21(h) & 3.41)   $____40.00____<br><br>☒ Authorized to be charged by credit card<br><br>☐ Authorized to be charged to deposit account<br><br>☐ Enclosed<br><br>☐ None required (government interest not affecting title)<br><br>8. Payment Information<br>a. Credit Card    Last 4 Numbers    1003<br>                  Expiration Date    09/09<br>b. Deposit Account Number _____<br>   Authorized User Name _____ |

| 9. Signature: |
|---|
| Martin Subby  45,403 _____          February 14, 2006<br>                Signature                                    Date<br><br>Jennifer L. King, Reg. No. 46,828          Total number of pages including cover   3<br>        Name of Person Signing                sheet, attachments, and documents: |

## ASSIGNMENT FROM SANITEC, LTD. TO SANITEC INDUSTRIES, INC.

This Assignment is entered into as of July 12, 2005, by Sanitec Industries, Inc. ("Industries"), a California corporation, and Sanitec, Ltd. ("Limited"), a Delaware corporation.

WHEREAS, Industries has conferred benefits on Limited for which Industries has not been compensated.

WHEREAS, on February 17, 2004, Industries, Sanitec Group, LLC ("Group"), and other persons, including without limitation persons who had or may have had claims against Limited, entered into a Settlement Agreement. Pursuant to that Settlement Agreement, Group assigned its entire right, title and interest in assets of Group, including intellectual property assets, to Industries. The Settlement Agreement, among other things, requires Industries to make payments to certain persons with claims against Limited and others. Industries has made such payments and is continuing to make payments pursuant to the terms and conditions of the Settlement Agreement.

WHEREAS, on March 5, 2004, the New Jersey Superior Court entered a final judgment of foreclosure in favor of Industries, which foreclosed on the assets of Group, including the intellectual property owned by Group.

WHEREAS, on November 24, 2003, Platinum Funding Corporation ("Platinum") assigned its entire right, title and interest to certain agreements between Platinum and Limited, pursuant to which Platinum had a perfected security interest in the assets of Limited, including without limitation, the intellectual property assets. Industries paid Platinum approximately $88,462 for the assignment from Platinum.

WHEREAS, Industries owns the entire right, title and interest in intellectual property formerly owned by Group.

NOW, THEREFORE, for the foregoing reasons and in consideration of the representations, warranties, covenants, and promises hereinafter stated, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.    Limited hereby sells, assigns, transfers, and conveys to Industries, and the successors, assigns, and legal representatives of Industries any and all claims or causes of action that Limited has, may have, or may have had against the any and all of the defendants in *Sanitec West v. Delloiacovo*, Civil Action No. 1:02-CV-01582 (N.D. Ohio).

2.    To the extent that Limited has, had, may have, or may have had any right, title, and interest in and/or to any intellectual property, Limited hereby sells, assigns, transfers, and conveys to Industries, and the successors, assigns, and legal representatives of Industries, the entire right, title and interest in such intellectual property, including without limitation: (a) copyrights;  (b) trade secrets; (c) know how, plans, schematics, drawings, models, specifications, designs, software, source code, blueprints, manuals, program logic and operational descriptions, and other technical information; (d) common law and federally registered trademarks, including without limitation the common law and federally registered (i) trademark SANITEC, INC. (U.S. Trademark Registration No. 1,991,211), (ii) trademark SANITEC (U.S. Trademark Registration No. 2,238,405), and (iii) service mark SANITEC (U.S. Trademark Registration No. 2,559,664) (collectively, "the Marks"), including all formats and

variations of the Marks, whether registered or not; and any and all goodwill symbolized by the Marks; (e) United States, international, convention, and foreign patents and applications for patent, including without limitation (i) U.S. Patent Serial No. 5,270,000 issued to Helmut Goldner, Reinhold Kamann, and Heinz Leinski on December 14, 1993 and entitled "Apparatus And Process For Treating Medical Hazardous Wastes", (ii) U.S. Patent Serial No. 5,529,687 issued to Joachim Mertsch on June 25, 1996 and entitled "Filling Sluice For Appliances For The Treatment Of Infectious Waste", and (iii) U.S. Patent Application Serial No. 08/276,871 filed in the name of Joachim Mertsch on July 18, 1994 and entitled "Filling Sluice For Appliances For The Treatment Of Infectious Waste" (collectively, "the Patents"); all inventions and/or discoveries described and/or claimed in the Patents (collectively, "the Inventions"); any and all substitute, international, foreign, and convention applications and patents drawn to or based in whole or in part upon one or more of the Inventions and/or claiming priority to and/or benefit of one or more of the Patents; any and all renewal applications, reissue applications, re-examination applications, and continuation applications, and any patents issuing therefrom, drawn to or based in whole or in part upon one or more of the Inventions and/or claiming priority to and/or benefit of one or more of the Patents; every priority right that is or may be predicated upon or arise from the Inventions and/or the Patents, including every priority right that is or may be predicated upon or arise from said international, foreign, and convention applications and patents; and (f) the right to recover for past infringement, misappropriation, misuse, or theft of any such intellectual property.

IN WITNESS WHEREOF, we have hereunto set our hands and seals effective as of July 12, 2005.

SANITEC, LTD.

By: _____

Its: _____

SANITEC, INDUSTRIES, INC.

By: _____

Its: _____

#3880048