# EXHIBIT 21

1  MICHAEL J. HARTLEY (State Bar No. 189375)
   LISA GILFORD (State Bar No. 171641)
2  SCOTT J. LEIPZIG (State Bar No. 192005)
   **WESTON BENSHOOF ROCHEFORT**
3     **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone:  (213) 576-1000
   Facsimile:  (213) 576-1100
6
7  Attorneys for Plaintiff and Cross-Defendant
   **JAMES HARKESS**

8
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
                    **FOR THE COUNTY OF LOS ANGELES**
10

11 | JAMES HARKESS,                          | Lead Case No.:  BC 311681
   |
12 |        Plaintiff,                        | (Assigned for All Purposes to the
   |                                          | Honorable James R. Dunn – Dept. 26)
13 |     v.                                   |
   |                                          | **NOTICE OF ENTRY OF FINAL**
14 | TERRENCE QUINN aka TERRANCE LEE          | **JUDGMENT IN FAVOR OF JAMES**
   | QUATKEMEYER, and DOES 1 through 10,      | **HARKESS**
15 | inclusive,                               |
   |                                          |
16 |        Defendants.                       |
   |                                          |
17 |                                          |
   | AND RELATED ACTIONS.                     |
18 |                                          |
   |                                          |
19 |                                          |
20

21

22

23

24

25

26

27

28

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 2 4 2005

John A. Clarke, Executive Officer/Clerk
By _R. Arriaga_ , Deputy
       R. Arriaga

713213.1

1  | **TO: ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2  |       PLEASE TAKE NOTICE that the Court filed and entered the Stipulation and

3  | Order Re: Entry of Final Judgment on October 17, 2005.  A true and correct copy is attached

4  | hereto as Exhibit A.

5  |

6  | DATED:  October 24, 2005       MICHAEL J. HARTLEY

7  |                               LISA GILFORD

                                 SCOTT J. LEIPZIG

8  |                               **WESTON, BENSHOOF, ROCHEFORT,**

                                 **RUBALCAVA & MacCUISH LLP**

9  |

10 |                               _____

11 |                                     Lisa Gilford

                              Attorneys for Plaintiff and Cross-Defendant

12 |                                **JAMES HARKESS**

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

713213.1

**EXHIBIT A**



ORIGINAL FILED

OCT 1 7 2005

LOS ANGELES
SUPERIOR COURT

1   MICHAEL J. HARTLEY (State Bar No. 189375)
    LISA GILFORD (State Bar No. 171641)
2   SCOTT J. LEIPZIG (State Bar No. 192005)
    **WESTON BENSHOOF ROCHEFORT**
3       **RUBALCAVA & MacCUISH LLP**
    333 South Hope Street
4   Sixteenth Floor
    Los Angeles, California 90071
5   Telephone: (213) 576-1000
    Facsimile: (213) 576-1100
6
7   Attorneys for Plaintiff and Cross-Defendant
    JAMES HARKESS

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LOS ANGELES

10

11  JAMES HARKESS,                          Case No.: BC 311681
                                            (Assigned for All Purposes to the
12              Plaintiff,                  Honorable James R. Dunn – Dept. 26)

13      v.                                  **STIPULATION AND [PROPOSED]**
                                            **ORDER RE: ENTRY OF FINAL**
14  TERRENCE QUINN aka TERRANCE LEE         **JUDGMENT**
    QUATKEMEYER, and DOES 1 through 10,
15  inclusive,

16              Defendants.

17  ───────────────────────────────
    AND RELATED CROSS-ACTION.
18

19  TO: THE HONORABLE JAMES R. DUNN, ALL PARTIES IN INTEREST, AND THEIR

20  RESPECTIVE ATTORNEYS OF RECORD:

21              Plaintiff and Cross-Defendant James Harkess ("Harkess"), Defendant and

22  Cross-Complainant Terrence Quinn aka Terrance Lee Quatkemeyer ("Quinn"), and

23  Defendants and Cross-Complainants James H. Smith ("Smith") and Jeffrey Weinsten

24  ("Weinsten"), as Trustees of the purported Windsor Trust, u/d/t dated June 21, 2002

25  ("Windsor Trust") (collectively the "Parties"), by and through their counsel of record, hereby

26  stipulate as follows:

27              1.    Quinn, on behalf of himself, and Smith and Weinsten on behalf of

28  themselves and the Windsor Trust, hereby waive all rights to appeal or otherwise challenge

                                        1
    ────────────────────────────────────────────────
    STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
694191.1

1   the Court's Statement of Decision and Final Judgment (copies of which are attached as

2   Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3   Final Judgment as the final judgment of the Court.

4        2.    Harkess hereby withdraws his memorandum for costs and waives his

5   right to those costs as the prevailing party, so that all parties shall bear their own costs and

6   attorneys' fees in this case.

7        **IT IS SO STIPULATED.**

8

9   DATED: ~~September~~ Oct __, 2005

10                                    JAMES R. HARKESS, individually

11

12   DATED: September __, 2005

13

14                                 TERRANCE QUATKEMEYER,
                                      aka TERRY QUINN, individually

15   DATED: September __, 2005

16

17                                      JAMES H. SMITH, individually

18   DATED: September __, 2005

19

20                                      JEFFREY WEINSTEN, individually

21   DATED: September __, 2005   **THE WINDSOR TRUST**

22

23                  By:_____
                            TERRANCE QUATKEMEYER,
                                aka TERRY QUINN

24                  Its: Beneficiary

25

26   DATED: September __, 2005   **THE WINDSOR TRUST**

27

28                  By:_____
                                JAMES H. SMITH
                  Its: Trustee

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

694191.1

1    the Court's Statement of Decision and Final Judgment (copies of which are attached as

2    Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3    Final Judgment as the final judgment of the Court.

4         2.    Harkess hereby withdraws his memorandum for costs and waives his

5    right to those costs as the prevailing party, so that all parties shall bear their own costs and

6    attorneys' fees in this case.

7         IT IS SO STIPULATED.

8

9    DATED: October ___, 2005

10                     JAMES R. HARKESS, individually

11

12   DATED: October 7th, 2005

13                     TERRANCE QUATKEMEYER,
                       aka TERRY QUINN, individually

14

15   DATED: October ___, 2005

16                     JAMES H. SMITH, individually

17

18   DATED: October ___, 2005

19                     JEFFREY WEINSTEN, individually

20

21   DATED: October 7th, 2005    THE WINDSOR TRUST

22

23        By _____
                       TERRANCE QUATKEMEYER,
                       aka TERRY QUINN

24        Its: Beneficiary

25

26   DATED: October ___, 2005    THE WINDSOR TRUST

27        By: _____
                       JAMES H. SMITH

28        Its: Trustee

2

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as

2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3  Final Judgment as the final judgment of the Court.

4       2.    Harkess hereby withdraws his memorandum for costs and waives his

5  right to those costs as the prevailing party, so that all parties shall bear their own costs and

6  attorneys' fees in this case.

7       **IT IS SO STIPULATED.**

8

9  DATED: October ___, 2005

10                              JAMES R. HARKESS, individually

11

12 DATED: October ___, 2005

13                             TERRANCE QUATKEMEYER,

14                            aka TERRY QUINN, individually

15 DATED: October 7, 2005

16

17                            JAMES H. SMITH, individually

18 DATED: October ___, 2005

19

20                            JEFFREY WEINSTEN, individually

21 DATED: October ___, 2005    THE WINDSOR TRUST

22

23               By:_____

                           TERRANCE QUATKEMEYER,

24                            aka TERRY QUINN

              Its: Beneficiary

25

26 DATED: October 7, 2005    THE WINDSOR TRUST

27               By:_____

                       JAMES H. SMITH

28             Its: Trustee

2

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as
2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3  Final Judgment as the final judgment of the Court.

4          2.    Harkess hereby withdraws his memorandum for costs and waives his
5  right to those costs as the prevailing party, so that all parties shall bear their own costs and
6  attorneys' fees in this case.

7          IT IS SO STIPULATED.

8
9  DATED:  October ___, 2005

10                                 _____
                                   JAMES R. HARKESS, individually

11
12 DATED:  October ___, 2005

13                                 _____
                                   TERRANCE QUATKEMEYER,
14                                 aka TERRY QUINN, individually

15 DATED:  October ___, 2005

16
17                                 JAMES H. SMITH, individually

18 DATED:  October 7, 2005

19
20                                 JEFFREY WEINSTEN, individually

21 DATED:  October ___, 2005        THE WINDSOR TRUST

22
23                 By:_____
                                   TERRANCE QUATKEMEYER,
24                               aka TERRY QUINN
                   Its:  Beneficiary

25
26 DATED:  October ___, 2005        THE WINDSOR TRUST

27                 By:_____
                               JAMES H. SMITH
28                 Its:  Trustee

STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT

1   DATED: October 7, 2005          THE WINDSOR TRUST

2

3                                   By: _____
                                         JEFFREY WEINSTEN
4                                        Is Trustee

5

6                                        ORDER

7           IT IS SO ORDERED. The clerk is directed to enter the Court's Statement of

8   Decision and Final Judgment in this case. Each party shall bear its own

9   costs and attorneys' fees.

10

11  DATED: OCT 17 2005                    JAMES R. DUNN
                                          _____
12                                        HONORABLE JAMES R. DUNN
                                          Judge of the Superior Court
13

14  APPROVED AS TO FORM:

15  DATED: October ___, 2005       MICHAEL J. HARTLEY
                                   LISA GILFORD
16                                 SCOTT J. LEIPZIG
                                   WESTON BENSHOOF ROCHEFORT
17                                    RUBALCAVA & MacCUISH LLP

18

19                                 _____
20                                       Michael J. Hartley
                                   Attorneys for Plaintiff and Cross-Defendant
21                                 JAMES HARKESS

22
    DATED: October ___, 2005       THE LAW OFFICES OF PETER J. BABOS
23

24

25                                 _____
                                         Peter J. Babos
26                                 Attorney for Defendant and Cross-Complainant
                                   TERRENCE QUINN aka TERRANCE LEE
27                                 QUATKEMEYER and Cross-Complainants JAMES H.
                                   SMITH and JEFFREY WEINSTEN, as Trustees of THE
28                                 WINDSOR TRUST

                                          3
                 STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
    694191 1

1
2      DATED:  October __, 2005        THE WINDSOR TRUST

3                                      By:_____
4                                              JEFFREY WEINSTEN
                                             Its:  Trustee
5

6                                      ORDER

7              IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8      Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9      costs and attorneys' fees.

10

11

12     DATED: _____
                                        _____
13                                      HONORABLE JAMES R. DUNN
                                        Judge of the Superior Court

14     APPROVED AS TO FORM:

15
       DATED:  October __, 2005          MICHAEL J. HARTLEY
16                                        LISA GILFORD
                                          SCOTT J. LEIPZIG
17                                        WESTON BENSHOOF ROCHEFORT
                                            RUBALCAVA & MacCUISH LLP
18

19
                                         _____
20                                                Michael J. Hartley
                                         Attorneys for Plaintiff and Cross-Defendant
21                                       JAMES HARKESS

22

23     DATED:  October___, 2005          THE LAW OFFICES OF PETER J. BABOS

24

25                                       _____
                                                  Peter J. Babos
26                                       Attorney for Defendant and Cross-Complainant
                                         TERRENCE QUINN aka TERRANCE LEE
27                                       QUATKEMEYER and Cross-Complainants JAMES H.
                                         SMITH and JEFFREY WEINSTEN, as Trustees of THE
28                                       WINDSOR TRUST

                                         3
       ─────────────────────────────────────────────────────────────────────
       STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
694191.1

1
2   DATED: October ___, 2005        THE WINDSOR TRUST

3                                   By:_____
                                        JEFFREY WEINSTEN
4                                   Its: Trustee

5
                                            ORDER
6

7           IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8   Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9   costs and attorneys' fees.

10

11
    DATED: _____
12                                      HONORABLE JAMES R. DUNN
                                        Judge of the Superior Court
13

14  APPROVED AS TO FORM:

15
    DATED: October ___, 2005        MICHAEL J. HARTLEY
16                                  LISA GILFORD
                                    SCOTT J. LEIPZIG
17                                  WESTON BENSHOOF ROCHEFORT
                                       RUBALCAVA & MacCUISH LLP
18

19
                                    _____
20                                         Michael J. Hartley
                                    Attorneys for Plaintiff and Cross-Defendant
21                                  JAMES HARKESS

22
    DATED: October 7, 2005          THE LAW OFFICES OF PETER J. BABOS
23

24

25                                  _____
                                            Peter J. Babos
26                                  Attorney for Defendant and Cross-Complainant
                                    TERRENCE QUINN aka TERRANCE LEE
27                                  QUATKEMEYER and Cross-Complainants JAMES H.
                                    SMITH and JEFFREY WEINSTEN, as Trustees of THE
28                                  WINDSOR TRUST

                                            3
                    STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
    694191.1

**EXHIBIT  A**

1

2

3

4

5

6

7

**ORIGINAL FILED**

AUG 1 8 2005

**LOS ANGELES SUPERIOR COURT**

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES

10

| | |
|---|---|
| 11  JAMES HARKESS, | Case No.: BC 311681 |
| 12              Plaintiff, | |
| 13        v. | |
| 14  TERRENCE QUINN aka TERRANCE LEE | **JUDGMENT IN FAVOR** |
| 15  QUATKEMEYER, and DOES 1 through 10, inclusive, | **OF JAMES HARKESS** |
| 16              Defendants. | |
| 17  AND RELATED CROSS-ACTION. | |
| 18 | |

19        This action came on regularly for trial before the Court on March 28, 2005, at 8:30 a.m. in

20   Department 26 of the above court.  Michael Harley and Scott Leipzig of Weston Benshoof

21   Rochefort Rubalcava & MacCuish LLP appeared on behalf of Plaintiff and Cross-Defendant James

22   Harkess ("HARKESS"). Mark Hathaway of Slater Hathaway LLP and Peter Babos of the Law

23   Offices of Peter Babos appeared on behalf of Defendants and Cross-Complainants Terrance Lee

24   Quatkemeyer aka Terrence Quinn ("QUINN") and James H. Smith, as Trustee of The Windsor

25   Trust, dated June 21, 2002 ("SMITH" and "TRUST") and Jeffrey Weinsten ("WEINSTEN"), as

26   Co-Trustee of the TRUST.

27

28        The Court having heard and considered testimony, documentary evidence, and arguments

1

JUDGMENT IN FAVOR OF JAMES HARKESS

1   presented by or on behalf of the parties, and having issued a Statement of Decision (hereinafter,

2   "Decision"), hereby orders the following Judgment to be entered in favor of HARKESS consistent

3   with the Statement of Decision, with specific reference to the following findings of the Court:

4

5        (1)    The purported TRUST "was not legally in existence and had no assets at the time

6   of the transfer" of Windsor Holdings, LLC ("Windsor") from David Kaye ("Kaye") to HARKESS.

7   (Decision, p. 1.) Any purported ownership of Windsor claimed by SMITH and WEINSTEN "is

8   purely derivative based on their status as trustees of the Trust, and the court has found that the Trust

9   was not legally in existence during the time of the transfer from Kaye to Harkess." (Decision, p.

10  2.)

11

12       (2)    The transfer of Windsor from "Kaye to Harkess was effective to transfer ownership

13  of Windsor to Harkess." (Decision, p. 1.) Windsor was formed in July 2001 and David Kaye

14  became the managing member, and sole owner, of Windsor; Quinn set up the Windsor structure in

15  such a way as to create apparent authority/ownership in Kaye; Harkess became the managing

16  member, and sole owner, of Windsor upon transfer from Kaye in July 2003.   The undisputed

17  evidence presented by both sides, which constituted the underlying premise for the need for this

18  Court to determine ownership of Windsor, was that since July 2001, Windsor owned Sanitec

19  Worldwide, Ltd. ("Worldwide"), and Worldwide was the majority shareholder of Sanitec, Ltd.

20  ("Limited").

21

22       (3)    QUINN and those acting on his behalf, including SMITH and WEINSTEN, "are

23  barred by the equitable doctrines of unclean hands and equitable estoppel from asserting ownership

24  in Windsor." (Decision, p. 2.) "In the exercise of its equitable powers, this court will not permit

25  Quinn to now assert an ownership interest in Windsor." (Decision, p. 7.)

26

27       NOW THEREFORE, IT IS HEREBY ADJUDGED AND DECREED THAT:

28

2

JUDGMENT IN FAVOR OF JAMES HARKESS

1    (1)    Judgment is entered FOR Plaintiff and Cross-Defendant HARKESS
2           and AGAINST Defendants and Cross-Complainants QUINN,
3           SMITH and WEINSTEN on Plaintiff's Complaint for Declaratory
4           Relief and on Defendants' Cross-Complaint for Declaratory Relief.
5           The Court declares that HARKESS is the sole owner of Windsor and
6           Windsor's assets, including but not limited to, Windsor's ownership
7           interests in Worldwide and Limited.  Neither QUINN, SMITH,
8           WEINSTEN, nor any successor trustees or beneficiaries of the
9           purported TRUST have any right, title or interest in Windsor and/or
10          any Windsor asset, including but not limited to, Windsor's
11          ownership interests in Worldwide and Limited;
12
13   (2)    QUINN, SMITH, WEINSTEN and the successor trustees and
14          beneficiaries of the purported TRUST, and each of them, as well as
15          anyone acting on their behalf or in concert with them (hereinafter,
16          "ENJOINED PARTIES"), are restrained and permanently enjoined
17          from claiming any right, title or interest in Windsor and/or any
18          Windsor asset, including but not limited to, Windsor's ownership
19          interests in Worldwide and Limited. The ENJOINED PARTIES are
20          specifically restrained and permanently enjoined from making any
21          representations that they have any ownership interest in or control
22
23   ////
24
25   ////
26
27
28

3

JUDGMENT IN FAVOR OF JAMES HARKESS

06

1    over Windsor and/or any Windsor asset, including but not limited to, Windsor's

2    ownership interests in Worldwide and Limited.

3

4    DATED: ___AUG 1 8 2005___

5                                    JAMES R. DUNN
6                                    JAMES R. DUNN
                                     Judge of the Superior Court
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JRD:cr    26
Harkess.jmt
8/18/05    27

28

                                    4
                    JUDGMENT IN FAVOR OF JAMES HARKESS

**EXHIBIT B**

1
2
3                                    **ORIGINAL FILED**
4                                       · AUG 1 8 2005
5                                    **LOS ANGELES**
6                                    **SUPERIOR COURT**
7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          FOR THE COUNTY OF LOS ANGELES

10

11   JAMES HARKESS,                    )          Case No.: BC 311681
                                       )
12          Plaintiff,                 )
                                       )
13          v.                         )
                                       )
14   TERRENCE QUINN aka TERRANCE LEE   )          **STATEMENT OF DECISION**
15   QUATKEMEYER, and DOES 1 through 10,)
     inclusive,                        )
16                                     )
            Defendants.                )
17                                     )
     _____)
18   AND RELATED CROSS-ACTION.         )
                                       )

19          The court finds FOR PLAINTIFF/CROSS-DEFENDANT AND AGAINST

20   DEFENDANTS/CROSS-COMPLAINANTS on Plaintiff's Complaint for Declaratory Relief and

21   on Defendants' Cross-Complaint for Declaratory Relief. The court declares that plaintiff James

22   Harkess ("Harkess" herein) is the rightful owner of Windsor Holdings, LLC, ("Windsor" herein)

23   and that defendants have no right, title or interest therein. Further, defendants, and each of them,

24   are permanently enjoined from claiming any right, title or interest in Windsor.

25

26          The court finds that the Windsor Trust ("Trust" herein) was not legally in existence and had

27   no assets at the time of the transfer of Windsor from David Kaye ("Kaye" herein) to Harkess.

28   Defendant Terrence Quinn aka Quatkemeyer ("Quinn" herein), in July 2001, through a series of

                                            1
                                 STATEMENT OF DECISION

1  companies and transactions, none of which bear his name or other indicia of his ownership,

2  transferred ownership and apparent authority to Kaye as managing member of Windsor. Thereafter,

3  back-dated documents were created virtually overnight, transferring ownership of Windsor from

4  Kaye to Harkess in July 2003. This transfer of ownership of Windsor was relied on not only by

5  Harkess, but by many other parties and attorneys, including a federal judge. The court finds that

6  the transfer from Kaye to Harkess was effective to transfer ownership of Windsor to Harkess in July

7  2003. The court further finds that, in any event, Quinn and those acting on his behalf are barred by

8  the equitable doctrines of unclean hands and equitable estoppel from asserting ownership in

9  Windsor. Any purported ownership claimed by James H. Smith ("Smith" herein) or Jeffrey

10  Weinstein ("Weinstein" herein) is purely derivative based on their status as trustees of Trust, and the

11  court has found that the Trust was not legally in existence during the time of the transfer from Kaye

12  to Harkess.

13

14  FACTUAL BACKGROUND

15       There are many different companies and individuals involved in the various lawsuits here,

16  in Ohio and elsewhere, but the essential entities for purposes of this lawsuit are Windsor, Sanitec

17  Worldwide ("Worldwide" herein) and Sanitec Limited ("Limited" herein). Windsor is a California

18  limited liability company formed on July 17, 2001. The undisputed evidence at trial was that,

19  through a series of transfers and a corporate re-organization by Quinn, in late July 2001, Windsor

20  became the sole owner of Worldwide. It was also undisputed at trial that Worldwide was the

21  majority owner of Limited and that Mr. Weinstein's company, Salem Associates, owned a minority

22  interest in Worldwide. (Ex. 189, 223) The basic premise argued by both parties at trial was that

23  whoever owns Windsor controls the other two by virtue of this ownership structure.

24

25       This court has been asked to make a ruling on a single, narrow question: who owns

26  Windsor? The court is mindful that there are other lawsuits in Ohio, and perhaps elsewhere, which

27  may be impacted by this decision, and that there may be issues between various parties impacted

28  by what the court decides here. Beyond the findings that support the Court's decision, however,

2
STATEMENT OF DECISION

1  this court makes no findings regarding the merits of any other lawsuits or any purported claims that

2  the parties may have against one another or others.

3

4     Plaintiff contends that he is the owner of Windsor by virtue of a transfer from Kaye, the

5  managing member of Windsor.  Defendants contend that the Trust is the owner of Windsor.

6  Defendants presented evidence that in June 2002, defendant/cross-complainant Quinn was suffering

7  from a terminal illness and was facing an impending prison term, and therefore set up the Trust with

8  cross-complainant Smith and Weinsten as the trustees, and concurrently therewith transferred all

9  the assets of Windsor to Trust.  Therefore, at the time of transfer of Windsor from Kaye to Harkess,

10.  defendants assert that Windsor had already been transferred to the Trust and there was nothing to

11  transfer.

12

13  THE TRUST

14     The circumstances in existence in or about June 2002, that is the illness and the impending

15  sentencing, are consistent with a desire by Mr. Quinn to form a trust to hold his property.  What is

16  missing, however, is a signed original trust document and any credible evidence that such a

17  document was ever signed by Quinn in June 2002, or at any time before he was released from prison

18  in late September 2003.  Also, like the ownership structure that Quinn set up for Windsor, the

19  structure he set up for his Trust was also incomplete.  The final, and necessary, steps were never

20  taken to consummate the Trust.

21

22     The court makes the following findings which support its conclusion that no Trust was

23  formed in June 2002 or at any time before the Kaye-Harkess transfer.

24

25  1.     The court found Smith to be a credible witness, but by his own testimony and that of others,

26        he was only a figurehead.  It was Weinsten that wrote all the letters for him to sign, and it

27        was Weinsten that monitored the litigation in Ohio.  Virtually everything that Smith knew,

28        he knew because Weinsten told him.  He had virtually no firsthand knowledge of facts.

3

STATEMENT OF DECISION

1

2    2.    There is no original Trust signed by Quinn which bears a date in June 2002. In fact, no

3         signed original at all was offered in evidence.

4

5    3.    While there is evidence that the Litwin law firm prepared drafts of a trust in June 2002, and

6         Smith signed some version of a trust, Smith testified that he does not know whether Quinn

7         signed it. (Ex. 265)

8

9    4.    Weinsten testified that he sent the Trust document which had been signed by others to

10        Quinn for him to sign. He did not see Quinn sign the Trust document. Weinsten claims that

11        he received a signature back from Mr. Quinn in June 2002, but the Court does not find this

12        claim credible in light of Mr. Weinsten's other testimony in depositions and pleadings

13        regarding ownership of Windsor (see below), and his prior conviction introduced for

14        purposes of impeachment.   No one had personal knowledge about whether Quinn ever

15        signed before he was released.

16

17   5.    Quinn testified that he did sign it in June 2002, but the court does not find his testimony to

18        be credible. On the stand Mr. Quinn repeatedly shifted responsibility for various actions

19        from himself to his attorneys, and said he would sign virtually anything his lawyers told him

20        to sign. This, along with his observed demeanor while testifying, and his two felony

21        convictions for fraud-related offenses, cause the court to disregard his testimony. Thus,

22        there is no independent, corroborating evidence that Quinn ever signed before he got out of

23        prison.

24

25   6.    There is no credible evidence that shares or other indicia of ownership of Windsor were ever

26        transferred to the Trust.

27

28   7.    Quinn testified that he fired Kaye as managing member of Windsor in June 2002 by letter,

4
<u>STATEMENT OF DECISION</u>

11

1    but there is no evidence other than the testimony of Quinn himself that the letter was ever

2    sent, and court does not find his testimony credible.  Kaye denies ever receiving it, and the

3    only copy introduced in evidence apparently came from Weinsten's file.

4

5        In addition to these points, Weinsten who along with Smith was a co-trustee, denied twice

6    in depositions in other cases that he knew who owned Windsor.  One can infer from this that he

7    either knew the trust had never been signed by Quinn, or that there was never any transfer of

8    Windsor assets to the Trust.  .It was Weinsten who was monitoring the Ohio litigation and

9    apparently was concerned enough about protecting his 48% interest in Worldwide that he attempted

10   to intervene in the Ohio litigation.  In several pleadings filed in connection therewith he never

11   mentioned the Trust.  (Ex. 118, 122)  Even when Smith sent the letter to John Climaco, Ohio

12   counsel for Limited, et al., he did not mention the Trust.  And finally, the two independent

13   witnesses who may have been able to corroborate the Trust, attorney Litwin who drafted it, and

14   attorney Mark Geragos (who was allegedly present when the Trust was signed in his office) were

15   not called by the defendants to testify.

16

17       The defendants have not met their burden of showing that the Trust was legally formed and

18   in existence at the time of the Kaye-Harkess transfer.

19

20   THE TRANSFER TO HARKESS

21       By virtue of the failure of the Trust to be formed in June 2002, the assets of Windsor were

22   still in Windsor at the time of the transfer from Kaye to Harkess.  In July 2003, never referencing

23   the Trust in his letter, Smith wrote to John Climaco, Esq., Ohio counsel for Limited and Windsor

24   ("Climaco" herein), claiming that Harkess had no authority to represent Limited in the Ohio

25   litigation and that he (Climaco) was discharged as counsel.  (Apparently this was one of the letters

26   written for him by Weinsten.) (Ex. 210)  In response to this letter Climaco sent an urgent message

27   to Babos demanding to know who had authority to speak for Limited and who he should listen to.

28   (Ex. 211.1, 212)  He was obviously very agitated and wanted answers immediately.  He was

5

STATEMENT OF DECISION

1   particularly upset over the fact that he was being put in a position to embarrass himself before a

2   federal judge. In response to that inquiry, within hours Babos, with the concurrence of Harkess and

3   Kaye, created back-dated documents that showed that Harkess was the owner of Limited. (Ex. 168)

4   Kaye (for Limited) and Harkess (for Sanitec West) had been managing the Ohio litigation and they

5   needed to show they had authority to do so. (It is not altogether clear which parties Babos was

6   actually representing as counsel in all these transactions; Climaco had repeatedly asserted that

7   Quinn needed separate counsel due to a perceived conflict of interest; Babos had served as corporate

8   counsel for some of the Sanitec companies and Quinn individually over the years.) (Ex. 212) These

9   hastily created documents showed that Kaye, acting as managing member and owner of Windsor,

10  transferred his member/owner status to Harkess. Babos continued to reaffirm that Harkess was the

11  owner of Windsor for weeks after Quinn was released from prison in September 2003. He testified

12  that it was only later he realized that he had made a mistake in having the documents prepared and

13  started making efforts to reverse position. By then, however, the representations to the Ohio federal

14  court and counsel had already been made and actions had been taken in reliance on Harkess'

15  apparent authority to represent Limited, (based on his ownership of Windsor) and commitments had

16  been made and documents signed.

17

18          Quinn is responsible for creating the environment and business structure that made this

19  possible. Windsor was formed on July 17, 2001, at Quinn's direction, with the filing of Windsor's

20  Articles of Organization with the Secretary of State, showing Kaye as the manager. This was the

21  only documentation for Windsor. Nowhere did Quinn's name appear. In late July 2001, he then

22  asked Kaye to front for him in an attempt to sell Limited and in fact Kaye acted as managing

23  member/owner in the Eden transaction and in dealing with Stericycle. He also was sent by Quinn

24  to Limited back East to monitor operations and represent himself as the managing member of

25  Windsor. Quinn claims that Kaye was only appointed to deal with specific sales or activities, but

26  Quinn is the one who put him in a position to represent himself as owner of Windsor. It was Quinn

27  who set up Windsor but never set up any formal ownership structure or had any documents prepared

28  which identified him as being involved in Windsor. All of the assets that went through the various

6
STATEMENT OF DECISION

1   re-organizations ended up in Windsor. Windsor became a holding company with no ownership
2   structure, and no connnection with Quinn. When it was to his advantage in having Kaye step
3   forward for specified transactions that benefitted Quinn, he validates his authority. The court does
4   not recognize, however, such selective delegations of authority, especially in a case where there is
5   no documentation showing an owner of Windsor at all. Mr. Babos and Mr. Mitchell R. Miller (a
6   corporation lawyer who drew up the Windsor documents for the Secretary of State) both testified
7   that Quinn never set up any ownership structure because he wasn't sure how he wanted to do it.
8   The only person placed in a position of apparent authority/ownership was Kaye. There is no
9   evidence that either Quinn, or Babos or Miller did anything at all to remedy this uncompleted
10  ownership structure after Quinn went to prison, thus enabling the later events to occur. The Court
11  finds that Mr. Kaye was the sole managing member, and therefore sole owner, of Windsor Holdings
12  from its inception in July 2001 through the transfer to Mr. Harkess in July 2003.

13

14      When the Climaco emergency came, Mr. Kaye did not step forward to act as owner/
15  manager, rather he wanted out, so it was agreed that he would transfer his member/owner status to
16  Harkess. Rather than explain the dilemma to Mr. Climaco and seek a resolution with the Ohio
17  court, counsel Babos, with the concurrence of Harkess and Kaye prepared the back-dated
18  documents within a matter of hours and sent them to Climaco. Those documents were sent to Ohio
19  with the knowledge that they were to be presented by Mr. Climaco, an officer of the court, to a
20  federal judge representing that Mr. Harkess was the owner of Windsor. And then everyone sat back
21  and allowed others to rely on that representation. This court finds that Mr. Harkess is the owner
22  of Windsor and became the owner with the transfer from Mr. Kaye in July 2003. That entire chain
23  of events was created by the anonymous and incomplete creation of Windsor by Quinn, and the
24  attempt to selectively assign ownership/authority to Kaye.

25

26      The court is mindful that defendant contends that there was an agreement that Harkess was
27  only taking the shares of Windsor temporarily and that he was to give them back after Quinn was
28  released. Mr. Babos supports this purported agreement, as does Quinn, but Harkess vehemently

7<br>STATEMENT OF DECISION

1   denies it. There is evidence that Harkess said "If I own Limited by virtue of my ownership of

2   Windsor, then I want the documents." This would suggest, however, that Harkess did indeed

3   believe he owned Windsor although had some question as to what impact it had on ownership of

4   Limited. Whether there was or was not such a private agreement between Quinn and Harkess is

5   between them. As far as the rest of the world is concerned, Mr. Kaye transferred ownership of

6   Windsor to Harkess and Harkess, Kaye and Babos represented to the federal court and the litigants

7   that Harkess was the owner of Windsor. The transfer to Harkess was effective.

8

9   UNCLEAN HANDS AND EQUITABLE ESTOPPEL

10      Further, in the exercise of its equitable powers, this court will not permit Quinn to now

11  assert an ownership interest in Windsor. Plaintiff spent a great deal of the trial laying out the series

12  of transactions involving the original purchase of Limited by Quinn with investor money and the

13  use of various corporations to do so. Plaintiff made the point that Mr. Quinn's name personally did

14  not appear on any of the documentation of these companies. For the most part the court found that

15  to be true, based on the limited evidence presented on those issues. This court is being asked to take

16  note of a pattern of ownership and apparent evasion of accountability to creditors and suppression

17  of identity in order to establish the defense of unclean hands. This court is not making any findings

18  as to whether Mr. Quinn defrauded the original investors in connection with his use of their funds

19  to purchase Limited. This court does take note, however, of this trail of companies, re-

20  organizations and the resultant anonymity of Quinn for purposes of whether Quinn was attempting

21  to hide his assets, (i.e., Windsor's controlling interest in Worldwide and through Worldwide,

22  ownership of Limited) in order to avoid any claims these investors might have, and comes before

23  this Court with unclean hands. The court also takes note of the fact that Quinn never used any of

24  his own money to purchase these companies. The court did not find credible his testimony that he

25  also put his own money into Limited from the sale of luxury cars. No documentary or other

26  evidence was presented to support that assertion.

27

28      All of this is corroboration for the testimony of Mr. Quinn himself. Quinn testified on the

8

STATEMENT OF DECISION

1   stand that he created Windsor to "keep the assets of Sanitec away from Barbara Sager, Steve Ventre,

2   Joe Delloiacovo and the investors in Ohio that were laying claim to those assets." He further

3   testified that he asked Mr. Kaye to be the managing member because he was "having difficulties"

4   and "troubles" at the time. It is clear that Quinn did not want his assets in his own name and in fact

5   his apparent 80% interest in Sanitec West was in the name of his friend Mary Reidiger rather than

6   himself. This is sufficient evidence for the court to conclude that Quinn was secreting his assets

7.  to defeat the claims of his creditors and that he comes to this court with unclean hands. (*See*

8   *Allstead vs. Laumeister* (1911) 16 Cal.App. 59 and *Belling vs. Croter* (1943) 57 Cal.App.2d 296.)

9

10      In addition, the court invokes the doctrine of equitable estoppel. While Mr. Quinn himself

11  did not make the representations to those who relied and acted on them (the Ohio federal court and

12  counsel and others related to that litigation), he is directly responsible for setting in motion the chain

13  of events that led to those representations. He put Kaye and Harkess in the position of having

14  apparent authority for and ownership of Windsor, from the point of view of the court and the parties

15  in the East, to accomplish his own ends of selling off Limited without having his name in any way

16  associated with the sale. Many have relied on the resulting representations about Harkess'

17  ownership of Windsor to their potential detriment in the event that transactions consummated in

18  reliance thereon were to be overturned. Quinn is estopped from now claiming that the

19  representations regarding ownership of Windsor are false, or that Kaye did not have authority to

20  transfer the company to Harkess.

21

22      Plaintiff/Cross-Defendant Harkess to prepare the judgment consistent with this Tentative

23  Ruling. This Tentative Ruling shall be the Statement of Decision unless within ten days either party

24  specifies controverted issues or makes proposals not covered in the Tentative Ruling.

JRD:cr
Harkess.sd
8/18/05

25

26  Dated:  __AUG 1 8 2005__

27

28

JAMES R. DUNN

JAMES R. DUNN
Judge of the Superior Court

9

STATEMENT OF DECISION

16

# PROOF OF SERVICE

1

2    I, Yolanda S. Ramos, declare:

3            I am employed in the County of Los Angeles, State of California. I am over
the age of 18 and not a party to the within action. My business address is c/o Weston
4    Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor,
Los Angeles, California, 90071. I am over the age of eighteen years and not a party to the
5    action in which this service is made.

6            On October 24, 2005, I served the document(s) described as NOTICE OF
ENTRY OF FINAL JUDGMENT IN FAVOR OF JAMES HARKESS on the interested
7    parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:

8                        SEE ATTACHED SERVICE LIST

9    ☒    BY MAIL: I am "readily familiar" with this firm's practice for the collection and the
processing of correspondence for mailing with the United States Postal Service. In the
10   ordinary course of business, the correspondence would be deposited with the United
States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with
11   postage thereon fully prepaid the same day on which the correspondence was placed
for collection and mailing at the firm. Following ordinary business practices, I placed
12   for collection and mailing with the United States Postal Service such envelope at
Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street,
13   Los Angeles, California 90071.

14   ☐    BY FEDERAL EXPRESS      ☐ UPS NEXT DAY AIR      ☐ OVERNIGHT
DELIVERY: I deposited such envelope in a facility regularly maintained by ☐
15   FEDERAL EXPRESS  ☐ UPS  ☐ Overnight Delivery [specify name of service: ]
with delivery fees fully provided for or delivered the envelope to a courier or driver of
16   ☐ FEDERAL EXPRESS  ☐ UPS  ☐ OVERNIGHT DELIVERY [specify name of
service:] authorized to receive documents at Weston Benshoof Rochefort Rubalcava &
17   MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery
fees fully provided for.

18   ☐    BY FACSIMILE:  I telecopied a copy of said document(s) to the following
addressee(s) at the following number(s) in accordance with the written confirmation of
19   counsel in this action.

20   ☒    [State]     I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.
21

22   ☐    [Federal]     I declare under penalty of perjury that the foregoing is true and correct.

23

24           Executed on October 24, 2005, at Los Angeles, California.

25

26                                                YOLANDA S. RAMOS

27

28

1

*Harkess v. Quinn, et al.*
Los Angeles Superior Court, Case No. BC 311681

2

3

**SERVICE LIST**

4

5
6
7
8
9

| | |
|---|---|
| Mark M. Hathaway, Esq.<br>Slater Hathaway LLP<br>200 South Los Robles Avenue<br>Suite 530<br>Pasadena, California 91101-2432 | Attorneys for TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER; JAMES H. SMITH, as Trustee of THE WINDSOR TRUST, u/d/t dated June 21, 2002; SANITEC WORLDWIDE<br>Telephone:  (626) 795-1600<br>Facsimile:  (626) 795-1616 |

10
11
12

**Courtesy Copy:**
Mark Hathaway, Esq.
801 South Figueroa Street, 11th Floor
Los Angeles, CA  90015

Telephone:  (213) 624-7200
Facsimile:  (213) 624-7220

13
14
15
16

Mark Overland, Esq.
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue
Suite 2750
Los Angeles, CA  90071-3144

Telephone:  (213) 613-4655
Facsimile:  (213) 613-4656

17
18
19
20

Mark Jay Richardson, Esq.
Laura Murtaugh, Esq.
Richardson & Associates
Attorneys at Law
233 Wilshire Boulevard, Suite 820
Santa Monica, CA  90401

Telephone:  (310) 393-9992
Facsimile:  (310) 393-2004

21
22
23
24

Joel Thvedt, Esq.
Knott & Glazier LLP
601 South Figueroa Street
Suite 1950
Los Angeles, CA  90017

Telephone:  (213) 312-9200
Facsimile:  (213) 312-9201

25
26
27

Joseph Delloiacovo
32 Dogwood Trail
Randolph, NJ  07869

Telephone:  (973) 989-2680
Facsimile:  (973) 989-2681

28