**AGREED AND ACCEPTED BY:**

By: _____          By: _____
         DR. MARY S. RIEDINGER                    TERRANCE QUATKEMEYER,
                                                   aka TERRY QUINN


By: _____          By: _____
         JEFFREY WEINSTEN*                         JAMES SMITH*
    *(As to Sections 1.1, 5.1.5, 8.12 & 8.13, and 9-22 Only)


By: _____          By: _____
         JAMES R. HARKESS                          NORD S. SORENSEN


By: _____          By: _____
         DAVID KAYE                                PETER BABOS


**THE WINDSOR TRUST**                    **THE WINDSOR TRUST**


By: _____          By: _____
         JEFFREY WEINSTEN*                         JAMES SMITH*
         Its: Trustee                              Its: Trustee
         *(As to Sections 1.1, 8-22 Only)


By: _____
         TERRANCE QUINN AKA TERRANCE
         QUATKEMEYER
         Its: Beneficiary


**A.B.B. SANITEC WEST, INC.**


By: _____
         JAMES R. HARKESS
         Its: Chief Executive Officer


18

703674.1

AGREED AND ACCEPTED BY:

By:_____
    DR. MARY S. RIEDINGER

By:_____
    TERRANCE QUATKEMEYER,
    aka TERRY QUINN

By:_____
    JEFFREY WEINSTEN*
  *(As to Sections 1.1, 5.1.5, 8.12 & 8.13, and 9-22 Only)

By:_____
    JAMES SMITH*

By:_____
    JAMES R. HARKESS

By:_____
    NORD S. SORENSEN

By:_____
    DAVID KAYE

By:_____ _Bob Babos 10-2-05_
    PETER BABOS

**THE WINDSOR TRUST**

**THE WINDSOR TRUST**

By:_____
    JEFFREY WEINSTEN*
    Its: Trustee
    *(As to Sections 1.1, 8-22 Only)

By:_____
    JAMES SMITH*
    Its: Trustee

By:_____
    TERRANCE QUINN AKA TERRANCE
    QUATKEMEYER
    Its: Beneficiary

**A.B.B. SANITEC WEST, INC.**

By:_____
    JAMES R. HARKESS
    Its: Chief Executive Officer

18

703674.1

SANITEC USA, INC.

By: _____
      JAMES R. HARKESS
      Its: Chief Executive Officer

SANITEC INDUSTRIES, INC.

By: _____
      JAMES R. HARKESS
      Its: Chief Executive Officer

**APPROVED AS TO FORM:**

LINER YANKELEVITZ SUNSHINE
   & REGENSTREIF LLP

By: _____
      Michael Weinsten
      Attorney for DR. MARY RIEDINGER

**LAW OFFICES OF PETER J. BABOS**

By: _____
      Peter J. Babos
      Attorney for TERRANCE QUATKEMEYER AKA
      TERRY QUINN, PETER BABOS and THE WINDSOR TRUST

**WESTON, BENSHOOF, ROCHEFORT,**
   **RUBALCAVA & MacCUISH LLP**

By: _____
      Michael J. Hartley
      Attorney for JAMES R. HARKESS and
      NORD S. SORENSEN

19

SANITEC USA, INC.

By: _____
          JAMES R. HARKESS
          Its: Chief Executive Officer


SANITEC INDUSTRIES, INC.


By: _____
          JAMES R. HARKESS
          Its: Chief Executive Officer



APPROVED AS TO FORM:

LINER YANKELEVITZ SUNSHINE
    & REGENSTREIF LLP


By: _____
          Michael Weinsten
          Attorney for DR. MARY RIEDINGER

LAW OFFICES OF PETER J. BABOS

By: _____ 10-70-05
          Peter J. Babos
          Attorney for TERRANCE QUATKEMEYER AKA
          TERRY QUINN, PETER BABOS and THE WINDSOR TRUST
WESTON, BENSHOOF, ROCHEFORT,
    RUBALCAVA & MacCUISH LLP


By: _____
          Michael J. Hartley
          Attorney for JAMES R. HARKESS and
          NORD S. SORENSEN

19

703874.1

SANITEC USA, INC.

By: _____
       JAMES R. HARKESS
       Its: Chief Executive Officer

SANITEC INDUSTRIES, INC.

By: _____
       JAMES R. HARKESS
       Its: Chief Executive Officer

**APPROVED AS TO FORM:**

**LINER YANKELEVITZ SUNSHINE**
**& REGENSTREIF LLP**

By: _____
       Michael Weinsten
       Attorney for DR. MARY RIEDINGER

**LAW OFFICES OF PETER J. BABOS**

By: _____
       Peter J. Babos
       Attorney for TERRANCE QUATKEMEYER AKA
       TERRY QUINN, PETER BABOS and THE WINDSOR TRUST

**WESTON, BENSHOOF, ROCHEFORT,**
**RUBALCAVA & MacCUISH LLP**

By: _____
       Michael J. Hartley
       Attorney for JAMES R. HARKESS and
       NORD S. SORENSEN

19

703674 1

OVERLAND BORENSTEIN SCHEPER
& KIM LLP

By: _____
    Mark E. Overland
    Attorney for DAVID KAYE

KNOTT & GLAZIER LLP

By: _____
    Joel A. Thvedt
    Attorney for A.B.B SANITEC WEST, INC.,
    SANITEC USA, INC. and SANITEC INDUSTRIES, INC.

703674.1

20

OVERLAND BORENSTEIN SCHEPER
   & KIM LLP

By: _____
         Mark E. Overland
         Attorney for DAVID KAYE

**KNOTT & GLAZIER LLP**

By: _____
         Joel A. Thvedt
         Attorney for A.B.B SANITEC WEST, INC.,
         SANITEC USA, INC. and SANITEC INDUSTRIES, INC.

20

# EXHIBIT A

1  MICHAEL J. HARTLEY (State Bar No. 189375)
   LISA GILFORD (State Bar No. 171641)
2  SCOTT J. LEIPZIG (State Bar No. 192005)
   **WESTON BENSHOOF ROCHEFORT**
3    **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
6
   Attorneys for Plaintiff and Cross-Defendant
7  JAMES HARKESS

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11 JAMES HARKESS,                          Case No.: BC 311681
                                           (Assigned for All Purposes to the
12          Plaintiff,                     Honorable James R. Dunn – Dept. 26)
        v.
13                                         **STIPULATION AND [PROPOSED]**
   TERRENCE QUINN aka TERRANCE LEE         **ORDER RE: ENTRY OF FINAL**
14 QUATKEMEYER, and DOES 1 through 10,     **JUDGMENT**
   inclusive,
15
            Defendants.
16

17 AND RELATED CROSS-ACTION.

18

19 TO:  THE HONORABLE JAMES R. DUNN, ALL PARTIES IN INTEREST, AND THEIR

20 RESPECTIVE ATTORNEYS OF RECORD:

21          Plaintiff and Cross-Defendant James Harkess ("Harkess"), Defendant and

22 Cross-Complainant Terrence Quinn aka Terrance Lee Quatkemeyer ("Quinn"), and

23 Defendants and Cross-Complainants James H. Smith ("Smith") and Jeffrey Weinsten

24 ("Weinsten"), as Trustees of the purported Windsor Trust, u/d/t dated June 21, 2002

25 ("Windsor Trust") (collectively the "Parties"), by and through their counsel of record, hereby

26 stipulate as follows:

27          1.    Quinn, on behalf of himself, and Smith and Weinsten on behalf of

28 themselves and the Windsor Trust, hereby waive all rights to appeal or otherwise challenge

                                          1
                   STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
694191.1

the Court's Statement of Decision and Final Judgment (copies of which are attached as Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and Final Judgment as the final judgment of the Court.

        2.     Harkess hereby withdraws his memorandum for costs and waives his right to those costs as the prevailing party, so that all parties shall bear their own costs and attorneys' fees in this case.

**IT IS SO STIPULATED.**

DATED: ~~September~~ oct 10, 2005

_____
JAMES R. HARKESS, individually

DATED: September ___, 2005

_____
TERRANCE QUATKEMEYER,
aka TERRY QUINN, individually

DATED: September ___, 2005

_____
JAMES H. SMITH, individually

DATED: September ___, 2005

_____
JEFFREY WEINSTEN, individually

DATED: September ___, 2005    **THE WINDSOR TRUST**

By:_____
TERRANCE QUATKEMEYER,
aka TERRY QUINN
Its: Beneficiary

DATED: September ___, 2005    **THE WINDSOR TRUST**

By:_____
JAMES H. SMITH
Its: Trustee

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

1   the Court's Statement of Decision and Final Judgment (copies of which are attached as

2   Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3   Final Judgment as the final judgment of the Court.

4          2.    Harkess hereby withdraws his memorandum for costs and waives his

5   right to those costs as the prevailing party, so that all parties shall bear their own costs and

6   attorneys' fees in this case.

7          **IT IS SO STIPULATED.**

8

9   DATED: October __, 2005

10  _____
                JAMES R. HARKESS, individually

11

12  DATED: October __, 2005

13  _____
                TERRANCE QUATKEMEYER,
14                 aka TERRY QUINN, individually

15  DATED: October 7, 2005

16  _____
                JAMES H. SMITH, individually

17

18  DATED: October __, 2005

19

20  _____
                JEFFREY WEINSTEN, individually

21  DATED: October __, 2005    **THE WINDSOR TRUST**

22

23  By:_____
                TERRANCE QUATKEMEYER,
                   aka TERRY QUINN
24  Its: Beneficiary

25

26  DATED: October 7, 2005    **THE WINDSOR TRUST**

27  By:_____
                JAMES H. SMITH
28  Its: Trustee

                        2
        STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT

694191.1

1  the Court's Statement of Decision and Final Judgment (copies of which are attached as

2  Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and

3  Final Judgment as the final judgment of the Court.

4        2.    Harkess hereby withdraws his memorandum for costs and waives his

5  right to those costs as the prevailing party, so that all parties shall bear their own costs and

6  attorneys' fees in this case.

7              IT IS SO STIPULATED.

8  DATED: October ___, 2005

9

10  _____
    JAMES R. HARKESS, individually

11

12  DATED: October ___, 2005

13  _____
    TERRANCE QUATKEMEYER,

14     aka TERRY QUINN, individually

15  DATED: October ___, 2005

16  _____
    JAMES H. SMITH, individually

17

18  DATED: October 7, 2005

19

20  _____
    JEFFREY WEINSTEN, individually

21  DATED: October ___, 2005    THE WINDSOR TRUST

22

23  By:_____
    TERRANCE QUATKEMEYER,

24     aka TERRY QUINN
    Its:  Beneficiary

25

26  DATED: October ___, 2005    THE WINDSOR TRUST

27

    By:_____
    JAMES H. SMITH

28     Its:  Trustee

                        2
   STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT

693191 1

1   the Court's Statement of Decision and Final Judgment (copies of which are attached as
2   Exhibits A and B hereto) and stipulate to immediate entry of the Statement of Decision and
3   Final Judgment as the final judgment of the Court.

4          2.      Harkess hereby withdraws his memorandum for costs and waives his
5   right to those costs as the prevailing party, so that all parties shall bear their own costs and
6   attorneys' fees in this case.

7          IT IS SO STIPULATED.

8
9   DATED: October ___, 2005

10                                          _____
                                            JAMES R. HARKESS, individually
11
12  DATED: October 7th, 2005

13                                          _____
                                            TERRANCE QUATKEMEYER,
14                                          aka TERRY QUINN, individually

15  DATED: October ___, 2005

16                                          _____
                                            JAMES H. SMITH, individually
17

18  DATED: October ___, 2005

19                                          _____
                                            JEFFREY WEINSTEN, individually
20

21  DATED: October 1st, 2005              THE WINDSOR TRUST

22                                          By _____
23                                            TERRANCE QUATKEMEYER,
                                              aka TERRY QUINN
24                                          Its: Beneficiary

25
26  DATED: October ___, 2005              THE WINDSOR TRUST

27                                          By: _____
                                              JAMES H. SMITH
28                                          Its: Trustee

                                    2
694191 1

DATED: October ___, 2005       THE WINDSOR TRUST

By: _____
                JEFFREY WEINSTEN
        Its:  Trustee

<u>ORDER</u>

         IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of
Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own
costs and attorneys' fees.

DATED: _____       _____
                                      HONORABLE JAMES R. DUNN
                                      Judge of the Superior Court

APPROVED AS TO FORM:

DATED: October ___, 2005       MICHAEL J. HARTLEY
                               LISA GILFORD
                               SCOTT J. LEIPZIG
                               WESTON BENSHOOF ROCHEFORT
                                   RUBALCAVA & MacCUISH LLP

                               _____
                                       Michael J. Hartley
                               Attorneys for Plaintiff and Cross-Defendant
                               JAMES HARKESS

DATED: October 7, 2005         THE LAW OFFICES OF PETER J. BABOS

                               _____
                                       Peter J. Babos
                               Attorney for Defendant and Cross-Complainant
                               TERRENCE QUINN aka TERRANCE LEE
                               QUATKEMEYER and Cross-Complainants JAMES H.
                               SMITH and JEFFREY WEINSTEIN, as Trustees of THE
                               WINDSOR TRUST

3

694191.1

1

2   DATED: October ___, 2005          THE WINDSOR TRUST

3                                     By: _____
                                              JEFFREY WEINSTEN
4                                         Is/ Trustee

5

6                                          ORDER

7           IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8    Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9    costs and attorneys' fees.

10

11

12   DATED: _____           _____
                                      HONORABLE JAMES R. DUNN
13                                    Judge of the Superior Court

14   APPROVED AS TO FORM:

15
     DATED:  October ___, 2005        MICHAEL J. HARTLEY
16                                    LISA GILFORD
                                      SCOTT J. LEIPZIG
17                                    WESTON BENSHOOF ROCHEFORT
                                         RUBALCAVA & MacCUISH LLP
18

19
                                      _____
20                                        Michael J. Hartley
                                      Attorneys for Plaintiff and Cross-Defendant
21                                    JAMES HARKESS

22
     DATED:  October ___, 2005        THE LAW OFFICES OF PETER J. BABOS
23

24

25                                    _____
                                          Peter J. Babos
26                                    Attorney for Defendant and Cross-Complainant
                                      TERRENCE QUINN aka TERRANCE LEE
27                                    QUATKEMEYER and Cross-Complainants JAMES H.
                                      SMITH and JEFFREY WEINSTEN, as Trustees of THE
28                                    WINDSOR TRUST

                                            3
     _____
     STIPULATION AND [PROPOSED] ORDER RE: ENTRY OF FINAL JUDGMENT
     694191.1

1

2   DATED: October __, 2005     **THE WINDSOR TRUST**

3                        By:_____

4                               JEFFREY WEINSTEN
                         Its:  Trustee

5

6                            <u>**ORDER**</u>

7        IT IS SO ORDERED.  The clerk is directed to enter the Court's Statement of

8   Decision and Final Judgment as the final judgment in this case.  Each party shall bear its own

9   costs and attorneys' fees.

10

11

12   DATED: _____

13                        HONORABLE JAMES R. DUNN
                        Judge of the Superior Court

14   **APPROVED AS TO FORM:**

15

16   DATED: October __, 2005     MICHAEL J. HARTLEY
                            LISA GILFORD

17                       SCOTT J. LEIPZIG
                       **WESTON BENSHOOF ROCHEFORT**

18                         **RUBALCAVA & MacCUISH LLP**

19

20                        _____

21                            Michael J. Hartley
                       Attorneys for Plaintiff and Cross-Defendant
                       JAMES HARKESS

22

23   DATED: October ___, 2005    **THE LAW OFFICES OF PETER J. BABOS**

24

25

26                        _____
                            Peter J. Babos
                       Attorney for Defendant and Cross-Complainant

27                       TERRENCE QUINN aka TERRANCE LEE
                       QUATKEMEYER and Cross-Complainants JAMES H.
                       SMITH and JEFFREY WEINSTEN, as Trustees of THE

28                       WINDSOR TRUST

3

694191.1

**ORIGINAL FILED**

AUG 1 8 2005

**LOS ANGELES SUPERIOR COURT**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| JAMES HARKESS, | ) | Case No.: BC 311681 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TERRENCE QUINN aka TERRANCE LEE | ) | **JUDGMENT IN FAVOR** |
| QUATKEMEYER, and DOES 1 through 10, | ) | **OF JAMES HARKESS** |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| AND RELATED CROSS-ACTION. | ) | |
| ———————————————— | ) | |

This action came on regularly for trial before the Court on March 28, 2005, at 8:30 a.m. in Department 26 of the above court. Michael Harley and Scott Leipzig of Weston Benshoof Rochefort Rubalcava & MacCuish LLP appeared on behalf of Plaintiff and Cross-Defendant James Harkess ("HARKESS"). Mark Hathaway of Slater Hathaway LLP and Peter Babos of the Law Offices of Peter Babos appeared on behalf of Defendants and Cross-Complainants Terrance Lee Quatkemeyer aka Terrence Quinn ("QUINN") and James H. Smith, as Trustee of The Windsor Trust, dated June 21, 2002 ("SMITH" and "TRUST") and Jeffrey Weinsten ("WEINSTEN"), as Co-Trustee of the TRUST.

The Court having heard and considered testimony, documentary evidence, and arguments

1

1  presented by or on behalf of the parties, and having issued a Statement of Decision (hereinafter,
2  "Decision"), hereby orders the following Judgment to be entered in favor of HARKESS consistent
3  with the Statement of Decision, with specific reference to the following findings of the Court:
4
5      (1)    The purported TRUST "was not legally in existence and had no assets at the time
6  of the transfer" of Windsor Holdings, LLC ("Windsor") from David Kaye ("Kaye") to HARKESS.
7  (Decision, p. 1.)  Any purported ownership of Windsor claimed by SMITH and WEINSTEN "is
8  purely derivative based on their status as trustees of the Trust, and the court has found that the Trust
9  was not legally in existence during the time of the transfer from Kaye to Harkess." (Decision, p.
10  2.)
11
12     (2)    The transfer of Windsor from "Kaye to Harkess was effective to transfer ownership
13  of Windsor to Harkess." (Decision, p. 1.)  Windsor was formed in July 2001 and David Kaye
14  became the managing member, and sole owner, of Windsor; Quinn set up the Windsor structure in
15  such a way as to create apparent authority/ownership in Kaye; Harkess became the managing
16  member, and sole owner, of Windsor upon transfer from Kaye in July 2003.   The undisputed
17  evidence presented by both sides, which constituted the underlying premise for the need for this
18  Court to determine ownership of Windsor, was that since July 2001, Windsor owned Sanitec
19  Worldwide, Ltd.  ("Worldwide"), and Worldwide was the majority shareholder of Sanitec, Ltd.
20  ("Limited").
21
22     (3)    QUINN and those acting on his behalf, including SMITH and WEINSTEN, "are
23  barred by the equitable doctrines of unclean hands and equitable estoppel from asserting ownership
24  in Windsor." (Decision, p. 2.) "In the exercise of its equitable powers, this court will not permit
25  Quinn to now assert an ownership interest in Windsor." (Decision, p. 7.)
26
27      NOW THEREFORE, IT IS HEREBY ADJUDGED AND DECREED THAT:
28

2

JUDGMENT IN FAVOR OF JAMES HARKESS

1     (1)    Judgment is entered FOR Plaintiff and Cross-Defendant HARKESS

2         and AGAINST Defendants and Cross-Complainants QUINN,

3         SMITH and WEINSTEN on Plaintiff's Complaint for Declaratory

4         Relief and on Defendants' Cross-Complaint for Declaratory Relief.

5         The Court declares that HARKESS is the sole owner of Windsor and

6         Windsor's assets, including but not limited to, Windsor's ownership

7         interests in Worldwide and Limited.  Neither QUINN, SMITH,

8         WEINSTEN, nor any successor trustees or beneficiaries of the

9         purported TRUST have any right, title or interest in Windsor and/or

10        any Windsor asset, including but not limited to, Windsor's

11        ownership interests in Worldwide and Limited;

12

13    (2)    QUINN, SMITH, WEINSTEN and the successor trustees and

14         beneficiaries of the purported TRUST, and each of them, as well as

15         anyone acting on their behalf or in concert with them (hereinafter,

16         "ENJOINED PARTIES"), are restrained and permanently enjoined

17         from claiming any right, title or interest in Windsor and/or any

18         Windsor asset, including but not limited to, Windsor's ownership

19         interests in Worldwide and Limited.  The ENJOINED PARTIES are

20         specifically restrained and permanently enjoined from making any

21         representations that they have any ownership interest in or control

22

23   ////

24

25   ////

26

27

28

3

JUDGMENT IN FAVOR OF JAMES HARKESS

1    over Windsor and/or any Windsor asset, including but not limited to, Windsor's

2    ownership interests in Worldwide and Limited.

3

4    DATED: ___AUG 18 2005___

5                                              **JAMES R. DUNN**

6                                              JAMES R. DUNN
                                               Judge of the Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JRD:cr        26
Harkess.jmt
8/18/05       27

              28

                              4
              JUDGMENT IN FAVOR OF JAMES HARKESS

**ORIGINAL FILED**

· AUG 1 8 2005

**LOS ANGELES
SUPERIOR COURT**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES HARKESS, | Case No.: BC 311681 |
| Plaintiff, | |
| v. | |
| TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER, and DOES 1 through 10, inclusive, | **STATEMENT OF DECISION** |
| Defendants. | |
| AND RELATED CROSS-ACTION. | |

The court finds FOR PLAINTIFF/CROSS-DEFENDANT AND AGAINST DEFENDANTS/CROSS-COMPLAINANTS on Plaintiff's Complaint for Declaratory Relief and on Defendants' Cross-Complaint for Declaratory Relief. The court declares that plaintiff James Harkess ("Harkess" herein) is the rightful owner of Windsor Holdings, LLC, ("Windsor" herein) and that defendants have no right, title or interest therein. Further, defendants, and each of them, are permanently enjoined from claiming any right, title or interest in Windsor.

The court finds that the Windsor Trust ("Trust" herein) was not legally in existence and had no assets at the time of the transfer of Windsor from David Kaye ("Kaye" herein) to Harkess. Defendant Terrence Quinn aka Quatkemeyer ("Quinn" herein), in July 2001, through a series of

1

STATEMENT OF DECISION

1   companies and transactions, none of which bear his name or other indicia of his ownership,

2   transferred ownership and apparent authority to Kaye as managing member of Windsor. Thereafter,

3   back-dated documents were created virtually overnight, transferring ownership of Windsor from

4   Kaye to Harkess in July 2003. This transfer of ownership of Windsor was relied on not only by

5   Harkess, but by many other parties and attorneys, including a federal judge. The court finds that

6   the transfer from Kaye to Harkess was effective to transfer ownership of Windsor to Harkess in July

7   2003. The court further finds that, in any event, Quinn and those acting on his behalf are barred by

8   the equitable doctrines of unclean hands and equitable estoppel from asserting ownership in

9   Windsor. Any purported ownership claimed by James H. Smith ("Smith" herein) or Jeffrey

10  Weinsten ("Weinsten" herein) is purely derivative based on their status as trustees of Trust, and the

11  court has found that the Trust was not legally in existence during the time of the transfer from Kaye

12  to Harkess.

13

14  FACTUAL BACKGROUND

15       There are many different companies and individuals involved in the various lawsuits here,

16  in Ohio and elsewhere, but the essential entities for purposes of this lawsuit are Windsor, Sanitec

17  Worldwide ("Worldwide" herein) and Sanitec Limited ("Limited" herein). Windsor is a California

18  limited liability company formed on July 17, 2001. The undisputed evidence at trial was that,

19  through a series of transfers and a corporate re-organization by Quinn, in late July 2001, Windsor

20  became the sole owner of Worldwide. It was also undisputed at trial that Worldwide was the

21  majority owner of Limited and that Mr. Weinsten's company, Salem Associates, owned a minority

22  interest in Worldwide. (Ex. 189, 223) The basic premise argued by both parties at trial was that

23  whoever owns Windsor controls the other two by virtue of this ownership structure.

24

25       This court has been asked to make a ruling on a single, narrow question: who owns

26  Windsor? The court is mindful that there are other lawsuits in Ohio, and perhaps elsewhere, which

27  may be impacted by this decision, and that there may be issues between various parties impacted

28  by what the court decides here. Beyond the findings that support the Court's decision, however,

1  this court makes no findings regarding the merits of any other lawsuits or any purported claims that
2  the parties may have against one another or others.
3
4       Plaintiff contends that he is the owner of Windsor by virtue of a transfer from Kaye, the
5  managing member of Windsor. Defendants contend that the Trust is the owner of Windsor.
6  Defendants presented evidence that in June 2002, defendant/cross-complainant Quinn was suffering
7  from a terminal illness and was facing an impending prison term, and therefore set up the Trust with
8  cross-complainant Smith and Weinsten as the trustees, and concurrently therewith transferred all
9  the assets of Windsor to Trust. Therefore, at the time of transfer of Windsor from Kaye to Harkess,
10  defendants assert that Windsor had already been transferred to the Trust and there was nothing to
11  transfer.
12
13  THE TRUST
14       The circumstances in existence in or about June 2002, that is the illness and the impending
15  sentencing, are consistent with a desire by Mr. Quinn to form a trust to hold his property. What is
16  missing, however, is a signed original trust document and any credible evidence that such a
17  document was ever signed by Quinn in June 2002, or at any time before he was released from prison
18  in late September 2003. Also, like the ownership structure that Quinn set up for Windsor, the
19  structure he set up for his Trust was also incomplete. The final, and necessary, steps were never
20  taken to consummate the Trust.
21
22       The court makes the following findings which support its conclusion that no Trust was
23  formed in June 2002 or at any time before the Kaye-Harkess transfer.
24
25  1.    The court found Smith to be a credible witness, but by his own testimony and that of others,
26       he was only a figurehead. It was Weinsten that wrote all the letters for him to sign, and it
27       was Weinsten that monitored the litigation in Ohio. Virtually everything that Smith knew,
28       he knew because Weinsten told him. He had virtually no firsthand knowledge of facts.

3
STATEMENT OF DECISION

2. There is no original Trust signed by Quinn which bears a date in June 2002. In fact, no signed original at all was offered in evidence.

3. While there is evidence that the Litwin law firm prepared drafts of a trust in June 2002, and Smith signed some version of a trust, Smith testified that he does not know whether Quinn signed it. (Ex. 265)

4. Weinsten testified that he sent the Trust document which had been signed by others to Quinn for him to sign. He did not see Quinn sign the Trust document. Weinsten claims that he received a signature back from Mr. Quinn in June 2002, but the Court does not find this claim credible in light of Mr. Weinsten's other testimony in depositions and pleadings regarding ownership of Windsor (see below), and his prior conviction introduced for purposes of impeachment. No one had personal knowledge about whether Quinn ever signed before he was released.

5. Quinn testified that he did sign it in June 2002, but the court does not find his testimony to be credible. On the stand Mr. Quinn repeatedly shifted responsibility for various actions from himself to his attorneys, and said he would sign virtually anything his lawyers told him to sign. This, along with his observed demeanor while testifying, and his two felony convictions for fraud-related offenses, cause the court to disregard his testimony. Thus, there is no independent, corroborating evidence that Quinn ever signed before he got out of prison.

6. There is no credible evidence that shares or other indicia of ownership of Windsor were ever transferred to the Trust.

7. Quinn testified that he fired Kaye as managing member of Windsor in June 2002 by letter,

4

STATEMENT OF DECISION

1   but there is no evidence other than the testimony of Quinn himself that the letter was ever

2   sent, and court does not find his testimony credible. Kaye denies ever receiving it, and the

3   only copy introduced in evidence apparently came from Weinsten's file.

4

5       In addition to these points, Weinsten who along with Smith was a co-trustee, denied twice

6   in depositions in other cases that he knew who owned Windsor. One can infer from this that he

7   either knew the trust had never been signed by Quinn, or that there was never any transfer of

8   Windsor assets to the Trust. It was Weinsten who was monitoring the Ohio litigation and

9   apparently was concerned enough about protecting his 48% interest in Worldwide that he attempted

10  to intervene in the Ohio litigation. In several pleadings filed in connection therewith he never

11  mentioned the Trust. (Ex. 118, 122) Even when Smith sent the letter to John Climaco, Ohio

12  counsel for Limited, et al., he did not mention the Trust. And finally, the two independent

13  witnesses who may have been able to corroborate the Trust, attorney Litwin who drafted it, and

14  attorney Mark Geragos (who was allegedly present when the Trust was signed in his office) were

15  not called by the defendants to testify.

16

17      The defendants have not met their burden of showing that the Trust was legally formed and

18  in existence at the time of the Kaye-Harkess transfer.

19

20  THE TRANSFER TO HARKESS

21      By virtue of the failure of the Trust to be formed in June 2002, the assets of Windsor were

22  still in Windsor at the time of the transfer from Kaye to Harkess. In July 2003, never referencing

23  the Trust in his letter, Smith wrote to John Climaco, Esq., Ohio counsel for Limited and Windsor

24  ("Climaco" herein), claiming that Harkess had no authority to represent Limited in the Ohio

25  litigation and that he (Climaco) was discharged as counsel. (Apparently this was one of the letters

26  written for him by Weinsten.) (Ex. 210) In response to this letter Climaco sent an urgent message

27  to Babos demanding to know who had authority to speak for Limited and who he should listen to.

28  (Ex. 211.1, 212) He was obviously very agitated and wanted answers immediately. He was

1  particularly upset over the fact that he was being put in a position to embarrass himself before a
2  federal judge. In response to that inquiry, within hours Babos, with the concurrence of Harkess and
3  Kaye, created back-dated documents that showed that Harkess was the owner of Limited. (Ex. 168)
4  Kaye (for Limited) and Harkess (for Sanitec West) had been managing the Ohio litigation and they
5  needed to show they had authority to do so. (It is not altogether clear which parties Babos was
6  actually representing as counsel in all these transactions; Climaco had repeatedly asserted that
7  Quinn needed separate counsel due to a perceived conflict of interest; Babos had served as corporate
8  counsel for some of the Sanitec companies and Quinn individually over the years.) (Ex. 212) These
9  hastily created documents showed that Kaye, acting as managing member and owner of Windsor,
10  transferred his member/owner status to Harkess. Babos continued to reaffirm that Harkess was the
11  owner of Windsor for weeks after Quinn was released from prison in September 2003. He testified
12  that it was only later he realized that he had made a mistake in having the documents prepared and
13  started making efforts to reverse position. By then, however, the representations to the Ohio federal
14  court and counsel had already been made and actions had been taken in reliance on Harkess'
15  apparent authority to represent Limited, (based on his ownership of Windsor) and commitments had
16  been made and documents signed.
17
18      Quinn is responsible for creating the environment and business structure that made this
19  possible. Windsor was formed on July 17, 2001, at Quinn's direction, with the filing of Windsor's
20  Articles of Organization with the Secretary of State, showing Kaye as the manager. This was the
21  only documentation for Windsor. Nowhere did Quinn's name appear. In late July 2001, he then
22  asked Kaye to front for him in an attempt to sell Limited and in fact Kaye acted as managing
23  member/owner in the Eden transaction and in dealing with Stericycle. He also was sent by Quinn
24  to Limited back East to monitor operations and represent himself as the managing member of
25  Windsor. Quinn claims that Kaye was only appointed to deal with specific sales or activities, but
26  Quinn is the one who put him in a position to represent himself as owner of Windsor. It was Quinn
27  who set up Windsor but never set up any formal ownership structure or had any documents prepared
28  which identified him as being involved in Windsor. All of the assets that went through the various

1   re-organizations ended up in Windsor. Windsor became a holding company with no ownership
2   structure, and no connnection with Quinn. When it was to his advantage in having Kaye step
3   forward for specified transactions that benefitted Quinn, he validates his authority. The court does
4   not recognize, however, such selective delegations of authority, especially in a case where there is
5   no documentation showing an owner of Windsor at all. Mr. Babos and Mr. Mitchell R. Miller (a
6   corporation lawyer who drew up the Windsor documents for the Secretary of State) both testified
7   that Quinn never set up any ownership structure because he wasn't sure how he wanted to do it.
8   The only person placed in a position of apparent authority/ownership was Kaye. There is no
9   evidence that either Quinn, or Babos or Miller did anything at all to remedy this uncompleted
10  ownership structure after Quinn went to prison, thus enabling the later events to occur. The Court
11  finds that Mr. Kaye was the sole managing member, and therefore sole owner, of Windsor Holdings
12  from its inception in July 2001 through the transfer to Mr. Harkess in July 2003.
13
14      When the Climaco emergency came, Mr. Kaye did not step forward to act as owner/
15  manager, rather he wanted out, so it was agreed that he would transfer his member/owner status to
16  Harkess. Rather than explain the dilemma to Mr. Climaco and seek a resolution with the Ohio
17  court, counsel Babos, with the concurrence of Harkess and Kaye prepared the back-dated
18  documents within a matter of hours and sent them to Climaco. Those documents were sent to Ohio
19  with the knowledge that they were to be presented by Mr. Climaco, an officer of the court, to a
20  federal judge representing that Mr. Harkess was the owner of Windsor. And then everyone sat back
21  and allowed others to rely on that representation. This court finds that Mr. Harkess is the owner
22  of Windsor and became the owner with the transfer from Mr. Kaye in July 2003. That entire chain
23  of events was created by the anonymous and incomplete creation of Windsor by Quinn, and the
24  attempt to selectively assign ownership/authority to Kaye.
25
26      The court is mindful that defendant contends that there was an agreement that Harkess was
27  only taking the shares of Windsor temporarily and that he was to give them back after Quinn was
28  released. Mr. Babos supports this purported agreement, as does Quinn, but Harkess vehemently

7

1  denies it.  There is evidence that Harkess said "If I own Limited by virtue of my ownership of

2  Windsor, then I want the documents."  This would suggest, however, that Harkess did indeed

3  believe he owned Windsor although had some question as to what impact it had on ownership of

4  Limited.  Whether there was or was not such a private agreement between Quinn and Harkess is

5  between them.  As far as the rest of the world is concerned, Mr. Kaye transferred ownership of

6  Windsor to Harkess and Harkess, Kaye and Babos represented to the federal court and the litigants

7  that Harkess was the owner of Windsor.  The transfer to Harkess was effective.

8

9  UNCLEAN HANDS AND EQUITABLE ESTOPPEL

10        Further, in the exercise of its equitable powers, this court will not permit Quinn to now

11  assert an ownership interest in Windsor.  Plaintiff spent a great deal of the trial laying out the series

12  of transactions involving the original purchase of Limited by Quinn with investor money and the

13  use of various corporations to do so.  Plaintiff made the point that Mr. Quinn's name personally did

14  not appear on any of the documentation of these companies.  For the most part the court found that

15  to be true, based on the limited evidence presented on those issues.  This court is being asked to take

16  note of a pattern of ownership and apparent evasion of accountability to creditors and suppression

17  of identity in order to establish the defense of unclean hands.   This court is not making any findings

18  as to whether Mr. Quinn defrauded the original investors in connection with his use of their funds

19  to purchase Limited.   This court does take note, however, of this trail of companies, re-

20  organizations and the resultant anonymity of Quinn for purposes of whether Quinn was attempting

21  to hide his assets, (i.e., Windsor's controlling interest in Worldwide and through Worldwide,

22  ownership of Limited) in order to avoid any claims these investors might have, and comes before

23  this Court with unclean hands.  The court also takes note of the fact that Quinn never used any of

24  his own money to purchase these companies.  The court did not find credible his testimony that he

25  also put his own money into Limited from the sale of luxury cars.  No documentary or other

26  evidence was presented to support that assertion.

27

28        All of this is corroboration for the testimony of Mr. Quinn himself.  Quinn testified on the

8

STATEMENT OF DECISION

1  stand that he created Windsor to "keep the assets of Sanitec away from Barbara Sager, Steve Ventre,

2  Joe Delloiacovo and the investors in Ohio that were laying claim to those assets." He further

3  testified that he asked Mr. Kaye to be the managing member because he was "having difficulties"

4  and "troubles" at the time. It is clear that Quinn did not want his assets in his own name and in fact

5  his apparent 80% interest in Sanitec West was in the name of his friend Mary Reidiger rather than

6  himself. This is sufficient evidence for the court to conclude that Quinn was secreting his assets

7  to defeat the claims of his creditors and that he comes to this court with unclean hands. (*See*

8  *Allstead vs. Laumeister* (1911) 16 Cal.App. 59 and *Belling vs. Croter* (1943) 57 Cal.App.2d 296.)

9

10      In addition, the court invokes the doctrine of equitable estoppel. While Mr. Quinn himself

11  did not make the representations to those who relied and acted on them (the Ohio federal court and

12  counsel and others related to that litigation), he is directly responsible for setting in motion the chain

13  of events that led to those representations. He put Kaye and Harkess in the position of having

14  apparent authority for and ownership of Windsor, from the point of view of the court and the parties

15  in the East, to accomplish his own ends of selling off Limited without having his name in any way

16  associated with the sale. Many have relied on the resulting representations about Harkess'

17  ownership of Windsor to their potential detriment in the event that transactions consummated in

18  reliance thereon were to be overturned. Quinn is estopped from now claiming that the

19  representations regarding ownership of Windsor are false, or that Kaye did not have authority to

20  transfer the company to Harkess.

21

22      Plaintiff/Cross-Defendant Harkess to prepare the judgment consistent with this Tentative

23  Ruling. This Tentative Ruling shall be the Statement of Decision unless within ten days either party

24  specifies controverted issues or makes proposals not covered in the Tentative Ruling.

JRD:cr
Harkess.sd
8/18/05

25

26  Dated: __AUG 1 8 2005__

27

28

**JAMES R. DUNN**

JAMES R. DUNN
Judge of the Superior Court

9

STATEMENT OF DECISION

# EXHIBIT B

624854.1



1   Guy P. Glazier, SBN 162628
    Joel A. Thvedt, SBN 130577
2   Deborah M. Parker, SBN 228203
    KNOTT & GLAZIER LLP
3   601 South Figueroa Street
    Suite 1950
4   Los Angeles, California 90017
    Telephone:    (213) 312-9200
5   Facsimile:    (213) 312-9201
6   Attorneys for Plaintiff,
    Sanitec Industries, Inc.
7

                    ORIGINAL FILED

                    Civil Appeals
                    Room 111

                    OCT 1 3 2005

                    LOS ANGELES
                    SUPERIOR COURT

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES

10

11  SANITEC INDUSTRIES, INC.,              Case No. BS 095182

12          Plaintiff,

13      v.                                 STIPULATION OF PARTIES FOR
                                           ABANDONMENT OF APPEAL
14  TERRY QUATKEMEYER, aka TERRY
    QUINN,
15
            Defendant.
16

17

18  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19          SANITEC INDUSTRIES, INC., and TERRY QUATKEMEYER, aka TERRY QUINN

20  (together, the "Parties"), by and through their counsel of record, HEREBY STIPULATE AND

21  AGREE, that, pursuant to the Settlement Agreement and Mutual Release, dated <u>October 7th</u>, by

22  and between the Parties and others, the Appeal in this matter be abandoned. THE PARTIES

23  FUTHER STIPULATE AND AGREE that they shall bear their own costs and attorney's fees.

24  SANITEC INDUSTRIES, INC.

25

26  _____        Dated: ___10/10/05___

27  By Joel A. Thvedt, Esq.
    Knott & Glazier, LLP
28  Counsel to Appellant Sanitec Industries, Inc.

Knott & Glazier
LLP

694183.1
                    STIPULATION FOR ABANDONMENT OF APPEAL

1

2   TERRY QUATKEMEYER, aka TERRY QUINN

3

4   _____     Dated: _October 7, 2005_

5   By  Peter Babos, Esq.
    Counsel to Respondent Terry Quatkemeyer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kinn & Ginslar
LLP

694183.1

2

STIPULATION FOR ABANDONMENT OF APPEAL

**PROOF OF SERVICE**

I, CLAUDETTE BONMAN, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California, 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On October 13, 2005, I served the document(s) described as **STIPULATION OF PARTIES FOR ABANDONMENT OF APPEAL** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: See attached Service List

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☐ BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS ☐ UPS ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS ☐ UPS ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☒ [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2005, at Los Angeles, California.

_Claudette Bonman_
[Signature]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**

Peter J. Babos
Law Offices of Peter J. Babos
9401 Wilshire Boulevard
Suite 650
Beverly Hills, CA 90212

Attorneys for Defendant and Cross-Complainant TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER and Cross-Complainants JAMES H. SMITH, as Trustee of THE WINDSOR TRUST, u/d/t dated June 21, 2002

Telephone:    (310) 248-4822
Facsimile:    (310) 248-4406

Joel Thvedt
Knott & Glazier LLP
601 South Figueroa Street
Suite 1950
Los Angeles, CA 90017

Attorneys for Plaintiff
SANITEC INDUSTRIES, INC.
Telephone:    (213) 312-9200
Facsimile:    (213) 312-9201

**Courtesy Copy:**
Mark M. Hathaway, Esq.
Slater Hathaway LLP
200 South Los Robles Avenue
Suite 530
Pasadena, CA 91101-2432

Attorneys for Defendant and Cross-Complainant TERRENCE QUINN aka TERRANCE LEE QUATKEMEYER and Cross-Complainants JAMES H. SMITH, as Trustee of THE WINDSOR TRUST, u/d/t dated June 21, 2002

Telephone:    (626) 795-1600
Facsimile:    (626) 795-1616

**Courtesy Copy:**
Mark Hathaway, Esq.
801 South Figueroa Street
11th Floor
Los Angeles, CA 90015

Telephone:    (213) 624-7200
Facsimile:    (213) 624-7220

# EXHIBIT C

624854.1

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):     TELEPHONE NO.:
Michael J. Hartley, Esq. (SBN 189375)   (213) 576-1000
Lisa Gilford, Esq. (SBN 171641)
WESTON BENSHOOF ROCHEFORT RUBALCAVA & MacCUISH LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
ATTORNEY FOR (Name): Defendants JAMES HARKESS and NORD SORENSEN

Insert name of court and name of judicial district and branch court if any:
Superior Court of the State of California, County of Los Angeles
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF/PETITIONER: MARY S. RIEDINGER, et al

DEFENDANT/RESPONDENT: JAMES R. HARKESS, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>   ☐ Motor Vehicle   ☐ Other<br>☐ Family Law<br>☐ Eminent Domain<br>☒ Other (specify): Individual and Derivative Complaint Re: Corporate Ownership | BC 322202 |

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:
  a- (1) ☒ With prejudice   (2) ☐ Without prejudice

  b (1) ☒ Complaint   (2) ☐ Petition
     (3) ☒ Cross-complaint filed by (name): A.B.B. Sanitec West, Inc.   on (date): May 5, 2005
     (4) ☐ Cross-complaint filed by (name):   on (date):
     (5) ☒ Entire action of all parties and all causes of action
     (6) ☐ Other (specify):*

Date: October  , 2005

Michael Weinsten
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
* If dismissal requested is of specified parties only, of specified causes of action only specified cross-complaints so state and identify the parties, causes of action or cross-complaints to be dismissed.

LINER YANKELEVITZ SUNSHINE
& REGENSTREIF LLP
▶
(SIGNATURE)
Attorney Or party without attorney for:
☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given **

Date: October  , 2005

Joel A. Thvedt
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint—or Response (Family Law) seeking affirmative relief—is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

KNOTT & GLAZIER LLP
▶
(SIGNATURE)
Attorney Or party without attorney for:
☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
☒ Cross-complainant A.B.B. SANITEC, WEST, INC.

(To be completed by clerk)
3. ☐ Dismissal entered as requested on (date):
4. ☐ Dismissal entered on (date):   as to only (name):
5 ☐ Dismissal not entered as requested for the following reasons (specify):

6. ☐ a. Attorney or party without attorney notified on (date):
    b. Attorney or party without attorney not notified. Filing party failed to provide
    ☐ a copy to conform   ☐ means to return conformed copy

Date:          Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev. January 1, 1997]

REQUEST FOR DISMISSAL

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233
American LegalNet, Inc.
www.USCourtForms.com